B1 (Official Form 1) (4/10)

| UNITED STATES BANKRUPTCY COURT<br>District of Delaware | VOLUNTARY PETITION |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Zodiac Pool Solutions SAS** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**Zodiac Marine & Pool SAS; Marine Participations France SAS** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>N/A | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>32 bis boulevard Haussmann<br>75009 Paris, France                    ZIP CODE | Street Address of Joint Debtor (No. and Street, City, and State):                    ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>Paris | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>1 Eversholt Street, 3rd Floor, Office 310<br>Euston, London NW1 2DN, United Kingdom        ZIP CODE NW12DN | Mailing Address of Joint Debtor (if different from street address):                    ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>32 bis boulevard Haussmann  Paris, France                    ZIP CODE 75009 | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other<br>**Holding co of global pool co** | ☐ Chapter 7       ☐ Chapter 15 Petition for<br>☐ Chapter 9          Recognition of a Foreign<br>☐ Chapter 11         Main Proceeding<br>☐ Chapter 12     ☑ Chapter 15 Petition for<br>☐ Chapter 13         Recognition of a Foreign<br>                          Nonmain Proceeding |

| | Tax-Exempt Entity<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box.)<br>☐ Debts are primarily consumer       ☑ Debts are primarily<br>debts, defined in 11 U.S.C.          business debts.<br>§ 101(8) as "incurred by an<br>individual primarily for a<br>personal, family, or house-<br>hold purpose." |
|---|---|---|

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach<br>signed application for the court's consideration certifying that the debtor is<br>unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to<br>insiders or affiliates) are less than $2,343,300 (*amount subject to adjustment<br>on 4/01/13 and every three years thereafter*).<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes<br>of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information - N/A | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for<br>distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐ | ☐ | ☑ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | Over<br>100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001<br>to $1<br>million | $1,000,001<br>to $10<br>million | $10,000,001<br>to $50<br>million | $50,000,001<br>to $100<br>million | $100,000,001<br>to $500<br>million | $500,000,001<br>to $1 billion | More than<br>$1 billion |

B1 (Official Form 1) (4/10)    Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | **Name of Debtor(s):**<br>Zodiac Pool Solutions SAS |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor:<br>See attached. | Case Number: | Date Filed: |
| District:<br>District of Delaware | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b). |
| ☐  Exhibit A is attached and made a part of this petition. | X _____<br>Signature of Attorney for Debtor(s)    (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.

☑  No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box.)

☐  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☑  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

B1 (Official Form) 1 (4/10)
Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case.)* | Zodiac Pool Solutions SAS |

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Debtor

X _____
   Signature of Joint Debtor

   _____
   Telephone Number (if not represented by attorney)

   _____
   Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☑ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
   (Signature of Foreign Representative)

   FRANCOIS MIRALLIE
   (Printed Name of Foreign Representative)

   July 31, 2014
   Date

**Signature of Attorney***

X _____
   Signature of Attorney for Debtor(s)

   Curtis Miller
   Printed Name of Attorney for Debtor(s)

   Morris Nichols Arsht & Tunnell LLP
   Firm Name

   1201 N. Market St
   Wilmington, DE 19899-1347
   Address

   302 - 658 - 9200
   Telephone Number

   7/31/14
   Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)

_____

_____
Address

X _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.*

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
   Signature of Authorized Individual

   _____
   Printed Name of Authorized Individual

   _____
   Title of Authorized Individual

   _____
   Date

Attachment to B1 Form

Pending Bankruptcy Cases Filed by Affiliate of Debtor

Concurrently herewith, each of the affiliated entities listed below has filed a petition in this Court for relief under chapter 15 of title 11 of the United States Code:

Zodiac Pool Solutions SAS

Zodiac Pool Solutions North America, Inc.

Zodiac Pool Systems, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 15 |
| ZODIAC POOL SOLUTIONS SAS,[1] | Case No. 14-_____ (___) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |
| *In re:* | Chapter 15 |
| ZODIAC POOL SOLUTIONS NORTH AMERICA, INC., | Case No. 14-_____ (___) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |
| *In re:* | Chapter 15 |
| ZODIAC POOL SYSTEMS, INC., | Case No. 14-_____ (___) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |

**VERIFIED PETITIONS FOR RECOGNITION OF FOREIGN**
**PROCEEDINGS AND RELATED RELIEF**

François Mirallié, the duly appointed foreign representative (the "**Foreign Representative**") of Zodiac Pool Solutions SAS ("**ZPS**"), Zodiac Pool Solutions North America, Inc. ("**ZPSNA**"), and Zodiac Pool Systems, Inc. ("**ZPSI**", and together with ZPS and ZPSNA, the "**Zodiac Debtors**") in connection with proceedings (the "**English Proceedings**") concerning schemes of arrangement (the "**Schemes**") under part 26 of the English Companies Act 2006 (as amended, the "**English Companies Act**") sanctioned by the High Court of Justice of England and Wales (the "**High Court**"), respectfully submits these *Verified Petitions for Recognition of Foreign Proceeding and Related Relief* (collectively, the "**Chapter 15**

Petitions") seeking, pursuant to sections 105(a), 1507, 1515, 1517, and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**"), the entry of an order (i) recognizing the English Proceedings as "foreign nonmain proceedings" under section 1517 of the Bankruptcy Code, and (ii) giving full force and effect to the Schemes of the Zodiac Debtors in the United States.[2]

In support of the Chapter 15 Petitions, the Foreign Representative respectfully states as follows:

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P). Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) and (3). The statutory predicates for the relief requested herein are sections 105(a), 1507, 1515, 1517, and 1521 of the Bankruptcy Code.

## BACKGROUND

### *The Zodiac Debtors*

A.    Business of the Zodiac Group

1.    The Zodiac Debtors and their affiliates (the "**Zodiac Group**") are, collectively, a leading global manufacturer and distributor of products for swimming pools and spas. The Zodiac Group's principal business is the design, manufacture, and sale of a wide range of equipment focusing on filtration, water circulation, sanitization, cleaning, heating, aesthetic

---

[1]    The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Zodiac Pool Solutions SAS (N/A); Zodiac Pool Solutions North America, Inc. (3451); and Zodiac Pool Systems, Inc. (5614).

[2]    A form of proposed order (the "**Proposed Order**") is attached hereto as <u>Exhibit A</u>, and a copy of the Scheme, exclusive of the annexes thereto, is attached to the Proposed Order as Exhibit 1. Certain other documents are annexed as exhibits to the *Declaration of Daniel J. Guyder In Support of Verified Petitions For Recognition of Foreign Proceedings and Related Relief* dated July 31, 2014.

enhancement, dehumidification, pool coverings, and automatic controls for ensuring the efficient, safe, and easy to use operation of swimming pools, including the following:

- electrical and hydraulic automatic pool cleaners (APC);
- heating systems for pools (heat pumps, gas heaters);
- pumps and filters;
- valves;
- dehumidification systems for indoor pools;
- water purification using salt-electrolysis technologies;
- mineral and salt-chlorination water treatment solutions;
- electronic remote controls for pools and spas;
- automatic cleaning nozzle systems, lights, waterfalls, etc.;
- pool covers; and
- general and specialty chemicals for pools and spas.

2.      The Zodiac Group is the only player in the industry with a substantial presence across each of the following key worldwide markets for swimming pool equipment— the United States, Australia, and France—and has a presence through operating subsidiaries or branches with their own sales forces in the United States, Canada, France, Germany, Spain, Italy, Portugal, the United Kingdom, Australia, New Zealand, and South Africa.    While each geographical area has a unique and distinct customer base (other than one customer who operates in both the US and certain countries within Europe), the Zodiac Group sells exclusively to professional customers, such as pool builders, pool product retailers, professional distributors of pool equipment and supplies, and mass merchant distributors.

3.      The company's revenue breakdown is as follows:  58% North America, 26% Europe, and 16% Southern Hemisphere (encompassing Australia, New Zealand and South Africa).

B.      History of the Zodiac Group

4.      The current structure and business lines of the Zodiac Group are the result of a series of transactions which began with the 2006 acquisition of WaterPik Technologies, Inc.

("**WaterPik**") by Zodiac Aerospace SA ("**Zodiac Aerospace**") and certain funds managed by the Carlyle Group ("**Carlyle**") in a public-to-private transaction under which Carlyle acquired 80% of the outstanding WaterPik shares and Zodiac Aerospace acquired the remaining 20%. At the time, WaterPik sold pool equipment under its "Jandy" brand and sold consumer products, such as dental water jets and shower heads, under the brand "WaterPik". "Jandy"-brand products were only sold in the United States, while "WaterPik"-brand products were predominantly sold in the United States with limited export business. Subsequently, in April 2007, Carlyle and Zodiac Aerospace announced a transaction (the "**Acquisition**") in which the "Zodiac Marine" business of Zodiac Aerospace would be acquired from Zodiac Aerospace and merged with WaterPik. In return, Zodiac Aerospace would receive cash and direct and indirect ownership of approximately 27% of the merged business, while Carlyle and management would own the balance. The Acquisition was closed on September 27, 2007. On August 31, 2009, Zodiac Aerospace sold its entire stake in the business—whether directly or indirectly owned—to entities controlled by Carlyle.

