**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| ESSAR STEEL ALGOMA INC., *et al.*,[1] | ) Case No. 14-[___] ([___]) |
| | ) |
| Debtors in a foreign proceeding | ) (Joint Administration Requested) |
| | ) |

**FOREIGN REPRESENTATIVE'S MOTION FOR ORDERS GRANTING**
**PROVISIONAL AND FINAL RELIEF IN AID OF FOREIGN PROCEEDING**

Essar Steel Algoma Inc. ("<u>Algoma</u>"), in its capacity as the foreign representative (the "<u>Foreign Representative</u>") of the above-captioned debtors (collectively, the "<u>Debtors</u>") in a foreign proceeding (the "<u>Canadian Proceeding</u>") under section 192 of the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended (the "<u>CBCA</u>") pending before the Ontario Superior Court of Justice, Commercial List (the "<u>Canadian Court</u>"), respectfully submits this motion (the "<u>Motion</u>") pursuant to sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") seeking entry of (a) a provisional order (the "<u>Provisional Order</u>"), substantially in the form attached hereto as **Exhibit A** (i) recognizing and enforcing in the United States, on an interim basis, the  interim order (the "<u>Preliminary CBCA Order</u>")[2] issued on July 16, 2014, by the Canadian Court, (ii) applying sections 362 and 365 of the Bankruptcy Code in these chapter 15 cases on an interim basis pursuant to sections

---

[1]    The Debtors in the foreign proceeding, along with the last four digits of the United States Tax Identification Number, Canadian Business Number or Netherlands Chamber of Commerce Number, as applicable, of each of the Debtors, are: Algoma Holdings B.V. (1679); Cannelton Iron Ore Company (9965); Essar Steel Algoma Inc. (0642); Essar Steel Algoma Inc. USA (8788); Essar Steel Canada Inc. (8779).  The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

[2]    A certified copy of the Preliminary CBCA Order is attached to the Sandoval Declaration (defined below) as <u>Exhibit A</u>. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Preliminary CBCA Order.

1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems just and proper; and (b) a final order (the "Final Order"), after notice and a hearing, substantially in the form attached hereto as **Exhibit B**: (i) granting the petitions in these cases and recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Preliminary CBCA Order, including any extensions or amendments thereof authorized by the Canadian Court and extending the protections of the Provisional Order to the Debtors on a final basis, and (iii) granting such other and further relief as the Court deems just and proper. In support of this Motion, the Foreign Representative refers the Court to (x) the statements contained in the *Declaration of J. Robert Sandoval in Support of (I) Verified Chapter 15 Petitions, (II) Foreign Representative's Motion for Orders Granting Provisional and Final Relief in Aid of Foreign Proceeding, and (III) Certain Related Relief* (the "Sandoval Declaration"), and (y) the *Foreign Representative's Memorandum of Law in Support of the Verified Petition for Recognition and Chapter 15 Relief* (the "Memorandum of Law"), which were both filed concurrently herewith and are incorporated herein by reference.   In further support of the relief requested herein, the Foreign Representative respectfully represents as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion pursuant to section 157 and 1334 of title 28 of the United States Code, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.

2.      These cases have been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Canadian Proceeding under section 1515 of the Bankruptcy Code.

3.      This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

4.      Venue is proper in this District pursuant to section 1410 of title 28 of the United States Code.

5.      The statutory bases for relief are sections 362, 365, 1517, 1519, 1520, 1521, and 105 of the Bankruptcy Code.

6.      Pursuant to Rule 9013-(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Background

**A.    The Debtors**

7.      Algoma is Canada's second largest integrated steel producer in Canada by capacity and by finished product shipments for the 2013 calendar year.  Algoma's steelworks operations and head office are located at its 2,000-acre site located in the hub of the Great Lakes region in Sault Ste. Marie, Ontario, Canada.  It has sales offices in Burlington, Ontario, and Calgary, Alberta in Canada and a small sales team in the United States.  Algoma employs approximately 3,000 employees, including eight in the United States, and approximately 95% of its Canadian employees are represented by the United Steelworkers of America.

8.      The Debtors are managed on a consolidated basis out of their corporate headquarters in Sault Ste. Marie, Ontario, Canada.  All corporate-level decision-making and corporate administrative functions affecting the Debtors, including decisions on capital

expenditures and business development initiatives, are centralized in the Sault Ste. Marie office; indeed, the entire Algoma management team is based in Sault Ste. Marie.  Additionally, all active business operations of Algoma are undertaken, and all producing assets of Algoma are located in Canada.

9.      While the Debtors' principal place of business and principal assets are located in Canada, certain of the Debtors are incorporated or otherwise organized under the laws of the United States and have assets located in the United States.  Specifically, Essar Steel Algoma Inc. USA ("ESAI USA") has office leases (the "U.S. Leases") in Chicago, IL, New York, NY, and Minneapolis, MN.  In addition, ESAI USA holds two separate bank accounts (the "U.S. Bank Accounts") at Bank of America—one in Richmond, VA and the other, in Atlanta, GA, which, as of June 30, 2014 hold $14,965.01 and $41,869.78, respectively.   Furthermore, each of the Debtors' credit instruments (the "Credit Instruments" and together with the U.S. Leases and the U.S. Bank Accounts, the "U.S. Assets") is governed by U.S. law and the majority of the lenders and noteholders thereto are located in the U.S.

**B.      The Debtors' Liabilities**

**a.      ABL Facility**

10.     On September 20, 2012, Algoma, as borrower, and Holdings and Cannelton, as guarantors, entered into that certain Credit Agreement, as amended, supplemented, or modified from time to time (the "ABL Credit Agreement"), with Deutsche Bank Trust Company Americas as administrative and collateral agent (the "ABL Agent") and the lenders from time to time party thereto.  The ABL Credit Agreement provides for an asset-based term loan facility (the "ABL Facility") maturing on September 20, 2014.

11.     As of the Petition Date, the principal amount outstanding under the ABL Facility is approximately $343.9 million.  Borrowings under the ABL Facility bear interest at the LIBOR

rate (subject to a floor of 1.25%) plus 8%, and are governed by a conventional asset-based loan borrowing base, comprised of advances on cash, accounts receivable, and inventory.   Any shortfall in the borrowing base will trigger a mandatory loan repayment in the amount of the shortfall, subject to certain cure rights including the deposit of cash into an account controlled by the ABL Agent.   All obligations under the ABL Facility are secured by working capital assets comprised of highly liquid cash, accounts receivable and inventory, and related proceeds, and are also secured on a junior basis by, among other assets, the plants, property, and equipment of Algoma.   The ABL Facility and consequently, the Debtors' and ABL lenders' respective rights, are governed by New York law.   <u>See</u> ABL Credit Agreement, Section 12.08.

### b.    Secured Notes

12.    As of the Petition Date, Algoma had $400 million principal amount outstanding of its Secured Notes due March 15, 2015 (the "<u>Secured Notes</u>") issued pursuant to that certain Indenture, dated as of December 14, 2009, among Algoma as issuer, Cannelton as guarantor, and Wilmington Trust Company as trustee, as amended, supplemented, or modified from time to time (the "<u>Secured Notes Indenture</u>").   Algoma has the option to redeem the existing Secured Notes, in whole or in part, at any time at a stipulated redemption price.   The Secured Notes bear interest at the rate of 9.375% per annum payable on March 15 and September 15 of each year. The Secured Notes are fully and unconditionally guaranteed, jointly and severally, on a senior unsecured basis by Holdings and on a senior secured basis (subject to the first priority security interests granted in respect of the ABL Facility on certain assets, including working capital assets) by Cannelton.   The Secured Notes and the Cannelton guarantee are secured by a first priority lien on plants, property, and equipment of Algoma.   The Secured Notes rank *pari passu* in right of payment with existing and future senior obligations and are senior in right of payment to all existing and future subordinated indebtedness.   The Senior Notes Indenture and

5

consequently, the respective rights of the Debtors and the holders of Secured Notes, are governed by New York law.  See Secured Notes Indenture, Section 13.06.