5.    Immediately after the Acquisition, the Zodiac Group operated its business in four separate business divisions:  (i) Pool Care, into which the "Jandy" business was rapidly merged beginning in Autumn 2007, (ii) Marine, under which the Zodiac Group sold boats and professional marine safety equipment, (iii) Pools, under which the Zodiac Group manufactured above-ground pools and wholesaled pool-related products, and (iv) Environment, under which the Zodiac Group provided waste-water and solid waste collection and treatment solutions for the marine industry. Certain of these business activities operated at a loss. Accordingly, through a series of transactions between 2008 and 2013, the Zodiac Group divested itself of its Marine and Environment business segments, sold the above-ground pool manufacturing business, and

merged the remainder of the Pools division into Pool Care.  Further, the Zodiac Group sold its stake in the "WaterPik" business in July 2013, and since then has operated almost exclusively in the Pool Care market, with a worldwide presence across each of the key markets for swimming pool equipment—namely the United States, Australia, and France.  The Zodiac Group has also recently begun operating in the hotel and resort swimming pools market segment through ZPSI's London branch.

      C.     <u>Equity Structure</u>

      6.     ZPS, a French société par actions simplifiée, is the direct or indirect parent of each member of the Zodiac Group other than Zodiac Pool Holding S.A., the 100% owner of ZPS.  ZPSNA and ZPSI are Delaware corporations.  ZPSNA, the indirect parent of ZPSI, is 100% owned by ZPS and is a holding company.  ZPSI is the principal operating subsidiary of the Zodiac Group in the United States.

      D.     <u>Debt Structure</u>

      7.     The Zodiac Debtors and certain of their affiliates are borrowers and/or guarantors under (i) an English-law governed Senior Facilities Agreement, dated July 3, 2007 (as amended, the "**SFA**") and (ii) an English-law governed Mezzanine Facility Agreement, dated July 3, 2007 (as amended, the "**MFA**", and, together with the SFA, the "**Loan Agreements**").  Certain of the borrowings under the Loan Agreements were used to provide debt financing for the Acquisition.  The lenders under the Loan Agreements (other than ZMIF (as defined below), the "**Scheme Creditors**") comprise a variety of international financial institutions, and the London branch of ING Bank N.V is the Facility Agent and Security Agent under, and as defined in, each of the Loan Agreements.  Certain of the borrowings under the Loan Agreements (the "**Internalized Amounts**") are owed to a Zodiac group entity, Zodiac Marine Investment France

SAS ("**ZMIF**").  ZMIF is not a Scheme Creditor but has given an undertaking to the High Court to be bound by the terms of the Schemes.

8.    Under the SFA, four term loan and revolving credit facilities have been made available to ZPS and certain other Zodiac Group entities:  (i) a Facility B term loan facility maturing on September 27, 2015 ("**Facility B**"), (ii) a Facility E amortizing term loan facility maturing on September 27, 2014 ("**Facility E**"), (iii) a revolving facility maturing on September 27, 2014 (the "**Revolving Facility**," and with Facility B and Facility E, the "**Senior Debt**"), and (iv) a Facility D term loan facility maturing on March 27, 2017 ("**Facility D**").  Facility B and Facility D have more than one tranche, and Facility D is subordinated to Facility B, Facility E, and the Revolving Facility pursuant to the terms of the Intercreditor Agreement (as defined below).  Each of the Zodiac Debtors is a borrower under one or more of Facility B, Facility D, Facility E or the Revolving Facility, and all of the Zodiac Debtors are guarantors under the SFA pursuant to English-law governed guarantees.  A number of other Zodiac Group entities are also obligors under the SFA, including three affiliates of the Zodiac Debtors that are also subject to schemes of arrangement but are not seeking chapter 15 relief:  Zodiac International SAS, Zodiac European Pools SAS, and Marine Investment Finland Oy (together with the Zodiac Debtors, the "**Scheme Companies**").

9.    As at May 31, 2014, the principal amounts outstanding under the SFA—and, in the case of the Revolving Facility, amounts drawn by way of letters of credit—and their respective final maturity dates were as follows:

| Facility | Amount | Type | Maturity |
|---|---|---|---|
| B1 EURO | €540,000,000 | Term | September 27, 2015 |
| B1 USD | $169,992,000 | Term | September 27, 2015 |
| B2 | €20,000,000 | Term | September 27, 2015 |
| D1 | €108,335,744 | Term | March 27, 2017 |
| | $16,879,499 | Term | March 27, 2017 |
| D2 | €61,067,085 | Term | March 27, 2017 |
| E | €15,768,856 | Term (Amortising) | September 27, 2014 |
| | $5,437,500 | Term (Amortising) | September 27, 2014 |
| Revolving Facility | €110,631,113 (by way of cash drawing) | Revolving | September 27, 2014 |
| | £1,085,000 (by way of letter of credit) | Revolving | September 27, 2014 |
| | $807,000 (by way of letter of credit) | Revolving | September 27, 2014 |

10.     In addition to the SFA, ZPS is a guarantor and the sole borrower under the MFA (the "**Mezzanine Facility**", and together with Facility B, Facility D, Facility E and the Revolving Facility, the "**Facilities**"), though various other Zodiac entities, including ZPSNA and ZPSI, are additional guarantors thereunder.   As at May 31, 2014, the principal amounts outstanding under the MFA and the final maturity dates applicable for such facilities were as follows:

| Facility | Amount | Type | Maturity |
|---|---|---|---|
| EURO | €117,875,705 | Term | September 27, 2017 |
| USD | $164,421,904 | Term | September 27, 2017 |

11.     ZPSI and ZPSNA are also parties to cross-currency hedging arrangements (the "**Hedging Arrangements**") with ING Bank N.V. (in such capacity, the "**Hedging Bank**")

in order to hedge certain of their Euro-denominated exposure under Facility B.  The Hedging Bank currently provides 100% of the hedging facilities provided to the Zodiac Group.

12.    The relationships among the lenders under the Facilities and the Hedging Bank are governed by an English-law intercreditor deed dated July 3, 2007 (as amended, the **"Intercreditor Agreement"**), which establishes the following priority for debts owed under the Facilities and the Hedging Arrangements:  (i) first, Facility B, Facility E, the Revolving Facility, and amounts owed under the Hedging Arrangements *pari passu* and *pro rata*; (ii) second, Facility D; and (iii) third, the Mezzanine Facility.  The Internalized Amounts are subordinated as "Intra-Group Debt" under, and as defined in, the Intercreditor Agreement.  The Zodiac Group's obligations under the Facilities and the Hedging Arrangements are secured by shares in certain Zodiac Group companies, including all guarantors under the Facilities other than Zodiac Pool Holding S.A., trade and intercompany receivables owing to the guarantors, intellectual property owned by the guarantors, and bank accounts of the guarantors.  The priority of such security matches the priorities set forth under the Intercreditor Agreement.

### Current Operations

13.    The Zodiac Group operates through three major regions:  Americas, Europe and the southern hemisphere (*i.e.*, Australia/New Zealand/South Africa).  The Zodiac Group currently has design, engineering, and manufacturing facilities in the United States, France, Germany, Australia, and South Africa, and has operating subsidiaries or branches with their own sales forces in the United States, Canada, Europe (France, Germany, Spain, Italy, Portugal and the UK), Australia, New Zealand and South Africa.  In addition, the Zodiac Group has operations and assets in the United Kingdom, and various aspects of the Zodiac Group's activities are centralized in London.  In particular:

- the Zodiac Debtors each maintain branch offices in London from which their respective employees carry out their duties. Each branch office is registered with Companies House in England and Wales;

- the Zodiac Debtors have each licensed office space in London through their London branches;

- the Zodiac Group conducts its treasury operations through these London branches, and the London branches jointly employ individuals in London to carry out these functions. The branches charge their main offices for the provision of these services.

- the Zodiac Debtors have retained the services of third-party lawyers and accountants in the UK through their London branches;

- the Zodiac Debtors maintain bank accounts with the London branch of ING Bank N.V.; and

- through its London branch, ZPSI sells pool care and spa products in the United Kingdom and operates the Zodiac Group's hotel and resort business. The ZPSI London branch employs a UK Sales Manager and a Global Sourcing Manager, owns office equipment, and has entered into standard business contracts – *e.g.*, with Vodafone UK for mobile phone service – from this location.

In addition, the Zodiac Debtors use their UK bank accounts, including to make payments under the Loan Agreements, and have consented to service of notice under the Loan Agreements at their offices in London.

***Events Leading to the Schemes***

14.    The Zodiac Group's business was severely affected by the global economic and financial crisis which began in 2008. Even before the crisis, however, the pool equipment market in the United States had already slowed down following its peak in 2007, and the recreational boats industry experienced a similar downturn. In order to address the operational difficulties created by this economic downturn and the general decrease in demand for its products and services, the Zodiac Group undertook a number of restructuring initiatives in 2008 and 2009, including the closure of numerous factories and subsidiary operations throughout the world and the divestiture of its professional safety equipment and boats businesses in

September 2011 and January 2013.  In addition, the company merged its Pool business into its Pool Care division and sold its stake in WaterPik in July 2013.  These efforts contributed significant funds to the company and allowed Zodiac to reduce debt levels from the levels reached in 2009 and 2010.