### c.        Avenue Loan

13.        On December 6, 2013, Algoma, as borrower, and Holdings and Cannelton, as guarantors, entered into that certain Credit Agreement, as amended, supplemented, or modified from time to time (the "Avenue Credit Agreement"), with Avenue Capital Management II, L.P. as documentation agent and the lenders from time to time party thereto.  The Avenue Credit Agreement provides for a term loan (the "Avenue Loan") of $25 million maturing on March 15, 2015.  The Avenue Loan bears interest at a rate of 9.375% per annum payable on the last business day of September and March, and is secured on a *pari passu* basis with the Secured Notes.

### d.        Transferred Secured Loan

14.        Algoma received a junior secured loan (the "Permitted Junior Secured Shareholder Loan") from its shareholder, Essar Steel Limited, a Mauritius company (the "Sponsor"), in the maximum principal amount of $30 million.  The Permitted Junior Shareholder Loan accrues payment-in-kind interest at a rate of 3.5% per annum, and is secured by substantially all of Algoma's right, title and interest in its personal property and owned real property subject to the terms of a junior intercreditor agreement.  On April 30, 2014, with the consent of the ABL Agent, Algoma transferred the Permitted Junior Secured Shareholder Loan to an unaffiliated third party (such transferred loan, the "Transferred Secured Loan").

### e.        Unsecured Notes

15.        As of the Petition Date, Algoma had approximately $384.7 million principal amount outstanding of its 9.875% senior unsecured notes due June 20, 2015 (the "Unsecured Notes") issued pursuant to that certain Indenture, dated as of June 20, 2007, among Algoma as

issuer, Cannelton as guarantor, and Wilmington Trust Company as trustee, as amended, supplemented, or modified from time to time (the "Unsecured Notes Indenture"). The Unsecured Notes due 2015 bear interest at the rate of 9.875% per annum payable on December 15 and June 15 of each year. The Unsecured Notes are senior unsecured obligations and rank *pari passu* in right of payment with the Debtors' existing and future senior obligations and are senior in right of payment to all existing and future subordinated indebtedness. The Unsecured Notes are effectively subordinated to all of Algoma's secured obligations, to the extent of the value of the assets securing such indebtedness. The Unsecured Notes are guaranteed on a senior unsecured basis by Cannelton. The Unsecured Notes Indenture and consequently, the respective rights of the Debtors and the holders of Unsecured Notes, are governed by New York law. See Unsecured Notes Indenture, Section 12.08.

### f.    Shareholder Loan

16.    As a condition to the ABL Agent's consent to the transfer of the Permitted Junior Secured Shareholder Loan, Essar Steel Algoma Inc. invested approximately $30 million into Holdings, and Holdings invested such amount into Algoma in the form of an unsecured shareholder loan permitted under the ABL Credit Agreement (the "Shareholder Loan"). The Shareholder Loan accrues payment-in-kind interest at a rate of 5.5% per annum and is not guaranteed.

### C.    The Canadian Proceeding

17.    Preceding the filing of these chapter 15 cases, the Debtors were engaged in negotiations with an ad hoc group of holders ("Unsecured Noteholder Committee") of more than 70% of the Unsecured Notes. The Debtors and the Unsecured Noteholder Committee, along with the Debtors' affiliate parent, Essar Global Fund Limited ("EGFL" and together with the Debtors and the Unsecured Noteholder Committee, the "Parties") have agreed in principle on the

terms of a restructuring, the principal terms of which are reflected in the term sheet (the "Term Sheet") attached hereto as **Exhibit C**. The Parties continue to negotiate the terms of the restructuring support agreement (the "RSA") and EGFL's equity commitment in connection with the restructuring and will finalize those agreements in the near term, at which point the Debtors will update the Court.

18.     On July 16, 2014, the Debtors commenced the Canadian Proceeding in the Canadian Court in order to restructure their debt obligations for the long-term benefit of their creditors and stakeholders, and the Canadian Court entered the Preliminary CBCA Order, granting certain interim relief in connection with the Canadian Proceeding.  Subsequently, on the date hereof (the "Petition Date"), the Foreign Representative commenced these chapter 15 cases by filing, among other things, verified chapter 15 petitions seeking recognition by the Court of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.

19.     Detailed information about the Debtors' business operations, the events leading to the Petition Date, and the facts and circumstances surrounding the Canadian Proceeding and these cases is set forth in the Sandoval Declaration and the Memorandum of Law.

### Relief Requested

20.     By this Motion, the Foreign Representative seeks entry of (a) the Provisional Order: (i) recognizing and enforcing in the United States, on an interim basis, the Preliminary CBCA Order issued by the Canadian Court, (ii) applying sections 362 and 365(e) of the Bankruptcy Code in these chapter 15 cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as the Court deems just and proper; and (b) the Final Order, after notice and a hearing: (i) granting the petitions filed in these cases and recognizing the Canadian Proceeding as a foreign main

proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Preliminary CBCA Order, including any extensions or amendments thereof authorized by the Final Order and extending the protections of the Provisional Order to the Debtors on a final basis, and (iii) granting such other and further relief as the Court deems just and proper.

**Basis for Relief Requested**

**II.    Sections 1519, 1521, and 105 of the Bankruptcy Code Authorize the Requested Provisional Relief**

21.    Section 1519 of the Bankruptcy Code authorizes the Court to grant the Foreign Representative certain enumerated relief pending the Court's entry of the Final Order:

> (a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including —
>
> . . . (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519(a).

22.    Section 1519(a)(3) of the Bankruptcy Code authorizes the Court to grant the Foreign Representative any relief referenced in section 1521(a)(7) of the Bankruptcy Code on a provisional basis. As described in detail below, section 1521(a)(7) permits a court to grant any relief, with certain limited and inapplicable exceptions, that would be available to a trustee in bankruptcy, and therefore authorizes the Court to apply sections 362, 365(e) and 105(a) of the Bankruptcy Code, which are urgently needed to protect the Debtors prior to entry of the Final Order.

23.    Accordingly, this Court has discretion to grant a stay of execution against the Debtors' assets, the entrustment of the Debtors' assets located in the United States to the Foreign

Representative, and application of section 362 and 365(e) on a provisional basis to preserve the Debtors' assets during the pendency of the these Chapter 15 cases. *See In re MAAX Corp.*, Case No. 08-11443 (CSS) (Bankr. D. Del. July 14, 2008) (applying, pursuant to section 1519 of the Bankruptcy Code, section 365(e) on a provisional basis to protect against contract termination); *In re Cinram International Inc.*, Case No. 12-11882 (KJC) (Bankr. D. Del. Jun. 26, 2012) (same); *In re Catalyst Paper Corp.*, Case No. 12-10221 (PJW) (Bankr. D. Del. Jan. 19, 2012) (same).

24.     Certain holders of Debtors' prepetition debt may assert that the commencement of the CBCA Proceedings is an event of default under the applicable agreement, and may proceed to exercise their remedies thereunder. In addition, counterparties to various contracts with the Debtors may take the position that such contracts terminated upon the commencement of the CBCA Proceedings and, without the protections afforded by section 365(e) of the Bankruptcy Code, the Debtors may lose valuable rights and benefits thereunder. The relief requested herein is necessary to protect against the disruption to business operations and interference with reorganization efforts that would result from such exercise of remedies by lenders, contract counterparties, and others. Absent this relief, the Debtors and their creditors may suffer irreparable harm.  Further, the Provisional Relief Order would not prohibit termination upon the occurrence of any default under the Debtors' contracts other than those specifically enumerated in section 365(e) of the Bankruptcy Code.

### III.     The Requested Provisional Relief is Justified.

25.     Provisional relief pursuant to section 1519 requires satisfaction of the standard for injunctive relief. 11 U.S.C. § 1519(e); *In re Innua Can. Ltd.*, 2009 WL 1025088, at *3 (Bankr. D.N.J. Mar. 25, 2009). In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the requested

injunction is denied; (c) granting preliminary relief will not result in even greater harm to the nonmoving party; and (d) the public interest favors such relief. *U.S. v. Bell*, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing *ACLU of N.J. v. Black Horse Pike Reg'l Bd. Of Educ.*, 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996)). *See also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). The Foreign Representative submits that the standard is satisfied in these cases with respect to the requested provisional relief, and that the relief is therefore justified.