15.    Nevertheless, in 2013, the Zodiac Group began to explore additional options in anticipation of the approaching maturities of Facility E and the Revolving Facility on September 27, 2014, and the maturity of Facility B on September 27, 2015.  Such options included a refinancing of the debt under the Loan Agreements or an extension of the maturities thereof.  Despite recent improvements in the financial performance of certain business lines, the Zodiac Group has not yet reached a sufficient level of earnings before interest, taxes, depreciation, and amortization to refinance the amounts owed under the Facilities in the current market.  Specifically, as at March 31, 2014, the Zodiac Group's net senior debt leverage ratio was 8.2x; although the Zodiac Group expects to reduce this ratio to 6.2x by September 30, 2015, such ratio would remain above current acceptable market levels.

***The Amendment and Extension Process***

16.    The Zodiac Group spent a considerable amount of time evaluating potential alternatives for maximising value for all stakeholders, and concluded that absent a viable refinancing proposal, an extension of the maturity dates under the Facilities was the best available solution to address the group's going-concern issues in the circumstances.  Accordingly, it commenced negotiations with certain of the lenders under the Facilities towards an amendment and extension of the Facilities (the "**Amendment and Extension**"), and following such negotiations entered into a lock-up agreement dated May 28, 2014 (the "**Lock-**

**Up Agreement**") with them.    Scheduled to the Lock-Up Agreement was a term sheet summarizing the terms of the Amendment and Extension.

17.    On June 4, 2014, Zodiac Pool Holding S.A., on behalf of the Scheme Companies, circulated consent request letters appending the Lock-Up Agreement to all the Scheme Creditors and requested them to indicate their support for the Amendment and Extension by acceding as parties to the Lock-Up Agreement, to the extent they were not already parties thereto.  The Lock-Up Agreement provides, among other things, that the Scheme Creditors who are party thereto agree to take all actions reasonably necessary in order to support, facilitate, implement, consummate or otherwise give effect to the Amendment and Extension, including attending any meeting of Scheme Creditors in person or by proxy to cast their vote in respect in favor of the relevant Scheme.  In addition, the Lock-Up Agreement provides for the waiver of Defaults or Events of Default under the Loan Agreements in connection with the entry into the Lock-Up Agreement or the negotiation or implementation of the Amendment and Extension.

***Amendments to the Facilities***

18.    The key terms of the amendments to the Facilities contemplated by the Amendment and Extension are as follows:

- an extension of the maturity date of each of the Facilities as set out below;

11

| Tranche(s) | Original Maturity Date | Extended Maturity Date |
|---|---|---|
| Revolving Facility Facility E | September 27, 2014 | December 29, 2017 |
| Facility B | September 27, 2015 | March 27, 2018 |
| Facility D | March 27, 2017 | October 3, 2018 |
| MFA | September 27, 2017 | April 3, 2019[3] |

- an increase in the margin in respect of Facility B, Facility E; and the Revolving Facility by 0.25% per annum;

- a re-designation of tranches under Facility B, Facility E, and the Revolving Facility between US and non-US borrowers;

- a lender option to further extend those tranches of Facility B, Facility E, and the Revolving Facility borrowed by non-US borrowers in return for additional increases in margin payable under those tranches;

- a possible assumption by ZPS, at its election, of the obligations currently owed by Marine Investment Finland Oy under the SFA;

- a pro rata partial prepayment of Facility B and Facility E and the cancellation of Revolving Facility commitments (and repayment of the Revolving Facility utilizations of each Lender to the extent they exceed the reduced Revolving Facility commitments of that Lender) in an amount of EUR 145,000,000;

- the re-setting of financial covenants and related amendments; and

- amendments to the Facilities in relation to LIBOR and EURIBOR floors and tax gross-up provisions and to reflect current market practice (including changes to reflect the FATCA regulations and the new administrator of LIBOR).

In addition, the Intercreditor Agreement will be amended to reflect these amendments and the other terms of the Amendment and Extension. The existing guarantees, security, and priority arrangements under the Loan Agreements and the Intercreditor Agreement will be confirmed and ratified, and to the extent necessary supplemental security will be taken. Existing defaults under

the Facilities will be waived, and the rights of Scheme Creditors to take actions in respect of such defaults will be released, and such waiver and release will become operative on the effective date of the Schemes.  The Amendment and Extension and the Schemes do not purport to restructure any liabilities of the Zodiac Group other than the Facilities or affect any creditors other than lenders to the Scheme Companies under the Facilities, such affected Scheme Creditors voted overwhelmingly in favor of the Schemes.

19.    Without the Amendment and Extension, in the absence of an alternative agreement with the Scheme Creditors, the uncertainty created may cause going concern issues to be raised by the Zodiac Group's auditors, suppliers to reduce their payment terms or withdraw altogether, the withdrawal of short-term trade lines, the loss of or negotiation of terms of business with customers and the reduction of credit insurance, which would likely precipitate a rapid deterioration of the Zodiac Group.  If the Zodiac Group fails to secure the Amendment and Extension, one or more Zodiac Group companies may need to take steps towards the commencement of formal insolvency or pre-insolvency proceedings in multiple jurisdictions. Such proceedings would be likely to result in a substantial loss of value for all stakeholders, including the Scheme Creditors, and it is likely that the proceeds available to the Zodiac Group's creditors in such event would be considerably less than if the Amendment and Extension is implemented.  By contrast, the Amendment and Extension will provide the Zodiac Group with more time and financial flexibility to reduce its leverage through increased EBITDA generation, and management has projected that the Amendment and Extension—coupled with an increase in profit and based on current market conditions—is likely to allow the Zodiac Group to sufficiently reduce its net senior debt leverage ratio to repay the Senior Debt in full at or before

---

[3]    However, if all lenders under the MFA and Facility D agree prior to October 6, 2014, the extended maturity date for the MFA will instead be December 3, 2018.

the first extended maturity date of December 2017 (from the proceeds of a refinancing or sale) and also to materially improve the returns to the Scheme Creditors who are lenders of Facility D and the Mezzanine Facility (potentially including repayment in full thereof). The Zodiac Group believes that the Amendment and Extension will enable the group to run a more financially stable business as a going concern and that this offers the greatest probability of maximizing recoveries to Scheme Creditors.

20.    The terms of the Amendment and Extension are being implemented through six inter-conditional schemes of arrangement for the Scheme Companies under the English Companies Act.    Schemes of arrangement are statutory proceedings which allow companies to effect compromises or arrangements with their stakeholders, or subsets thereof, without needing to obtain 100% approval from affected creditors. In particular, schemes of arrangement are appropriate where, as here, parties seek to restructure English-law governed debt without the need to resort to formal insolvency proceedings, and have frequently been recognized by courts in the United States under chapter 15 of the Bankruptcy Code.

21.    In addition to effecting the Amendment and Extension, the Schemes authorize ZPS to execute a deed of release on behalf of the Scheme Creditors that waives, releases, and discharges claims in relation to or in connection with the preparation, negotiation, or implementation of the Schemes or the Amendment and Extension.

### The Scheme Process

22.    The Scheme Companies commenced the English Proceedings by filing claim forms in respect of the Schemes with the High Court on June 27, 2014, and the Foreign Representative was appointed by the Zodiac Debtors to act as foreign representative in any chapter 15 proceedings in the United States in respect of the Zodiac Debtors. On July 3, 2014,

following a hearing (the "**Convening Hearing**"), the High Court entered a convening order (the "**Convening Order**") which, among other things: (i) authorized the Scheme Companies to convene one or more meetings ("**Scheme Meetings**") of Scheme Creditors for the purposes of considering and, if thought fit, approving the Schemes, (ii) ordered that notice of the Schemes, together with an explanatory statement and proxy forms for voting at each Scheme Meeting, be made available to Scheme Creditors; and (iii) declared that the Foreign Representative was appointed and authorized to act as a foreign representative in these chapter 15 cases. The Convening Order provides that the Foreign Representative is authorized, on behalf of the Zodiac Debtors, to take any and all steps deemed by the Foreign Representative to be necessary or desirable to carry out the purpose and intent of the Schemes, including applying to any court in the United States for the recognition of the Schemes, the enforcement of the Convening Order, and any other related relief in the United States under chapter 15 of the Bankruptcy Code.

23.     In accordance with the Convening Order, Scheme Meetings for the Scheme Companies were held in London on July 25, 2014. At such meetings, the Scheme Creditors voted substantially in favor of the Schemes (with majorities in value at the various meetings ranging from 79.97% to 98.09% and majorities in number at the various meetings (by reference to those present and voting at the respective meetings) ranging from 81.25% to 92.85%) on high turnouts of the relevant constituencies (only one Scheme Creditor did not vote).