### A.     There is a Substantial Likelihood of Recognition.

26.     As detailed more fully in the Petitions for Recognition, the Sandoval Declaration, and the Memorandum of Law, the Foreign Representative has set forth a compelling case for recognition of the Canadian Proceeding as a foreign main proceeding. The Canadian Proceeding is a "foreign proceeding."   In addition, these cases were duly and properly commenced by filing the Petitions for Recognition accompanied by all fees, documents, and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all parties to litigation pending in the United States to which the Debtors are a party at the time of the filing of the Petitions for Recognition, and (iii) all entities against whom provisional relief is being sought pursuant to section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to each of the Debtors that are known to the Foreign Representative; and (d) a certified copy of the Preliminary CBCA Order.

**B.**      **The Debtors Will Suffer Irreparable Harm Without the Protections of Sections 362 and 365 of the Bankruptcy Code.**

27.      The Foreign Representative believes that application of provisional relief pursuant to sections 362 and 365 of the Bankruptcy Code in these cases is critical to the prevention of irreparable damage to the Debtors' reorganization proceeding in Canada. These cases were commenced for the purpose of obtaining the assistance of the Court in respect of the Canadian Proceeding and to give effect in the United States to the Preliminary CBCA Order of the Canadian Court. As noted above, in the Sandoval Declaration and in the Memorandum of Law, Holdings and Cannelton are guarantors of the Senior Secured Notes and the Avenue Loan, and Cannelton is a guarantor of the Unsecured Notes, and each also has assets in the United States and/or stock of the principal Debtor, Algoma.   U.S. Debtor ESAI USA also has assets in the United States.  Such assets include office leases (the "U.S. Leases") in Chicago, IL, New York, NY, and Minneapolis, MN.  In addition, ESAI USA holds two separate bank accounts (the "U.S. Bank Accounts") at Bank of America—one in Richmond, VA and the other, in Atlanta, GA, which, as of June 30, 2014 hold $14,965.01 and $41,869.78, respectively.  Furthermore, each of the Debtors' credit instruments (the "Credit Instruments" and together with the U.S. Leases and the U.S. Bank Accounts, the "U.S. Assets") is governed by U.S. law and the majority of the lenders and noteholders thereto are located in the U.S.  The Debtors' and lenders' respective rights are governed by U.S. Law.  Of course, the Debtors' contractual rights are property of the Debtor and should be afforded the protections under section 362 of the Bankruptcy Code. Unless the Provisional Order is entered, the Debtors face the possibility of immediate and irreparable harm from potential actions being brought against Holdings and/or Cannelton in the United States seeking to enforce their guarantees of the Senior Notes, the Avenue Loan, and/or the Unsecured Notes or to recover in respect of the U.S. Assets.  This type of decentralized

12

administration of the Debtors' assets could be extremely prejudicial to the Debtors' reorganization process, and could serve to hinder the Canadian Proceeding.

28.    With respect to the potential for collection activity on a piecemeal basis, a number of courts have recognized the need for provisional relief to prevent individual creditors from taking extrajudicial advantage of the recognition process. *See Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987) (harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines*, 81 B.R. at 270 (stating that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

29.    If all creditors are not enjoined, the U.S. Assets may be prematurely seized, or actions commenced, and the orderly determination of claims in the foreign proceeding will be rendered impossible. If creditors unilaterally pursue collection or enforcement efforts, or application of setoff, it could diminish the value of the Debtors' assets and cause significant delay and disruption to the Debtors' restructuring process. In addition, counterparties to various contracts with the Debtors may take the position that such contracts terminated upon the commencement of the CBCA Proceedings and, without the protections afforded by section 365(e) of the Bankruptcy Code, the Debtors may lose valuable rights and benefits thereunder. The relief requested herein is necessary to protect against the disruption to business operations and interference with the reorganization efforts that would result from such exercise of remedies

by contract counterparties and others. The purpose of chapter 15 is to prevent such harm. See 11

U.S.C. § 1501.  Absent this relief, the Debtors and their creditors may suffer irreparable harm.

### C.    There Will be No Greater Harm to Creditors if the Provisional Relief is Granted.

30.    The Debtors' creditors will not suffer any significant harm by the requested

provisional relief, as the relief will merely preserve the status quo during the short time necessary

for the Court to rule on the Petitions for Recognition.[3]  In fact, the Foreign Representative

believes that granting the request for provisional relief will benefit the Debtors' creditors because

it will ensure the value of the Debtors' assets are preserved, protected and maximized for the

benefit of all creditors.

31.    The Debtors will provide certain adequate protection to the holders of Secured

Notes, lenders under the ABL Facility, and Avenue Capital in consideration for the Debtors' use

of assets during the pendency of the Canadian Proceeding and these chapter 15 cases.  Such

adequate protection will be in the form of:

a.  payment of actual, reasonable and documented fees and expenses of (x) White & Case LLP and Osler, Hoskin & Harcourt LLP, each in connection with serving as legal counsel to Deutsche Bank Trust Company Americas, as administrative agent for the ABL Facility, and (y) Pillsbury Winthrop Shaw Pittman LLP in connection with serving as legal counsel to Wilmington Trust Company, as trustee for the Secured Notes Indenture, in each case of (x) and (y) whether incurred before or after the Petition Date in connection with the Canadian Proceeding and these chapter 15 cases;

b.  unless otherwise agreed, compliance with the "Borrowing Base" (as such term is defined in the ABL Credit Agreement);

c.  delivery of the Budget as defined in the Term Sheet to Deutsche Bank Trust Company Americas, as administrative agent for the ABL Facility, and Wilmington Trust Company, as trustee for the Secured Notes

---

[3]    The Provisional Order will allow any creditor that believes it has been harmed by the provisional relief to file a motion with the Court seeking relief upon notice and a hearing.

Indenture and collateral agent under the Avenue Credit Agreement; provided that Deutsche Bank Trust Company Americas and Wilmington Trust Company may deliver such Budget to the lenders under the ABL Facility, on the one hand, and the Avenue Credit Agreement and the holders under the Secured Notes Indenture, on the other hand, so long as such lenders and holders have executed a non-disclosure agreement satisfactory to the Debtors; and

d. payment of any unpaid interest accrued and owed under the ABL Facility, the Secured Notes Indenture, and the Avenue Credit Agreement during the post-petition period as and when due under the applicable credit documents; provided that such interest shall accrue and be owed at the non-default rate set forth in such credit documents.

32.    The Foreign Representative submits that there will be little, if any, harm to creditors if the Foreign Representative's request for provisional relief is granted; indeed, harm will come to the Debtors' creditors if the provisional relief is not granted.

**D.    The Public Interest Favors Granting the Provisional Relief.**

33.    As noted above, the requested provisional relief is consistent with the policy underlying the Bankruptcy Code and is in the public interest because it will facilitate the Debtors' efforts to complete a court-supervised restructuring for the benefit of the Debtors' creditors and other stakeholders. *See Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *In re Lazarus Burman Assocs.*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("The public interest requires bankruptcy courts to consider the good of the case as a whole."); *Am. Film Techs, Inc. v. Taritero (In re Am. Film Techs., Inc.)*, 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (*quoting*

*Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Rest., Inc.)*, 79 B.R. 992, 1001 (Bankr. N.D. Ind. 1986)).

34.    In addition, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. 11 U.S.C. § 1501(a).

35.    For these reasons, the Court has frequently granted requests for similar provisional relief in chapter 15 cases. *See, e.g., In re Elpida Memory, Inc.*, Case No. 12-10947 (CSS) (Bankr. D. Del. Mar. 21, 2012) (order granting provisional relief, including protections of automatic stay); I*n re Arctic Glacier Int'l Inc.*, Case No. 12-10605 (KG) (Bankr. D. Del. Feb. 23, 2012) (order granting provisional relief, including the protections of automatic stay); *In re Angiotech Pharm. Inc.*, Case No. 11-10269 (KG) (Bankr. D. Del. Jan. 31, 2011) (order granting provisional relief, including protections of automatic stay); *In re Nortel Networks UK Ltd.*, Case No. 09-11972 (KG) (Bankr. D. Del. Oct. 27, 2010) (order granting provisional relief, including protections of automatic stay); *In re MAAX Corp.*, Case No. 08-11443 (CSS) (Bankr. D. Del. July 14, 2008) (order granting provisional relief, including the protections of automatic stay).