24.     Counsel for two affiliated Scheme Creditors, Avenue Europe Opportunities Master Fund, L.P. and Avenue Europe Investments, L.P. (together, "**Avenue**"), appeared and raised a number of objections and/or concerns at the Convening Hearing. The High Court rejected these objections to the extent they related to the entry of the Convening Order. Such objections were withdrawn following further correspondence with Avenue's

counsel, and Avenue agreed not to oppose the sanction, recognition, and implementation of the Schemes in all relevant jurisdictions.  The High Court entered an order sanctioning the Schemes on July 31, 2014 (the "**Sanction Order**").

**RELIEF SOUGHT**

25.    By these Chapter 15 Petitions, the Foreign Representative seeks the following relief:

(A)    recognition, pursuant to section 1517 of the Bankruptcy Code, of the English proceedings as "foreign nonmain proceedings" as defined in section 1502(5) of the Bankruptcy Code;

(B)    enforcement of the Schemes of the Zodiac Debtors, including any modifications or amendments thereof, in the United States pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code; and

(C)    such other and further relief as is appropriate under the circumstances pursuant to sections 105(a), 1507, and 1521, of the Bankruptcy Code.

**BASIS FOR SUCH RELIEF**

26.    For the reasons more fully discussed in the Memorandum of Law filed contemporaneously herewith, the English Proceedings are entitled to recognition under section 1517 of the Bankruptcy Code because:

(A)    the English Proceedings are (i) "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code and (ii) "foreign nonmain proceedings" within the meaning of section 1502(5) of the Bankruptcy Code because the English Proceedings are located in a jurisdiction where each of the Zodiac Debtors maintains an "establishment" within the meaning of section 1502(2) of the Bankruptcy Code;

16

(B)    the Foreign Representative is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

(C)    the Chapter 15 Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

(D)    the Chapter 15 Petitions meet the requirements of sections 1504 and 1515 of the Bankruptcy Code.

27.    Further, the Schemes of the Zodiac Debtors should be given full force and effect in the United States as either "additional assistance" under section 1507 of the Bankruptcy Code or "appropriate relief" under section 1521, as such enforcement is necessary to give effect to the Schemes with respect to parties in the United States.

28.    Granting the requested relief would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code.  In fact, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, *inter alia*, sections 1501(a) and 1508 of the Bankruptcy Code and further cooperation between courts to the maximum extent possible as mandated by section 1525(a) of the Bankruptcy Code.  Thus, the circumstances satisfy the conditions for mandatory recognition of the English Proceedings under section 1517 of the Bankruptcy Code and for the enforcement of the Schemes of the Zodiac Debtors under sections 1507 and 1521 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court grant these Chapter 15 Petitions and enter the Proposed Order recognizing the English Proceedings as "foreign nonmain proceedings" and giving full force and effect to the Schemes of the Zodiac Debtors in the United States, and grant such other relief as the Court deems just and appropriate in the circumstances.

Dated: Wilmington, Delaware  
      July 31, 2014

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

    */s/ Curtis S. Miller*  
Curtis S. Miller (No. 4583)  
Erin R. Fay (No. 5268)  
1201 N. Market St., 16th Flr.  
PO Box 1347  
Wilmington, DE 19899-1347  
Telephone (302) 658-9200  
Facsimile (302) 658-3989  
cmiller@mnat.com

-and-

**ALLEN & OVERY LLP**  
Daniel Guyder  
Jonathan Cho  
1221 Avenue of the Americas  
New York, New York 10020  
Telephone (212) 610-6300  
Facsimile (212) 610-6399  
daniel.guyder@allenovery.com  
jonathan.cho@allenovery.com

*Attorneys for the Foreign Representative of the Zodiac Debtors*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, François Mirallié declares as follows:

I am a member of the executive board and managing director of Zodiac Pool Holding S.A., and have been authorized to act as foreign representative of Zodiac Pool Solutions SAS, Zodiac Pool Solutions North America, Inc., and Zodiac Pool Systems, Inc.  I have full authority to verify the foregoing *Verified Petitions for Recognition of Foreign Proceedings and Related Relief* (the "**Petitions**").  I have read the Petitions, and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ⅄⅃ day of July, 2014, in ⎯⎯⎯London, England⎯⎯⎯

François Mirallié

## EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 15 |
| ZODIAC POOL SOLUTIONS SAS., *et al.*,[1] | Case No. 14-_____ (___) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |
| | **Re: D.I. _____** |

### ORDER GRANTING RECOGNITION AND RELATED RELIEF

**THIS MATTER** was brought before the Court by François Mirallié, the duly appointed foreign representative (the "**Foreign Representative**") of Zodiac Pool Solutions SAS, Zodiac Pool Solutions North America, Inc., and Zodiac Pool Systems, Inc. (together, the "**Zodiac Debtors**") in connection with proceedings (the "**English Proceedings**") concerning schemes of arrangement (the "**Schemes**") under part 26 of the English Companies Act 2006 sanctioned by the High Court of Justice of England and Wales (the "**High Court**").

The Foreign Representative filed *Verified Petitions for Recognition of Foreign Proceedings and Related Relief* on 31, 2014 (the "**Chapter 15 Petitions**"), commencing the above-captioned cases (the "**Chapter 15 Cases**") under chapter 15 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and seeking the entry of an order (i) recognizing the English Proceedings as "foreign nonmain proceedings" under section 1517 of the Bankruptcy Code and (ii) giving full force and effect to the Schemes of the Zodiac Debtors, including any modifications or amendments thereof, in the United States pursuant to sections 105(a), 1507, and 1521 of the Bankruptcy Code.

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Zodiac Pool Solutions SAS (N/A); Zodiac Pool Solutions North America, Inc. (3451); and Zodiac Pool Systems, Inc. (5614).

At a hearing held on August __, 2014, the Court considered and reviewed the Chapter 15 Petitions and the other pleadings and exhibits submitted by the Foreign Representative in support thereof.   After due deliberation and sufficient cause appearing therefore, the Court finds and concludes as follows:

(A)   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.

(B)   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and the Court may enter a final order consistent with Article III of the United States Constitution.

(C)   Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) and (3).

(D)   The Foreign Representative is a "person" within the meaning of 11 U.S.C. § 101(41) and is the duly appointed "foreign representative" of the Zodiac Debtors within the meaning of 11 U.S.C. § 101(24).

(E)   The Chapter 15 Cases were properly commenced pursuant to 11 U.S.C. §§ 1504 and 1509, and the Chapter 15 Petitions meet the requirements of 11 U.S.C. §§ 1504 and 1515.

(F)   The English Proceedings are "foreign proceedings" within the meaning of 11 U.S.C. § 101(23).

(G)   The English Proceedings are entitled to recognition by this Court pursuant to 11 U.S.C. § 1517.

(H)   The English Proceedings are before the High Court in London, England, where each of the Zodiac Debtors has an "establishment" within the meaning of 11 U.S.C. § 1502(2), and therefore constitute "foreign nonmain proceedings" pursuant to 11 U.S.C. § 1502(5) and are entitled to recognition as such pursuant to 11 U.S.C. § 1517(b)(1).

(I)   The Foreign Representative is entitled to additional relief pursuant to 11 U.S.C. §§ 1507 and 1521.

(J)   The relief granted herein is necessary and appropriate, in the interest of the public and international comity, and consistent with the public policy of the United States.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

        1.     The English Proceedings are hereby recognized as foreign nonmain proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code.

        2.     The Schemes, including any amendments or modifications, are hereby given full force and effect in the United States pursuant to sections 1507 and 1521 of the Bankruptcy Code.

        3.     This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any request for additional relief or any adversary proceeding brought in and through these Chapter 15 Cases, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

        4.     The Chapter 15 Petitions and supporting papers shall be available upon request at the offices of Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020 to the attention of Mark Nixdorf, (212) 610-6300, mark.nixdorf@allenovery.com.

        5.     Notwithstanding Bankruptcy Rule 7062, made applicable to these Chapter 15 Cases by Bankruptcy Rule 1018, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and upon its entry, this Order shall become final and appealable.

Dated: Wilmington, Delaware
       September __, 2014

                               _____

                               THE HONORABLE
                               UNITED STATES BANKRUPTCY JUDGE

<u>**EXHIBIT 1**</u>

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**COMPANIES COURT**

IN THE MATTER OF ZODIAC POOL SOLUTIONS SAS

AND IN THE MATTER OF ZODIAC POOL SOLUTIONS NORTH AMERICA, INC.

AND IN THE MATTER OF ZODIAC POOL SYSTEMS, INC.