**IV.    Sections 1517, 1520, and 1521 of the Bankruptcy Code Authorize the Requested Final Relief**

36.    Section 1517(a) of the Bankruptcy Code authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if such proceeding is a foreign main proceeding or a foreign nonmain proceeding, the foreign representative applying for recognition is a person or body, and the application for recognition was properly filed in accordance with section 1515 of the Bankruptcy Code.  Section 1517(b) of the Bankruptcy Code further provides that such a proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests.

37.     As more fully set forth in the Memorandum of Law and the Sandoval Declaration, the Foreign Representative respectfully submits that (a) the Canadian Proceeding is a foreign main proceeding within the meanings of sections 101(23) and 1502(4) of the Bankruptcy Code, (b) it is an authorized foreign representative within the meaning of section 101(24) of the Bankruptcy Code, and (c) the verified chapter 15 petitions were properly filed in accordance with section 1515 of the Bankruptcy Code.

38.     Specifically, the Canadian Proceeding is pending in Canada, the center of each of the Debtors' and their corporate family's main interests. As described in the Memorandum of Law and the Sandoval Declaration, the Debtors are managed on a consolidated basis out of Algoma's corporate headquarters in Sault Ste. Marie, Ontario. All corporate-level decision-making and corporate administrative functions affecting the Debtors, including decisions on capital expenditures and business development initiatives, are centralized in the Sault Ste. Marie office. Moreover, the entire Algoma management team is based in Sault Ste. Marie.

39.     As described in the Memorandum of Law and Sandoval Declaration and set forth in the Preliminary CBCA Order, the Foreign Representative is authorized to act as a foreign representative and to administer the reorganization of the Debtors' assets and affairs as determined by the Canadian Court.  Further, these cases were duly and properly commenced as required by sections 1504 and 1509(a) by filing the verified petitions and all other required documents in accordance with section 1515 of the Bankruptcy Code.

40.     As described in the Memorandum of Law and the Sandoval Declaration, recognizing the Canadian Proceeding as a foreign main proceeding and granting the provisional relief requested herein on a final basis, in addition to the relief automatically granted upon recognition pursuant to section 1520 of the Bankruptcy Code, is consistent with the purposes of

chapter 15 of the Bankruptcy Code and public policy of the United States. Therefore, the Foreign Representative respectfully requests that, upon notice and a hearing, the Court grant the Final Order and such other and further relief as the Court may deem just and proper.

## Conclusion

41.     The Foreign Representative respectfully submits that (a) there is a substantial likelihood that the Canadian Proceeding will be recognized as a foreign main proceeding, (b) the Debtors will suffer irreparable harm without the protections of sections 362 and 365 of the Bankruptcy Code, (c) there will be no greater harm to creditors if the provisional relief is granted and (d) it is in the public interest that the provisional relief sought herein be granted.

## Notice

42.     The Foreign Representative has provided notice of the Motion to the following parties:  (a) principal parties that have appeared in the Canadian Proceeding as of the date of service of the relevant pleading; (b) United States Trustee for Region 3, 844 King Street, Suite 2207, Wilmington, DE 19801, Attn.:  Timothy J. Fox, Esq.; (c) Deutsche Bank Trust Company as administrative agent to the ABL Facility, 60 Wall Street, New York, NY 10005, Attn.:  Marcus Tarkington; (d) Avenue Capital Management II, L.P., as documentation agent to the Avenue Credit Agreement, 399 Park Avenue, 6th Floor, New York, NY 10022, Attn.:  Esther Posner; (e) Avenue Special Opportunities Fund I, LP, as transferee of the Transferred Secured Loan, 399 Park Avenue, 6th Floor, New York, NY 10022, Attn.:  Esther Posner; (f) counsel to Wilmington Trust Company, as trustee for the Senior Notes Indenture and the Unsecured Notes Indenture, Pillsbury Winthrop Shaw Pittman LLP, 1540 Broadway, New York, NY 10036-4039, Attn.:  Bart Pisella, Esq.; (g) counsel to EGFL, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022, Attn.:   Robert Britton, Esq.; (h) counsel to the Unsecured Noteholder Committee, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Attn.:  Brian Herman,

Esq.; (i) the United States Attorney for the District of Delaware; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) all entities against whom provisional relief is being sought pursuant to section 1519 of the Bankruptcy Code; (m) all parties to litigation pending in the United States to which the Debtors are a  party at the time of the filing of the chapter 15 petitions; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.

### No Prior Request

43.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Foreign Representative respectfully requests that the Court: (a) enter the Provisional Order, substantially in the form attached hereto as **Exhibit A**; (b) enter the Final Order, upon notice and a hearing, substantially in the form attached hereto as **Exhibit B**; and (c) grant such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: July 16, 2014<br>Wilmington, Delaware | */s/ Amanda R. Steele* |

Daniel J. DeFranceschi (DE Bar No. 2732)
Michael J. Merchant (DE Bar No. 3854)
Amanda Steele (DE Bar No. 5530)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         defranceschi@rlf.com
               merchant@rlf.com
               steele@rlf.com

- and -

Paul M. Basta P.C. (*pro hac vice* admission pending)
Ray C. Schrock P.C. (*pro hac vice* admission pending)
Christopher T. Greco (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         pbasta@kirkland.com
               rschrock@kirkland.com
               cgreco@kirkland.com

Co-Counsel for the Foreign Representative

## EXHIBIT A

**Proposed Provisional Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 15 |
|  | ) |  |
| ESSAR STEEL ALGOMA INC., *et al.*,[1] | ) | Case No. 14-[___] ([___]) |
|  | ) |  |
| Debtors in a foreign proceeding | ) | (Joint Administration Requested) |
|  | ) |  |

**ORDER GRANTING PROVISIONAL RELIEF**

Upon the motion (the "Motion") [2] of Essar Steel Algoma Inc. ("Algoma"), in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in a  proceeding (the "Canadian Proceeding") commenced under section 192 of the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended (the "CBCA") currently pending before the Ontario Superior Court of Justice, Commercial List (the "Canadian Court"), pursuant to sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of (a) a provisional order (this "Order"):  (i) recognizing and enforcing in the United States, on an interim basis, the interim order (the "Preliminary CBCA Order") issued on July 16, 2014 by the Canadian Court, (ii) applying sections 362 and 365 of the Bankruptcy Code in these chapter 15 cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as this Court deems just and proper; and (b) a final order after notice and a hearing (the "Final Order") (i) granting the petitions in these cases and

---

[1]   The Debtors in the foreign proceeding, along with the last four digits of the United States Tax Identification Number, Canadian Business Number or Netherlands Chamber of Commerce Number, as applicable, of each of the Debtors, are: Algoma Holdings B.V. (1679); Cannelton Iron Ore Company (9965); Essar Steel Algoma Inc. (0642); Essar Steel Algoma Inc. USA (8788); Essar Steel Canada (8779).  The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Preliminary CBCA Order, including any extensions or amendments thereof authorized by the Canadian Court and extending the protections of this Order to the Debtors on a final basis, and (iii) granting such other and further relief as this Court deems just and proper; and it appearing that this Court has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501; and this Court having reviewed the Motion, the Petitions for Recognition, the Sandoval Declaration, and the Memorandum of Law, and having considered the statements of counsel with respect to the Motion at a hearing before this Court (the "Hearing"); and due and sufficient notice of the provisional relief sought in the Motion having been given; and it appearing that no other or further notice need be provided; and it appearing that the provisional relief requested by the Motion is in the best interest of the Debtors, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.        The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.      Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

E.      The Foreign Representative has demonstrated a substantial likelihood of success on the merits that (a) the Debtors are subject to a pending "foreign main proceeding" as that term is defined in section 1502(4) of the Bankruptcy Code, (b) the Foreign Representative is a "foreign representative" as that term is defined in section 101(24) of the Bankruptcy Code, and (c) all statutory elements for recognition of the Canadian Proceeding are satisfied in accordance with section 1517 of the Bankruptcy Code.