AND IN THE MATTER OF ZODIAC EUROPEAN POOLS SAS

AND IN THE MATTER OF ZODIAC INTERNATIONAL SAS

AND IN THE MATTER OF MARINE INVESTMENT FINLAND OY

and

IN THE MATTER OF THE COMPANIES ACT 2006

---

**SCHEMES OF ARRANGEMENT**
(under Part 26 of the Companies Act 2006)

between

**ZODIAC POOL SOLUTIONS SAS**

**ZODIAC POOL SOLUTIONS NORTH AMERICA, INC.**

**ZODIAC POOL SYSTEMS, INC.**

**ZODIAC EUROPEAN POOLS SAS**

**ZODIAC INTERNATIONAL SAS**

**MARINE INVESTMENT FINLAND OY**

and

**THEIR RESPECTIVE SCHEME CREDITORS**
(as hereinafter defined)

**Clause**                                                                                                    **Page**

1.    Definitions and Interpretation ...............................................................................1
2.    Recitals ...................................................................................................9
3.    The Scheme ..............................................................................................9


**Schedule**

1.    Deed of Release............................................................................................15

**Annex**

1.    Senior Amendment Agreement and Amended Senior Facilities Agreement ......................................19
2.    Mezzanine Amendment Agreement and Amended Mezzanine Facility Agreement ..........................20
3.    Intercreditor Amendment Agreement and Amended Intercreditor Agreement..................................21

## 1.    DEFINITIONS AND INTERPRETATION

1.1    In these Schemes, unless inconsistent with the subject or context, the following expressions shall have the following meanings:

**Allowed Proceeding** means any Proceeding by a Scheme Creditor to enforce its rights under these Schemes relating to the failure of any other person to perform its obligations under these Schemes.

**Amended Finance Documents** means the Amended Senior Facilities Agreement, the Amended Mezzanine Facility Agreement and the Amended Intercreditor Agreement.

**Amended Intercreditor Agreement** means the amended and restated Intercreditor Agreement substantially in the form set out at Annex 3 (Intercreditor Amendment Agreement and Amended Intercreditor Agreement).

**Amended Mezzanine Facility Agreement** means the amended and restated Mezzanine Facility Agreement substantially in the form set out at Annex 2 (Mezzanine Amendment Agreement and Amended Mezzanine Facility Agreement).

**Amended Senior Facilities Agreement** means the amended and restated Senior Facilities Agreement substantially in the form set out at Annex 1 (Senior Amendment Agreement and Amended Senior Facilities Agreement).

**Amendment Agreements** means the Senior Amendment Agreement, the Mezzanine Amendment Agreement and the Intercreditor Amendment Agreement.

**Amendment and Extension** means the amendment and extension of the obligations of the Group under the Senior Facilities Agreement, the Mezzanine Facility Agreement and the Intercreditor Agreement in accordance with the Amendment Agreements and the Amended Finance Documents.

**Amendment and Extension Documents** means the Amendment Agreements and all documents, agreements and instruments which are conditions precedent specified in the Amendment Agreements to the effectiveness of the Amended Finance Documents and/or which are necessary and/or desirable to implement and/or consummate these Schemes.

**Business Day** means a day (other than a Saturday or Sunday) on which banks are open for general business in London and Paris.

**Companies Act** means the Companies Act 2006.

**Conditions** means:

    (a)    recognition of the Schemes of each of ZPS, ZPSNA and ZPSI under Chapter 15 of the United States Bankruptcy Code; and

    (b)    the Court having made an order sanctioning the Scheme of each Scheme Company.

**Court** means the High Court of Justice of England and Wales.

**Deed of Release** means the deed of release substantially in the form set out in Schedule 1 (Deed of Release).

**Effective Time** means the time at which each of the Senior Amendment Effective Time, the Mezzanine Amendment Effective Time and the Intercreditor Amendment Effective Time occurs.

**Enforcement Action** means any action of any kind to:

(a)    declare prematurely due and payable or otherwise seek to accelerate payment of all or any part of any indebtedness owed by any member of the Group, except that demand may be made for interest (including default interest) fees and/or commissions as they fall due under the original terms of any Existing Transaction Document;

(b)    recover, or demand cash cover in respect of, all or any part of any indebtedness owed by any member of the Group (including by exercising any set-off, save as required by law);

(c)    exercise or enforce any right under any guarantee or any right in respect of any Security, in each case granted in relation to (or given in support of) all or any part of any indebtedness owed by any member of the Group;

(d)    petition for (or take or support any other step which may lead to) an Insolvency Event in respect of any member of the Group.

**Existing Default** means any Default under any Existing Transaction Document (as defined therein) that has occurred or will occur arising out of or as a consequence of the application for or the implementation of these Schemes.

**Existing Transaction Documents** means the Senior Finance Documents and the Mezzanine Finance Documents.

**Guarantor** means each "Guarantor" as defined in the Senior Facilities Agreement and each "Guarantor" as defined in the Mezzanine Facility Agreement.

**Group** means the Parent and its Subsidiaries from time to time.

**Hedging Bank** means ING Bank N.V. as Hedging Bank under and as defined in the Intercreditor Agreement.

**Insolvency Event** means in relation to any member of the Group:

(a)    the winding-up, bankruptcy, dissolution, administration or submission to any insolvency proceeding of that member of the Group;

(b)    the appointment of a *mandataire ad hoc* or for a *conciliation* in accordance with articles L.611-3 to L.611-15 of the French *Code de Commerce* in respect of that member of the Group;

(c)    the entry of a judgment for *sauvegarde, redressement judiciaire, cession totale de l'entreprise* or *liquidation judiciaire* under articles L.620-1 to L.644-6 of the French *Code de Commerce* in relation to that member of the Group;

(d)    the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of that member of the Group; or

(e)    any analogous procedure or step in any jurisdiction under any insolvency laws involving that member of the Group.

**Intercreditor Agreement** means the intercreditor deed dated 3 July 2007 between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the senior agent,

mezzanine agent and security agent) as amended and restated from time to time before the Intercreditor Amendment Effective Time.

**Intercreditor Amendment Agreement** means the amendment agreement to the Intercreditor Agreement to be entered into between, among others, ZPS (as the company) and ING Bank N.V., London Branch (as the senior agent, mezzanine agent and security agent), and to which the Amended Intercreditor Agreement is scheduled, substantially in the form set out at Annex 3 (Intercreditor Amendment Agreement and Amended Intercreditor Agreement).

**Intercreditor Amendment Effective Time** has the meaning given to "Effective Time" under and as defined in the Intercreditor Amendment Agreement.

**Issuing Bank** means ING Bank N.V. as Issuing Bank under and as defined in the Senior Facilities Agreement.

**Liability** or **Liabilities** means any debt, liability or obligation of a person whether it is present, future, prospective or contingent, whether or not it is fixed or undetermined, whether or not it involves the payment of money or performance of an act or obligation and whether it arises at common law, in equity or by statute, in England, France, the United States of America or any other jurisdiction, or in any manner whatsoever.

**Longstop Date** means 27 September 2014.

**Majority Lenders** means:

(a)     the "Majority Lenders" under and as defined in the Senior Facilities Agreement; and

(b)     the "Majority Mezzanine Lenders" under and as defined in the Mezzanine Facility Agreement.

**Mezzanine Agent** means ING Bank N.V., London Branch in its capacity as Mezzanine Facility Agent under the Mezzanine Facility Agreement.

**Mezzanine Amendment Agreement** means the amendment agreement to the Mezzanine Facility Agreement to be entered into between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the mezzanine facility agent and security agent), and to which the Amended Mezzanine Facility Agreement is scheduled, substantially in the form set out at Annex 2 (Mezzanine Amendment Agreement and Amended Mezzanine Facility Agreement).

**Mezzanine Amendment Effective Time** has the meaning given to "Effective Time" under and as defined in the Mezzanine Amendment Agreement.

**Mezzanine Facility** has the meaning given to the term "Facility" under the Mezzanine Facility Agreement.

**Mezzanine Facility Agreement** means the EUR 150,000,000 mezzanine facility agreement dated 3 July 2007 entered into between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the mezzanine facility agent and security agent) as amended and restated from time to time before the Mezzanine Amendment Effective Time.

**Mezzanine Finance Documents** means the "Mezzanine Finance Documents" as defined in the Mezzanine Facility Agreement in the form existing before the Mezzanine Amendment Effective Time.

**Mezzanine Scheme Creditors** means each of the Mezzanine Lenders (under and as defined in the Mezzanine Facility Agreement).

**Parent** means Zodiac Pool Holding S.A. (formerly known as Zodiac Marine Holding S.A.), a *société anonyme* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, France, registered under number 498 376 284 with the Paris companies and commercial register, incorporated in France.

**Proceeding** means any process, suit, action, legal or other proceeding including without limitation any arbitration, mediation, alternative dispute resolution, judicial review, adjudication, demand, execution, distraint, forfeiture, re-entry, seizure, lien, enforcement of judgment or enforcement of any security.

**Prohibited Proceedings** means any Proceeding or Enforcement Action against any member of the Group or its property in any jurisdiction whatsoever other than an Allowed Proceeding.

**Record Date** means 10 a.m. on 27 June 2014.

**Registrar of Companies** means the Registrar of Companies of England and Wales.

**Released Parties** means the Released Parties as defined in the Deed of Release.

**Relevant Agent** means:

(a)     in relation to the Senior Facilities Agreement, the Senior Agent;

(b)     in relation to the Mezzanine Facility Agreement, the Mezzanine Agent; and

(c)     in relation to the Intercreditor Agreement, the Security Agent.