F.      The Foreign Representative has demonstrated that (a) the commencement of any proceeding or action in the U.S. against the Debtors and their respective businesses and all of their assets should be enjoined pursuant to section 1519, 1521, and 105(a) of the Bankruptcy Code, which protections, in each case, shall be coextensive with the provisions of section 362 of the Bankruptcy Code, to permit the fair and efficient administration of the Canadian Proceeding pursuant to the Preliminary CBCA Order and any other applicable orders of the Canadian Court, for the benefit of all stakeholders, and (b) the relief requested in the Motion will neither cause an undue hardship nor create any hardship to parties in interest that is not outweighed by the benefits of the relief granted herein.

G.      The Foreign Representative has demonstrated that without the protection of section 365(e) of the Bankruptcy Code, there is a material risk that counterparties to certain of the Debtors' contracts may take the position that the commencement of the CBCA Proceeding or these Chapter 15 cases authorizes them to terminate such contracts or accelerate obligations thereunder.  Such termination or acceleration will severely impair the Debtors' restructuring

3

efforts and result in irreparable damage to the value of the Debtors' assets and substantial harm to the Debtors' creditors and other parties in interest.

H.      The Foreign Representative has demonstrated that absent the relief granted herein, there is a material risk that one or more parties in interest will take action against the Debtors or their assets.  As a result, the Debtors may suffer immediate and irreparable injury, loss, or damage for which there is no adequate remedy at law and therefore it is necessary that this Court grant the relief requested in the Motion without prior notice to parties in interest or their counsel. Further, unless this Order is entered, the Debtors' assets could be subject to efforts by creditors to control, possess, or execute upon such assets and such efforts could result in the Debtors suffering immediate and irreparable injury, loss or damage by, among other things, creditors (a) interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, and (b) interfering with or undermining the success of the Canadian Proceeding.

I.      The Foreign Representative has demonstrated that no injury will result to any party that is greater than the harm to the Debtors' business, assets, and property in the absence of the relief requested in the Motion.

J.      The interests of the public and public policy of the United States will be served by entry of this Order.

K.      The Foreign Representative and the Debtors are entitled to the full protections and rights available pursuant to section 1519(a)(1)-(3) of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Motion is granted to the extent set forth herein.

2.      The Preliminary CBCA Order is hereby enforced on an interim basis, including, without limitation, staying the commencement or continuation of any actions against the Debtors

4

or their assets, and shall be given full force and effect in the United States until otherwise ordered by this Court.

3.      While this Order is in effect, the Foreign Representative is entitled to the full protections and rights pursuant to section 1519(a)(1), which protections shall be coextensive with the provisions of section 362 of the Bankruptcy Code, and this Order shall operate as a stay of any execution against the Debtors' assets within the territorial jurisdiction of the United States.

4.      While this Order is in effect, pursuant to sections 1519(a)(3) and 1521(a)(7) of the Bankruptcy Code, sections 362 and 365(e) of the Bankruptcy Code are hereby made applicable in these cases to the Debtors and the property of the Debtors within the territorial jurisdiction of the United States.  Specifically, all entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and its expressly authorized representatives and agents, are hereby enjoined from:

a) execution against any of the Debtors' assets;

b) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, including without limitation any and all unpaid judgments, settlements, or otherwise against the Debtors in the United States;

c) taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against the Debtors or any of their property;

d) transferring, relinquishing, or disposing of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

e) commencing or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to section 1520(a) of the Bankruptcy Code; and

f)  terminating contracts or otherwise accelerating obligations thereunder

*provided*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the United States.

5.      Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy Code or (b) staying the exercise of any rights that section 362(o) of the Bankruptcy Code does not allow to be stayed.

6.      The Debtors' creditors will not suffer any significant harm by the requested provisional relief, as the relief will merely preserve the status quo during the short time necessary for the Court to rule on the Petitions for Recognition.[3]  The provisional relief sought will benefit the Debtors' creditors because it will ensure the value of the Debtors' assets are preserved, protected and maximized for the benefit of all creditors.

7.      The Debtors will provide certain adequate protection to the holders of Secured Notes, lenders under the ABL Facility, and Avenue Capital in consideration for the Debtors' use of assets during the pendency of the Canadian Proceeding and these chapter 15 cases.  Such adequate protection will be in the form of:

> a)   payment of actual, reasonable and documented fees and expenses of (x) White & Case LLP and Osler, Hoskin & Harcourt LLP, each in connection with serving as legal counsel to Deutsche Bank Trust Company Americas, as administrative agent for the ABL Facility, and (y) Pillsbury Winthrop Shaw Pittman LLP in connection with serving as legal counsel to Wilmington Trust Company, as trustee for the Secured Notes Indenture, in each case of (x) and (y) whether incurred before or after the Petition Date in connection with the Canadian Proceeding and these chapter 15 cases;

---

[3]   The Provisional Order will allow any creditor that believes it has been harmed by the provisional relief to file a motion with the Court seeking relief upon notice and a hearing.

b) unless otherwise agreed, compliance with the "Borrowing Base" (as such term is defined in the ABL Credit Agreement);

c) delivery of the Budget as defined in the Term Sheet to Deutsche Bank Trust Company Americas, as administrative agent for the ABL Facility, and Wilmington Trust Company, as trustee for the Secured Notes Indenture and collateral agent under the Avenue Credit Agreement; provided that Deutsche Bank Trust Company Americas and Wilmington Trust Company may deliver such Budget to the lenders under the ABL Facility, on the one hand, and the Avenue Credit Agreement and the holders under the Secured Notes Indenture, on the other hand, so long as such lenders and holders have executed a non-disclosure agreement satisfactory to the Debtors; and

d) payment of any unpaid interest accrued and owed under the ABL Facility, the Secured Notes Indenture, and the Avenue Credit Agreement during the post-petition period as and when due under the applicable credit documents; provided that such interest shall accrue and be owed at the non-default rate set forth in such credit documents.

8.     The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

9.     The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

10.     The terms and conditions of this Order shall be immediately effective and enforceable upon entry.

11.     This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through these chapter 15 cases, and any request by an entity for relief from the provisions of this Order that is properly commenced and within the jurisdiction of this Court.

Dated: _____, 2014
      Wilmington, Delaware          _____
                             United States Bankruptcy Judge

7

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 15 |
| | ) |
| ESSAR STEEL ALGOMA INC., *et al.*,[1] | ) Case No. 14-[___] ([___]) |
| | ) |
| Debtors in a foreign proceeding | ) (Joint Administration Requested) |
| | ) |

**ORDER GRANTING RECOGNITION OF FOREIGN MAIN**
**PROCEEDING AND CERTAIN RELATED RELIEF ON A FINAL BASIS**

Upon the motion (the "Motion") [2] of Essar Steel Algoma Inc. ("Algoma") in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors") in a  proceeding (the "Canadian Proceeding") commenced under section 192 of the *Canada Business Corporations Act*, R.S.C. 1985, c. C-44, as amended (the "CBCA") currently pending before the Ontario Superior Court of Justice, Commercial List (the "Canadian Court"), pursuant to sections 362, 365, 1517, 1519, 1520, 1521, and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of (a) a provisional order (the "Provisional Order"):  (i) recognizing and enforcing in the United States, on an interim basis, the interim order (the "Preliminary CBCA Order") issued on July 16, 2014 by the Canadian Court, (ii) applying sections 362 and 365 of the Bankruptcy Code in these chapter 15 cases on an interim basis pursuant to sections 1519(a)(3), 1521(a)(7), and 105(a) of the Bankruptcy Code, and (iii) granting such other and further relief as this Court deems just and proper; and (b) a final order after notice and a hearing (this "Order") (i) granting the petitions in