**Schemes** mean these schemes of arrangement under Part 26 of the Companies Act 2006 in respect of the Scheme Companies in their present form or with or subject to any modification, addition or condition approved or imposed by the Court or approved in accordance with the terms of these Schemes.

**Scheme Claim** means any claim in respect of any Liability of any Scheme Company to any of its respective Scheme Creditors arising out of the Existing Transaction Documents, arising on or before the Record Date or which may arise after the Record Date as a result of an obligation or Liability of any Scheme Company incurred or as a result of an event occurring or an act done on or before the Record Date (including, for the avoidance of doubt, any interest accruing on, or accretions arising in respect of, such claims before or after the Record Date).

**Scheme Company** means each of:

(a)     ZPS;

(b)     ZPSNA;

(c)     ZPSI;

(d)     ZEP;

(e)     ZIS; and

(f)     Zodiac Finland.

**Scheme Creditors** means

(a)    in respect of ZPS the ZPS Senior Scheme Creditors, the Second Lien Scheme Creditors and the Mezzanine Scheme Creditors; and

(b)    in respect of each Scheme Company other than ZPS, the relevant Senior Scheme Creditors.

**Scheme Effective Date** means the date, following satisfaction or waiver of any relevant Conditions, on which an office copy of the order of the Court sanctioning these Schemes under Section 899 of the Companies Act has been delivered to the Registrar of Companies.

**Scheme Exchange Rate** means the spot rate of exchange for the relevant currency to EUR shown on Bloomberg on the Record Date.

**Scheme Meeting** means each of:

(a)    the meeting of the relevant Senior Scheme Creditors held by each Scheme Company;

(b)    the meeting of the Second Lien Scheme Creditors held by ZPS; and

(c)    the meeting of the Mezzanine Scheme Creditors held by ZPS,

in each case, to vote on these Schemes and convened pursuant to an order of the Court (and any adjournment of such meeting).

**Second Lien Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) in respect of Facility D under and as defined in the Senior Facilities Agreement.

**Security Agent** means ING Bank N.V., London Branch as Security Agent under the Intercreditor Agreement.

**Senior Agent** means ING Bank N.V., London Branch in its capacity as facility agent under the Senior Facilities Agreement.

**Senior Amendment Agreement** means the amendment agreement to the Senior Facilities Agreement to be entered into between, among others, ZPS (as the company) and ING Bank N.V., London Branch (as the facility agent and security agent), and to which the Amended Senior Facilities Agreement is scheduled, substantially in the form set out at Annex 1 (Senior Amendment Agreement and Amended Senior Facilities Agreement).

**Senior Amendment Effective Time** has the meaning given to "Effective Time" under and as defined in the Senior Amendment Agreement.

**Senior Facilities Agreement** means the EUR 1,100,000,000 senior facilities agreement dated 3 July 2007 entered into between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the facility agent and security agent) as amended and restated from time to time before the Senior Amendment Effective Time.

**Senior Finance Documents** means the "Senior Finance Documents" as defined in the Senior Facilities Agreement in the form existing before the Senior Amendment Effective Time.

**Senior Scheme Creditors** means:

(a)    in respect of ZPS, the ZPS Senior Scheme Creditors;

(b)      in respect of ZPSNA, the ZPSNA Senior Scheme Creditors;

(c)      in respect of ZPSI, the ZPSI Senior Scheme Creditors;

(d)      in respect of ZEP, the ZEP Senior Scheme Creditors;

(e)      in respect of ZIS, the ZIS Senior Scheme Creditors; and

(f)      in respect of Zodiac Finland, the Zodiac Finland Senior Scheme Creditors.

**Subsidiary of a company or corporation** means any company or corporation:

(a)      which is controlled, directly or indirectly, by the first-mentioned company or corporation;

(b)      at least half the issued share capital of which is owned, directly or indirectly, by the first-mentioned company or corporation; or

(c)      which is a subsidiary of another subsidiary of the first-mentioned company or corporation,

and, for these purposes, a company or corporation shall be treated as being controlled by another if that other company or corporation is able to direct its affairs and/or to control the composition of its board of directors or equivalent body.

**Transaction Party** means a party to the Amendment and Extension Documents.

**Undertaking Transaction Parties** means the Parent, Zodiac Newco, the Mezzanine Agent, the Senior Agent, the Security Agent, the Hedging Bank and the Issuing Bank.

**United States Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

**ZEP** means Zodiac European Pools SAS a *société par actions simplifiée* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 324 348 077 RCS with the Paris companies and commercial register, incorporated in France.

**ZEP Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZEP in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**ZIS** means Zodiac International SAS a *société par actions simplifiée* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 729 800 839 RCS with the Paris companies and commercial register, incorporated in France.

**ZIS Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZIS in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**Zodiac Finland** means Marine Investment Finland Oy a company with its registered office at Paciukenkatu 27, PO Box 18, FI – 00271 Helsinki, Finland, registered with VAT number FI 21399129 and incorporated in Finland.

**Zodiac Finland Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to Zodiac Finland in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**Zodiac Newco** means Zodiac Marine Investment France SAS *a société par actions simplifiée* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 789 851 714 RCS with the Paris companies and commercial register, incorporated in France.

**ZPS** means Zodiac Pool Solutions SAS a *société par actions simplifiée unipersonnelle* (formerly known as Zodiac Marine & Pool SAS) with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 493 738 819 RCS with the Paris companies and commercial register, incorporated in France.

**ZPS Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZPS in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**ZPSI** means Zodiac Pool Systems, Inc a limited liability company with its registered office at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, registered under number 3107192 with the Delaware companies register, incorporated in Delaware.

**ZPSI Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZPSI in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**ZPSNA** means Zodiac Pool Solutions North America, Inc a limited liability company (formerly known as Zodiac Marine & Pool North America, Inc.) with its registered office at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, registered under number 4377768 with the Delaware companies register, incorporated in Delaware.

**ZPSNA Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZPSNA in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

1.2    In these Schemes, unless the context otherwise requires or otherwise expressly provides for:

(a)    references to Recitals, Paragraphs, Schedules and Annexes are references to Recitals, Paragraphs, Schedules and Annexes of these Schemes;

(b)    references to a person include a reference to an individual, firm, partnership, company, corporation, unincorporated body of persons or any state or state agency;

(c)    references to a statute, statutory provision or regulatory rule or guidance include references to the same as subsequently modified, amended or re-enacted from time to time;

(d)    unless the context otherwise requires, references to an agreement, deed or document shall be deemed also to refer to such agreement, deed or document as amended, supplemented, restated, varied, replaced and/or novated (in whole or in part) from time to time and to any agreement, deed or document executed pursuant thereto;

(e)    the singular includes the plural and *vice versa* and words importing one gender shall include all genders;

(f)    references to "including" shall be construed as references to "including without limitation" and "include", "includes" and "included" shall be construed accordingly;

(g)    headings to Recitals, Paragraphs, Schedules and Annexes are for ease of reference only and shall not affect the interpretation of these Schemes;

(h)    references to a period of days shall include Saturdays, Sundays and public holidays and where the date which is the final day of a period of days is not a Business Day, that date will be adjusted so that it is the first following day which is a Business Day;

(i)    references to euro, EUR or to € are references to the lawful currency from time to time of the member states of the European Union that have the euro as their lawful currency under the legislation of the European Union for Economic and Monetary Union;

(j)    references to time shall be to London time (Greenwich Mean Time or British Summer Time, as appropriate); and

(k)    words and expressions defined or construed in the Intercreditor Agreement shall have the same meanings and constructions when used in these Schemes, unless given a different meaning or construction in these Schemes.

1.3    The terms of these Schemes shall apply to each of the Scheme Companies as a separate agreement between each Scheme Company and its respective Scheme Creditors and references to these Schemes shall be to the agreements between each Scheme Company and its respective Scheme Creditors.

## 2.   RECITALS

**The Scheme Companies**

(A)   ZPS, ZEP and ZIS are incorporated in France.

(B)   ZPSNA and ZPSI are incorporated in Delaware in the United States of America.

(C)   Zodiac Finland is incorporated in Finland.

**Financing arrangements of the Company**

(D)   Each of the Scheme Companies is a borrower under the Senior Facilities Agreement and a party to the Intercreditor Agreement.

(E)   ZPS is the sole borrower under the Mezzanine Facility Agreement.

(F)   Certain terms of the Senior Facilities Agreement, Mezzanine Facility Agreement and Intercreditor Agreement will be amended in accordance with the terms of these Schemes and the Amendment Agreements.

**Binding of Third Parties**

(G)   The Undertaking Transaction Parties have each:

(i)   appeared by counsel on the petition to sanction these Schemes and undertaken to the Court to; and/or

(ii)   executed a deed of undertaking in favour of the Court and the Scheme Companies pursuant to which they have undertaken and agreed to,

amongst other matters, execute each Amendment and Extension Document to which they are a party and, where necessary, be bound by the terms of the Schemes as sanctioned by the Court.

**The Purpose of these Schemes**

(H)   The purpose of these Schemes is to effect a compromise and arrangement between each of the Scheme Companies and their respective Scheme Creditors.