---

[1]    The Debtors in the foreign proceeding, along with the last four digits of the United States Tax Identification Number, Canadian Business Number or Netherlands Chamber of Commerce Number, as applicable, of each of the Debtors, are: Algoma Holdings B.V. (1679); Cannelton Iron Ore Company (9965); Essar Steel Algoma Inc. (0642); Essar Steel Algoma Inc. USA (8788); Essar Steel Canada Inc. (8779).  The location of the Debtors' corporate headquarters and the service address for all of the Debtors is:  105 West Street, Sault Ste. Marie, Ontario P6A 7B4, Canada.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

these cases and recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Preliminary CBCA Order, including any extensions or amendments thereof authorized by the Canadian Court and extending the protections of this Order to the Debtors on a final basis, and (iii) granting such other and further relief as this Court deems just and proper; and it appearing that this Court has jurisdiction to consider the Petition and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501; and this Court having reviewed the Motion, the Petitions for Recognition, the Sandoval Declaration, and the Memorandum of Law, and having considered the statements of counsel with respect to the Motion at a hearing before this Court (the "Hearing"); and due and sufficient notice of the relief sought in the Motion having been given; and it appearing that no other or further notice need by provided; and this Court having determined that the legal and factual bases set forth in the Motion, the Petitions for Recognition, the Sandoval Declaration, the Memorandum of Law, and all other pleadings and papers in these cases establish just cause to grant the relief ordered herein, and after due deliberation therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

B.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.      Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

E.      The Foreign Representative is the duly appointed "foreign representative" of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

F.      These chapter 15 cases were properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

G.      The Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 2002(q).

H.      The Canadian Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

I.      The Canadian Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

J.      Canada is the center of main interests of each of the Debtors, and accordingly, the Canadian Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

K.      The Foreign Representative is entitled to all the automatic stay relief available pursuant to section 1520 of the Bankruptcy Code.

L.      The Foreign Representative is further entitled to the discretionary relief expressly set forth in section 1521(a) and (b) of the Bankruptcy Code.

3

M.      The relief granted herein in necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to section 1517, 1520, and 1521 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Petitions for Recognition and the Motion are granted.

2.      The Canadian Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

3.      The Preliminary CBCA Order, including any extensions, amendments, or modifications thereto, is hereby enforced on a final basis and given full force and effect in the United States.

4.      All relief afforded foreign main proceedings pursuant to section 1520 of the Bankruptcy Code is hereby granted to the Canadian Proceeding, the Debtors, and the Foreign Representative as applicable.

5.      Sections 362 and 365(e) of the Bankruptcy Code shall hereby apply with respect to the Debtors and the property of the Debtors that is within the territorial jurisdiction of the United States.

6.      Subject to sections 1520 and 1521 of the Bankruptcy Code, the Canadian Proceeding and the Preliminary CBCA Order, and the transactions consummated or to be consummated thereunder, shall be granted comity and given full force and effect in the United States to the same extent that they are given effect in Canada, and each is binding on all creditors of the Debtors and any of their successors and assigns.

7.      Pursuant to section 1521(a)(6) of the Bankruptcy Code, all prior relief granted to the Debtors or the Foreign Representative by this Court pursuant to section 1519(a) of the Bankruptcy Code shall be extended and the Provisional Order shall remain in full force and effect, notwithstanding anything to the contrary contained therein.

8.      All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and its expressly authorized representatives and agents, are hereby enjoined from:

a)  execution against any of the Debtors' assets;

b)  the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, including without limitation any and all unpaid judgments, settlements, or otherwise against the Debtors in the United States;

c)  taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against the Debtors or any of their property;

d)  transferring, relinquishing, or disposing of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

g)  commencing or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to section 1520(a) of the Bankruptcy Code; and

h)   terminating contracts or otherwise accelerating obligations thereunder,

*provided*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the United States.

9.      Notwithstanding anything to the contrary contained herein, this Order shall not be construed as (a) enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy

Code or (b) staying the exercise of any rights that section 362(o) of the Bankruptcy Code does not allow to be stayed.

      10.    The Debtors will provide certain adequate protection to the holders of Secured Notes, lenders under the ABL Facility, and Avenue Capital in consideration for the Debtors' use of assets during the pendency of the Canadian Proceeding and these chapter 15 cases.  Such adequate protection will be in the form of:

    a)  payment of actual, reasonable and documented fees and expenses of (x) White & Case LLP and Osler, Hoskin & Harcourt LLP, each in connection with serving as legal counsel to Deutsche Bank Trust Company Americas, as administrative agent for the ABL Facility, and (y) Pillsbury Winthrop Shaw Pittman LLP in connection with serving as legal counsel to Wilmington Trust Company, as trustee for the Secured Notes Indenture, in each case of (x) and (y) whether incurred before or after the Petition Date in connection with the Canadian Proceeding and these chapter 15 cases;

    b)  unless otherwise agreed, compliance with the "Borrowing Base" (as such term is defined in the ABL Credit Agreement);

    c)  delivery of the Budget as defined in the Term Sheet to Deutsche Bank Trust Company Americas, as administrative agent for the ABL Facility, and Wilmington Trust Company, as trustee for the Secured Notes Indenture and collateral agent under the Avenue Credit Agreement; provided that Deutsche Bank Trust Company Americas and Wilmington Trust Company may deliver such Budget to the lenders under the ABL Facility, on the one hand, and the Avenue Credit Agreement and the holders under the Secured Notes Indenture, on the other hand, so long as such lenders and holders have executed a non-disclosure agreement satisfactory to the Debtors; and

    d)  payment of any unpaid interest accrued and owed under the ABL Facility, the Secured Notes Indenture, and the Avenue Credit Agreement during the post-petition period as and when due under the applicable credit documents; provided that such interest shall accrue and be owed at the non-default rate set forth in such credit documents.

      11.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12.    The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules of this Court.

13.    The terms and conditions of this Order shall be immediately effective and enforceable upon entry.

14.    This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through these chapter 15 cases, and any request by an entity for relief from the provisions of this Order that is properly commenced and within the jurisdiction of this Court.

15.    The Foreign Representative is hereby authorized to apply to this Court to examine witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations, or liabilities of the Debtors, as such information is required in the Canadian Proceeding.

16.    The Foreign Representative, the Debtors and/or each of their successors, representatives, advisors, or counsel shall be entitled to the protections contained in sections 306 and 1510 of the Bankruptcy Code.

17.    Notwithstanding any provision in the Bankruptcy Rules to the contrary:  (a) this Order shall be effective immediately and enforceable upon entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Foreign Representative is authorized and empowered, and may in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

7

18.    A copy of this Order, confirmed to be true and correct, shall be served, within three business days of entry of this Order, by facsimile, electronic mail, or overnight express delivery, upon all persons or bodies authorized to administer foreign proceedings of the Debtors, all entities against whom provisional relief was granted pursuant to section 1519 of the Bankruptcy Code, all parties to litigation pending in the United States in which any of the Debtors were a party at the time of the filing of the Petitions for Recognition, the Office of the United States Trustee for the District of Delaware, and such other entities as this Court may direct.  Such service shall be good and sufficient service and adequate notice for present purposes.

19.    This Court shall retain jurisdiction with respect to:   (a) the enforcement, amendment, or modification of this Order; (b) any requests for additional relief or any adversary proceeding brought in and through these cases; and (c) any request by an entity for relief from the provisions of this Order.