## 3.   THE SCHEMES

**Application and Effectiveness of these Schemes**

1.   The compromise and arrangement effected by these Schemes shall apply to all Scheme Claims and bind all Scheme Creditors and their respective permitted successors and assigns and each Scheme Company.

2.   These Schemes shall become effective on the Scheme Effective Date and all of the right, title and interest of Scheme Creditors to Scheme Claims shall be subject to the compromises and arrangements set out in these Schemes.

3.   The Scheme Companies shall not (and shall not be entitled to) deliver a copy of the Court order sanctioning their respective Schemes until the Conditions have been satisfied or waived in accordance with Paragraph 4.

4.      The Condition in paragraph (a) of that definition may be waived with the consent of ZPS and the Security Agent (acting on the instructions of the Majority Lenders).

**Instructions, Authorisations and Directions by Scheme Creditors**

5.      On the Scheme Effective Date, in consideration of the rights accruing to the Scheme Creditors under these Schemes, the Scheme Creditors:

(a)      hereby instruct, authorise and direct each Relevant Agent (and its respective authorised signatories and delegates) in its capacity as Relevant Agent and on behalf of each Scheme Creditor (and any person to whom a Scheme Creditor has transferred any of its rights in respect of its Scheme Claim after the Record Date):

(i)      to execute and deliver as a deed or agreement as applicable the Amendment and Extension Documents; and

(ii)      to do or procure to be done all such acts or things as may be necessary or desirable to be done for the purposes of giving effect to the terms of these Schemes;

(b)      hereby instruct, authorise and direct (as applicable) each Relevant Agent irrevocably and unconditionally to:

(i)      waive each and every Existing Default; and

(ii)      release each and every right and obligation of any Scheme Creditor to take any action in respect of any Existing Default; and

(c)      hereby request, and to the extent they are entitled to do so, instruct each Relevant Agent to perform each of its obligations arising under these Schemes and each Amendment and Extension Document.

6.      The directions, instructions and authorisations granted under Paragraph 5 shall be treated, for all purposes whatsoever and without limitation, as having been granted by deed.

7.      Each Scheme Creditor hereby irrevocably confirms to the Relevant Agent (and its respective authorised signatories and delegates) that:

(a)      in carrying out any instructions given to the Relevant Agent under, or contemplated by, Paragraph 5 above, such Relevant Agent will be acting as Relevant Agent in accordance with the terms of the Existing Transaction Documents or Intercreditor Agreement (as applicable) and will be fulfilling its duties thereunder and shall incur no liability to any person for doing so;

(b)      in carrying out any such instructions in accordance with their terms, nothing that the Relevant Agent does or omits to do in accordance with such instructions will constitute gross negligence or wilful misconduct on the part of the Relevant Agent; and

(c)      it will not claim, assert, plead, argue or raise by way of defence against a claim by the Relevant Agent under any indemnity provided under the Existing Transaction Documents or the Intercreditor Agreement (as applicable) any gross negligence or wilful misconduct by the Relevant Agent or any of its advisers, employees or agents in the Relevant Agent carrying out the acts set out in such instructions nor any omission by the Relevant Agent.

**Grant of Authority**

8.  Each of the Scheme Creditors hereby irrevocably authorises ZPS to complete, as soon as possible after the Scheme Effective Date, any blanks and/or any schedules, to insert or amend any signature blocks in the Amendment and Extension Documents and to make such other minor or technical amendments to those documents or amend and/or update any of the schedules to the Amendment and Extension Documents as ZPS, acting reasonably, considers necessary or desirable and which are not materially prejudicial to the Scheme Creditors.

9.  Each of the Scheme Creditors hereby irrevocably authorises a duly authorised officer of ZPS (the **Attorney**) on and from the Scheme Effective Date to enter into, execute and deliver as a deed (or otherwise) the Deed of Release (and each Amendment and Extension Document which is not executed by a Relevant Agent pursuant to the authority granted in Paragraph 5) as true and lawful agent and attorney on behalf of that Scheme Creditor in its capacity as a Scheme Creditor (including any person to whom a Scheme Creditor has transferred its rights in respect of its Scheme Claim after the Record Date). The Scheme Creditors ratify whatever the Attorney may do in their name or on their behalf in exercising the powers described in this Paragraph 9.

10. The authority granted under Paragraphs 8 and 9 shall be treated, for all purposes whatsoever and without limitation, as having been granted by deed.

**Implementation of Arrangements with Scheme Creditors**

11. On or as soon as reasonably practicable following the Scheme Effective Date:

    (a)  a duly authorised officer of each Scheme Company will execute, on behalf of such Scheme Company, the Amendment and Extension Documents to which it is a party; and

    (b)  ZPS, on behalf of itself and each of the Scheme Creditors in accordance with the authority granted under Paragraph 9 of these Schemes, will execute and deliver the Deed of Release and any Amendment and Extension Document not executed by the Relevant Agent on behalf of the Scheme Creditors.

    (c)  the Relevant Agents will execute the Amendment and Extension Documents to which they are a party in each case in accordance with the authorisations, instructions and directions under Paragraph 5 and their rights and obligations under the Existing Transaction Documents.

12. The Scheme Companies shall use all reasonable endeavours to ensure that all of the conditions precedent contained in the Amendment Agreements are satisfied and/or waived prior to the Longstop Date.

13. ZPS shall give notice to the Scheme Creditors of the occurrence of the Effective Time.

14. On and from the Effective Time (but subject to the other provisions of these Schemes), each Scheme Creditor shall be entitled to the rights and benefits accruing to that Scheme Creditor under these Schemes and the Amended Finance Documents (to the extent they are a party) and all of the existing rights and benefits of the Scheme Creditors in respect of any Scheme Company shall be subject and limited to the compromises and arrangements provided by these Schemes and the Amended Finance Documents.

15. The Scheme Creditors acknowledge and agree that the amendment and restatement of the Existing Transaction Documents pursuant to the Amendment and Extension Documents shall apply for all purposes including for the purposes of amending and restating any claims of any Scheme Creditor

against, and the obligations and Liabilities of, any Guarantor under the Existing Transaction Documents on the terms of the Amended Finance Documents.

**Record Date and determination of Scheme Claims**

16.     All Scheme Claims shall be determined as at the Record Date.

17.     For the purpose of voting on the Schemes only, Scheme Claims denominated in a currency other than EUR, shall be converted to EUR on the Record Date at the Scheme Exchange Rate.

**Assignments or Transfers**

18.     No Scheme Company shall be under any obligation to recognise any assignment or transfer of Scheme Claims after the Record Date for the purposes of determining entitlements under these Schemes, provided that where the relevant Scheme Company has received, from the relevant parties, notice in writing of such assignment or transfer, that Scheme Company may, in its sole discretion and subject to the production of such other evidence as it may require and to any other terms and conditions which it may render necessary or desirable, agree to recognise such assignment or transfer for the purposes of determining entitlements under these Schemes.  It shall be a term of such recognition that the assignee or transferee of a Scheme Claim so recognised by the relevant Scheme Company shall be bound by the terms of these Schemes and for the purposes of these Schemes shall be a Scheme Creditor.

**Stay of Proceedings**

19.     None of the Scheme Creditors shall commence or continue, or instruct, direct or authorise any other person to commence or continue, any Prohibited Proceedings in respect of, arising from or relating to any Scheme Claim after the Schemes have been sanctioned by the Court.  For the avoidance of doubt, this Paragraph shall not prohibit a Scheme Creditor from commencing or continuing, or instructing, directing or authorising any other person to commence or continue, any Proceeding against any Scheme Company or its property in any jurisdiction whatsoever relating to and subject to the terms of the Amendment and Extension Documents.

20.     Subject to any existing contractual restrictions, a Scheme Creditor may commence an Allowed Proceeding against any Scheme Company after the Scheme Effective Date provided that it has first given the Company five Business Days' prior notice in writing of its intention to do so.

**Costs**

21.     ZPS shall pay, or procure the payment, in full, of all costs, charges, expenses and disbursements incurred by any Scheme Company in connection with the negotiation, preparation and implementation of these Schemes as and when they arise, including, but not limited to, the costs of holding the Scheme Meetings, the costs of obtaining the sanction of the Court, the costs of placing the notices (if any) required by these Schemes and the costs in connection with recognition of these Schemes under Chapter 15 of the United States Bankruptcy Code.

**Modifications**

22.     Any Scheme Company may, at any hearing of the Court to sanction these Schemes, consent on behalf of all Scheme Creditors to any modification of these Schemes or any terms or conditions which the Court may think fit to approve or impose.  However, if such modifications could reasonably be expected directly or indirectly to have a material or disproportionate adverse effect on the interests of a Scheme Creditor (taking into account for this purpose only its interests as a Scheme

Creditor) then no Scheme Company may give such consent without the prior written consent of that Scheme Creditor.

23. Nothing in these Schemes shall prevent the modification of any Amendment and Extension Document or Amended Finance Document in accordance with their respective terms.