Dated: _____, 2014                    _____
        Wilmington, Delaware                         United States Bankruptcy Judge

## Exhibit C

**Term Sheet**

Final Version
Wednesday, July 16, 2014

---

## ESSAR STEEL ALGOMA INC.
### Summary Agreement with Ad Hoc Committee of Unsecured Noteholders[1]

---

| | |
|---|---|
| Claim Amount: | The original principal amount of the Company's 9.875% Senior Notes due 2015 plus all accrued and unpaid interest thereon (and on all due and unpaid interest) at the non-default rate through the closing of the restructuring transactions (collectively, the "Transaction") described herein (the "Claim"). |
| Cash Payment: | 32.5% of the Claim payable in cash in USD[2] at closing. |

| | | |
|---|---|---|
| Exchange Notes: | Principal Amount: | 55% of the Claim. |
| | Security: | Lien on all assets of Essar Steel Algoma Inc. and its subsidiaries (the "Company" or "Algoma"), including all assets securing the Company's new senior secured obligations payable to the Company's new, unaffiliated, third party senior secured lenders (the "New Senior Secured Debt"). Lien shall rank immediately junior to the New Senior Secured Debt, but in any event shall not rank lower than a third lien on the assets as described in the foregoing sentence. |
| | Interest Rate: | PIK or cash, at the Company's option, at 150 bps above the all-in-yield to maturity of the Company's lowest ranking New Senior Secured Debt, subject to a floor of 9.875%. |
| | Maturity: | 90 days after maturity date of the lowest ranking New Senior Secured Debt. |
| | Call Rights: | The Exchange Notes shall be callable in full, but not in part, in accordance with the following call schedule: (i) 90% of the original principal amount of the Exchange Notes plus 100% of all PIK interest, regardless if capitalized or accrued, since the closing of the Transaction, if called between the closing of the Transaction and the first anniversary |

---

[1] The term Unsecured Noteholders means holders of the Company's 9.875% Senior Notes due 2015, and the 9.875% notes shall be referred to herein as the "Existing Notes."

[2] All amounts referenced herein shall be in U.S. dollars.

1

Final Version
Wednesday, July 16, 2014

of the issuance date of the Exchange Notes, (ii) 100% of the amount then outstanding of the Exchange Notes (including all PIK interest paid to such date) plus 100% of all PIK interest accrued and unpaid from the first anniversary through the second anniversary of the issuance date of the Exchange Notes, and (iii) thereafter, 110% of the amount then outstanding of the Exchange Notes (including all PIK interest paid to such date) plus 100% of all accrued and unpaid PIK interest. For the avoidance of doubt, PIK interest shall be payable and compound quarterly.

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Company may, at its option, pay cash equal to the call right in clause (i) above at closing in lieu of issuing the Exchange Notes.

Rating Requirement:    The Company shall use commercially reasonable efforts to have the Exchange Notes rated by at least one rating agency by the closing of the Transaction contemplated herein; provided that such rating shall be obtained not later than thirty (30) days after the closing of such Transaction.

Intercreditor Agreement:    Standard and customary intercreditor agreement shall be entered into subject to the Ad Hoc Committee's reasonable consent, taking into account the nature and lien priority position of the Exchange Notes described in this term sheet.

Exchange Notes Covenants:    Terms shall not be more restrictive than the terms for lowest ranking New Senior Secured Debt.

Ad Hoc Committee New Second Lien Financing Participation Fee:    For the participation of any individual member of the Ad Hoc Committee of Unsecured Noteholders (the "Ad Hoc Committee") in any new second lien financing (the "Participation"), such individual member will receive a fee payable upon the funding of the Participation, if any. The fees payable upon funding shall be the greater of (i) 2% of the Participation and (ii) 75% of the fees that the investment banks would otherwise earn if they arranged the same amount as the Participation, payable by the Company at the closing of any such new second lien financing.

EGFL Shareholder Loan:   The EGFL shareholder loan claims consisting of an approximately $30 million loan from EGFL to the Company, plus accrued and unpaid interest thereon, shall remain outstanding as of the closing of the Transaction or, at EGFL's sole option, converted to equity in the Company, subject to such modifications as the Ad Hoc Committee and EGFL shall mutually agree upon, which shall include the following modifications: (i) be subordinated to the Exchange Notes in all respects, (ii) have a maturity date that is at least 90 days beyond the maturity date of the Exchange Notes; (iii) only receive PIK interest payments prior to the maturity of the Exchange Notes; and (iv) otherwise not permit any cash payments to be made to the holder(s) thereof on account of such EGFL shareholder loan prior to the payment in full of the Exchange Notes (including all accrued PIK interest and any applicable call premium).

EGFL Commitment:   EGFL shall execute and deliver to the Company a commitment letter (the "EGFL Commitment") in form and substance satisfactory to the Company and the Ad Hoc Committee, pursuant to which EGFL shall commit to acquire for cash (the "Investment"), directly or through one or more non-debtor subsidiaries, newly-issued equity securities (the Investment may be made, as equity, or at EGFL's option, as a Permitted Shareholder Loan (pursuant to, and as such term is defined under the indenture for the Existing Notes) that is junior and subordinated to the Existing Notes, provided that any such Permitted Shareholder Loan shall convert to equity at the closing of the Transaction) (collectively, "Securities") of Algoma, the proceeds of which shall be sufficient to fund and support the Transaction as set forth herein.   The EGFL commitment shall, at a minimum, amount to $250 million (USD) (the "EGFL Minimum Total Commitment") and, be subject to a maximum total commitment of $300 million (USD) (the "EGFL Maximum Total Commitment"), as described in the EGFL Commitment letter and subject to the Permitted Inventory Financing (as defined herein).   The Investment shall consist of the purchase by EGFL directly or through one or more non-debtor affiliates of (a) Securities in an amount not to exceed an aggregate amount of $100 million in cash (the "Pre-Closing Liquidity Commitment"), of which $25 million shall be funded not later than 5 business days after executing the RSA, with the remaining amounts to be agreed based upon a Budget acceptable to the Ad Hoc Committee, and any amounts paid indirectly by EGFL or its affiliates to satisfy any guarantee by EGFL or its affiliates, directly or indirectly, of accounts receivable owed to the Company shall reduce dollar-for-dollar the Pre-Closing Liquidity Commitment; provided that the funds paid to satisfy such guarantee must be free of restrictions on use and constitute

3

Final Version
Wednesday, July 16, 2014

unrestricted cash, subject to the existing Borrowing Base, as defined and set forth in the Credit Agreement, dated September 20, 2012[3] and (b) a cash amount sufficient when combined with the net proceeds of the New Senior Secured Debt and any unrestricted balance sheet cash immediately prior close to: (i) repay the existing secured debt in full in cash, (ii) pay the Cash Payment, (iii) pay in cash all fees and expenses of the Transaction due at or prior to closing and (iv) meet the Minimum Liquidity Threshold (described below) (the "Cash Closing Commitment"; together with the Pre-Closing Liquidity Commitment, the "Commitment") to be funded on the date of the closing of the Transaction, provided, further, however, that the Commitment shall not be less than the EGFL Minimum Total Commitment and shall not exceed the EGFL Maximum Total Commitment, subject to the Permitted Inventory Financing.  For the avoidance of doubt and notwithstanding anything herein to the contrary, if the Company is able to finance the purchase of raw materials or inventory from an unaffiliated third party through consignment financing on an arm's-length basis on or before the closing date of the Transaction (the "Permitted Inventory Financing"), then EGFL shall fund amounts of the Commitment into escrow up to the amount of such Permitted Inventory Financing (the "Commitment Escrow"), provided that such Permitted Inventory Financing shall not exceed $50 million.  Upon closing of the Transaction, EGFL shall receive the funds in the Commitment Escrow, such that any such Permitted Inventory Financing shall reduce the EGFL Commitment (including the EGFL Minimum Commitment and the EGFL Maximum Commitment, respectively) by the amount of such Permitted Inventory Financing, up to maximum Commitment reduction of $50 million; provided that such Permitted Inventory Financing shall not reduce the Pre-Closing Liquidity Commitment. If the Transaction does not close, for any reason, the Company shall receive the funds in the Commitment Escrow.

The Investment shall at all times be junior and subordinated in all respects to the Existing Notes.  If any amount of the Investment is funded as a Permitted Shareholder Loan, then EGFL shall also be required to execute an intercreditor agreement that will require EGFL to (i) vote the Investment in favor of or support any transaction or plan supported by the Ad Hoc Committee and (ii) convert such Permitted Shareholder Loan into equity upon the closing of the Transaction.

---

[3]     In addition, such amounts cannot be swept by Deutsche Bank or the Company's existing senior secured lenders.