**Obligations on Dates other than a Business Day**

24. If any sum is due or obligation is to be performed under the terms of these Schemes on a day other than a Business Day, the relevant payment shall be made, or obligation performed, on the next Business Day.

**Notices**

25. Any notice or other written communication to be given under or in relation to these Schemes shall be given in writing and shall be deemed to have been duly given if it is delivered by hand, pre-paid first class post, airmail, fax or electronically to:

    (a)    in the case of any Scheme Companyby hand, pre-paid first class post or airmail to:

        Zodiac Pool Holding S.A.

        32 BIS Boulevard Haussmann,

        75009, Paris, France

        marked for the attention of François Mirallié; or

    (b)    in the case of a Scheme Creditor to the Security Agent for and on behalf of the relevant Scheme Creditor, at/on the contact details set out at (c) below.

    (c)    in the case of the Security Agent:

        (i)    by hand, pre-paid first class post or airmail to:

            ING Bank N.V., London Branch

            60 London Wall

            London, EC2M 5TQ

            marked for the attention of Ian Tofts / Craig Baker / Loans Agency

        (ii)    by fax to + 44 (0)207 767 6522/5617; or

        (iii)    by email to:

            ian.tofts@uk.ing.com / craig.baker@uk.ing.com / loans.agency@uk.ing.com

    (d)    in the case of any other person, any address, fax number or email address set forth for that person in any agreement entered into in connection with these Schemes or the last known address, fax number or email address according to any Scheme Company.

26. Any notice or other written communication to be given under these Schemes shall be deemed to have been delivered and served:

(a)     if delivered by hand, when actually received provided that, if such receipt occurs after 5.00 p.m. in the place of receipt, the following Business Day;

(b)     if sent by pre-paid first class post or airmail, on the second Business Day after posting if the recipient is in the country of dispatch, otherwise the seventh Business Day after posting;

(c)     if sent electronically or by fax, when actually received in readable form provided that, if such receipt in readable form occurs after 5.00 p.m. in the place of receipt, the following Business Day; and

(d)     if by advertisement, on the date of publication.

27.     In proving service, it shall be sufficient proof, in the case of a notice sent by pre-paid first class post or airmail, that the envelope was properly stamped, addressed and placed in the post.

28.     The accidental omission to send any notice, written communication or other document in accordance with Paragraphs 25 and 26, or the non-receipt of any such notice, written communication or document by any Scheme Creditor, shall not affect the provision of these Schemes.

29.     No Scheme Company shall be responsible for any loss or delay in transmission of any notices, or other documents posted by or to any Scheme Creditors which shall be posted at the risk of such Scheme Creditors.

**Governing Law and Jurisdiction**

30.     On and from the Scheme Effective Date, the operative terms of these Schemes and any non-contractual obligations arising out of or in connection with these Schemes shall be governed by and construed in accordance with the laws of England and Wales. The Scheme Creditors hereby agree that the Court shall have exclusive jurisdiction to hear and determine any suit, action or Proceeding and to settle any dispute which arises out of or in connection with the terms of these Schemes or their implementation or out of any action taken or omitted to be taken under these Schemes or in connection with the administration of these Schemes and for such purposes the Scheme Creditors irrevocably submit to the jurisdiction of the Court, provided, however, that nothing in this Paragraph shall affect the validity of other provisions determining governing law and jurisdiction as between any Scheme Company and any of the Scheme Creditors, whether contained in contract or otherwise.

31.     The terms of these Schemes and the obligations imposed on any Scheme Company hereunder shall take effect subject to any prohibition or condition imposed by applicable law.

**Future Liquidation**

32.     These Schemes shall be unaffected by any liquidation, administration or similar insolvency process of any Scheme Company after the Scheme Effective Date and shall take effect in accordance with their terms notwithstanding any such event.

**Longstop Date**

33.     If the Effective Time has not occurred before the Longstop Date, the terms of, and the obligations on the parties under or pursuant to, these Schemes shall lapse.

Dated this     day of     2014

## SCHEDULE 1

## DEED OF RELEASE

**THIS DEED POLL** (the **Deed Poll**) is executed as a deed on _____ 2014, by:

**THE SCHEME CREDITORS** (as defined below), acting by an authorised officer of Zodiac Pool Solutions SAS (**ZPS**) pursuant to the authority conferred upon such officer of ZPS by the Scheme Creditors under paragraph 9 of the Schemes (as defined below),

In favour of:

**THE RELEASED PARTIES** (as defined below).

**WHEREAS**

(A)     Each Scheme Company has entered into a Scheme with its respective Scheme Creditors.

(B)     ZPS is authorised, under paragraph 9 of the Schemes, to execute and deliver this Deed Poll on behalf of each of the Scheme Creditors.

**IT IS DECLARED** as follows:

1.       **INTERPRETATION**

1.1     **Definitions**

         In this Deed Poll:

         **Court** means the High Court of Justice of England and Wales.

         **Released Parties** means the persons listed at Appendix 1 of this Deed Poll.

         **Schemes** means the schemes of arrangement pursuant to Part 26 of the Companies Act 2006 between each Scheme Company and its respective Scheme Creditors as sanctioned by the Court.

         **Scheme Company** means each of ZPS, Zodiac Pool Solutions North America, Inc., Zodiac Pool Systems Inc., Zodiac European Pools SAS, Zodiac International SAS and Marine Investment Finland Oy.

1.2     **Construction**

         (a)     Capitalised terms defined in the Schemes have, unless expressly defined in this Deed Poll, the same meaning in this Deed Poll.

         (b)     In this Deed Poll, unless the context otherwise requires or otherwise expressly provides for:

                 (i)     references to clauses are references to clauses of this Deed Poll;

                 (ii)    references to a person include references to an individual, firm, partnership, company, corporation, unincorporated body of persons or any state or state agency;

(iii)     references to a statute or statutory provision include references to the same as subsequently modified, amended or re-enacted from time to time;

(iv)     the singular includes the plural and vice versa and words importing one gender shall include all genders; and

(v)     headings to clauses are for ease of reference only and shall not affect the interpretation of this Deed Poll.

## 2.    WAIVER AND RELEASE

2.1     With effect from the Effective Time and without prejudice to the provisions of the Schemes, the Scheme Creditors hereby irrevocably and unconditionally:

(a)     waive, release and discharge fully and absolutely all Liabilities of the Released Parties to the Scheme Creditors in relation to or in connection with the preparation, negotiation or implementation of (i) the Schemes or (ii) the Amendment and Extension; and

(b)     waive each and every claim which the Scheme Creditors may have in connection with the preparation, negotiation or implementation of (i) the Schemes or (ii) the Amendment and Extension (in each case) against the Released Parties.

2.2     Each release, waiver and discharge effected by the terms of clause 2.1 above shall not extend to any Liability arising out of or resulting from gross negligence, wilful default or fraud (or any claim relating to such Liability).

2.3     Nothing in this Deed Poll shall release, waive or discharge any Liability of any person under the Amendment and Extension Documents or the Amended Finance Documents.

## 3.    FURTHER ASSURANCES

The Scheme Creditors will take whatever action is reasonably necessary to give effect to the waiver, release and discharge referred to in clause 2 (Waiver and Release) of this Deed Poll.

## 4.    CONTINUATION

Nothing in this Deed Poll shall be construed as a waiver, variation or amendment of any provisions of the Amendment and Extension Documents.

## 5.    DEED POLL

This document shall take effect as a deed poll in favour of the Released Parties. A Released Party may rely on and enforce the terms of this Deed Poll.

## 6.    GOVERNING LAW AND JURISDICTION

This Deed Poll and any non-contractual obligations arising out of or in connection with it are governed by English law. The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed Poll or any non-contractual obligations connected with it.

This Deed Poll has been entered into and delivered by the Scheme Creditors as a deed poll on the date stated at the beginning of this Deed Poll.

**EXECUTED** as a **DEED** by                              )
the **SCHEME CREDITORS**                                    )
and signed and delivered as a deed on behalf of            )
the Scheme Creditors by                                     )
                                                            )
……………………………………………………,             )
a duly authorised officer of                               )
**ZODIAC POOL SOLUTIONS SAS**                              )
                                                            )
acting pursuant to the authority conferred upon            )
him for this purpose under paragraph 9 of the              )
Schemes                                                     )

In the presence of:

Witness' Signature:     ………………………………
Name:                   ………………………………
Address:                ………………………………

                        ………………………………

## APPENDIX 1

### RELEASED PARTIES

1.  Each member of the Group and ZM Luxembourg S.C.A. and each of their directors or managers.

2.  The Senior Agent including its directors, officers and employees.

3.  The Mezzanine Agent including its directors, officers and employees.

4.  The Security Agent including its directors, officers and employees.

**ANNEX 1**

**SENIOR AMENDMENT AGREEMENT AND AMENDED SENIOR FACILITIES AGREEMENT**

ANNEX 2

## MEZZANINE AMENDMENT AGREEMENT AND AMENDED MEZZANINE FACILITY AGREEMENT

## ANNEX 3

### INTERCREDITOR AMENDMENT AGREEMENT AND AMENDED INTERCREDITOR AGREEMENT