Final Version
Wednesday, July 16, 2014

Prior to the execution of the RSA, the Company shall prepare and deliver to EGFL a cash flow forecast from such date through November 15, 2014 (as such forecast may be modified from time to time with the consent of EGFL, a "Budget"), which Budget and any modifications thereto shall be in form and substance reasonably acceptable to EGFL, the Company and the Ad Hoc Committee.  The Company may only expend funds consisting of the Pre-Closing Liquidity Commitment in accordance with the Budget, subject to a permitted variance of 20%.  The Company shall share the Budget with the advisors to the Ad Hoc Committee and counsel to the ABL administrative agent, and the Budget shall remain confidential. Each funding of the Pre-Closing Liquidity Commitment after the initial amount funding within 5 business days of signing the RSA (each subsequent funding, a "Liquidity Funding") shall be made not later than five business days after the delivery by the Company to EGFL of a written notice (each, a "Funding Notice") of the proposed funding amount, which shall be not less than $500,000 per Funding Notice, shall occur on a monthly basis on or about the 15th of each calendar month beginning in August 2014, and shall not be greater than the Budget for any such month plus the permitted variance for which the Funding Notice has been required, signed by an authorized officer of the Company.  The Funding Notice shall specify the proposed use of the proceeds of such Liquidity Funding which shall be consistent with the Budget.  The Commitment shall be evidenced by documentation executed, and in a form to be agreed, by EGFL, the Ad Hoc Committee and Algoma (the "Definitive Commitment Documentation").  To the extent of any inconsistency between this term sheet and the Definitive Commitment Documentation, the Definitive Commitment Documentation shall control.  The Commitment shall be delivered to the Ad Hoc Committee by no later than July 17, 2014.  Algoma shall pay from time to time upon demand (but not more frequently than once per calendar month) by EGFL the reasonable and documented legal, financial, and other advisor fees and expenses incurred by EGFL in connection with the Commitment Letter or the Transaction from the proceeds of Commitment, which fees and expenses shall be provided for in the Budget.  Notwithstanding the foregoing, if on any day prior to the closing of the Transaction the Company has an unrestricted cash balance of less than $10 million, then the Company shall have five (5) business days to return its unrestricted cash balance to a minimum of $10 million. Notwithstanding anything to the contrary herein, EGFL shall be obligated to fund $10 million of the Pre-Closing Liquidity Commitment to the extent requested by the Company to comply with the cash balance test in the foregoing sentence.

In addition, at its sole option after consultation with the Company, EGFL may cause one or more of its indirect subsidiaries to contribute all or part of their equity interests in New Trinity Coal Inc. to Algoma to support the Transaction.

EGFL shall determine, in its sole discretion after consultation with the Company, whether the Company's existing equity securities shall be cancelled as of the date of the closing of the Transaction or shall remain in place.

The Refinancing:

To be arranged by Algoma.  The Transaction outlined herein shall be conditioned on a successful refinancing through the incurrence of New Senior Secured Debt of the following existing obligations (outstanding principal amounts are approximate):

- $344 million ABL facility
- $25 million secured term loan
- $400 million senior secured notes
- $30 million transferred third party loan

If EGFL causes one or more of its direct or indirect subsidiaries to contribute all or part of their equity interests in New Trinity Coal Inc. to assist the refinancing, it will provide reasonable protections regarding future investments in New Trinity Coal Inc. (to be based on permitted investment baskets).

Unless the Ad Hoc Committee otherwise consents, the weighted average interest rate of the new secured indebtedness that will be senior to the Exchange Notes shall be no higher than the weighted average interest rate to be disclosed to the advisors to the Ad Hoc Committee no later than July 17, 2014.

The Company shall have minimum liquidity of $75 million (USD) in aggregate unrestricted revolver availability (net of any outstanding letters of credit or other unfunded utilization) and unrestricted cash  on hand as of the closing date of the Transaction after giving effect to the Transaction, provided, however that (i) if the Transaction closes in October 2014 then the Company shall have minimum liquidity of $60 million (USD) and (ii) if the Transaction closes in November 2014 then the Company shall have minimum liquidity of $50 million (USD), of which, at least $25 million (USD) must be in the form of unrestricted cash (the "Minimum Liquidity Threshold").

The total gross amount of funded debt of the Company that will be senior to the Exchange Notes shall not exceed $800 million (USD) as of the closing of the Transaction, which amount shall be

Final Version
Wednesday, July 16, 2014

reduced dollar-for-dollar by the proceeds of any asset sales by the Company; provided that the Company shall be able to increase the gross amount of funded debt that will be senior to the Exchange Notes above $800 million to an amount not to exceed $825 million in exchange for the payment of an additional cash fee of $4 million to holders of the Existing Notes (to be shared pro rata among such holders based on their aggregate holdings) to be paid upon the closing of the Transaction.

| | |
|---|---|
| Process: | The Company, EGFL and the Ad Hoc Committee will sign a Restructuring Support Agreement (the "RSA") on or before July 17, 2014, which will, among other things, subject to the terms and conditions thereof, (i) obligate the Company to pursue and effectuate the Transaction described herein, (ii) obligate EGFL to pursue and effectuate its funding and other commitments described herein and to take actions consistent with the Transaction described herein, and (iii) obligate the members of the Ad Hoc Committee to vote their Existing Notes in favor of the Transaction outlined herein (subject to the exclusion of certain Existing Notes in an amount not to exceed approximately $10 million in principal amount of the Existing Notes). |

Commence a CBCA Process in Toronto, Ontario on or around July 16, 2014, along with a Chapter 15 Proceeding in the United States after entry of the interim order in the CBCA Process.

Obtain Stay Order in Canada via the preliminary CBCA order.

Obtain Stay Order in United States immediately upon filing for Chapter 15.

The Company is targeting to close the Transaction by September 30, 2014; provided, however that the closing shall occur no later than November 15, 2014, subject to further extension by mutual agreement of the Company, EGFL and the Ad Hoc Committee.

The Company shall issue a press release on or after, July 16, 2014 announcing that an agreement in principle has been reached with the Ad Hoc Committee, without disclosing the identities of the Ad Hoc Committee's constituent members. The press release shall be acceptable to the Ad Hoc Committee.

| | |
|---|---|
| Governance: | EGFL shall have the right to designate the non-independent directors of the Board of the Reorganized Company at all times. As of the closing and at all times thereafter for so long as the Exchange Notes are outstanding no less than 40% of the Board of Directors of the Reorganized Company shall be independent, |

provided that each such initial independent director(s) shall be subject to the consent of the Ad Hoc Committee, such consent not to be unreasonably withheld.  The initial independent directors shall serve for an initial term of not less than three years.  The definition of independence shall comply with the meaning set forth in the Securities and Exchange Commission guidelines for independent directors of reporting companies.

The Company shall enter into new agreements with affiliates prior to the closing of the Transaction contemplated herein only if such Transaction are on an arms'-length basis and approved by the CBCA court or an independent financial advisor to the Company that is reasonably acceptable to the Ad Hoc Committee. The Company shall not honor any "trade advance" obligations to its affiliates prior to the closing of the Transaction contemplated herein.

| | |
|---|---|
| Advisor Fees: | As provided for in the RSA, the Company shall pay the reasonable and documented fees and expenses of the Ad Hoc Committee's advisors incurred from the signing of the Ad Hoc Committee's advisor's engagement letters through the date of the signing of the RSA.  The Company shall timely pay the reasonable and documented fees and expenses of the Ad Hoc Committee's advisors incurred from the signing of the RSA through the closing of the Transaction pursuant to the terms of the engagement letters executed between such advisors and the Company.  Upon the closing of the Transaction described herein, the Company shall pay all remaining outstanding reasonable and documented fees and expenses of the Ad Hoc Committee's legal and financial advisors (including those fees and expenses incurred prior to May 30, 2014). |
| Definitive Documentation: | The loan documents for the Company's New Senior Secured Debt and all other definitive Transaction documents, shall be reasonably satisfactory to a majority of the Initial Consenting Noteholders (as defined in the RSA) in all material respects. |