## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| LDK SOLAR CO. LTD. (IN PROVISIONAL LIQUIDATION),[1] | Case No. 14-12387 (___) |
| Debtor in a Foreign Proceeding. | |

### MEMORANDUM OF LAW IN SUPPORT OF (I) CHAPTER 15 PETITION OF LDK SOLAR CO., LTD. (IN PROVISIONAL LIQUIDATION) AND (II) MOTION FOR (A) PROVISIONAL RELIEF, (B) RECOGNITION OF THE CAYMAN PROCEEDING AS A FOREIGN MAIN PROCEEDING OR, IN THE ALTERNATIVE, AS A FOREIGN NONMAIN PROCEEDING AND (C) CERTAIN RELATED RELIEF

Dated:  Wilmington, Delaware
            October 21, 2014

**SIDLEY AUSTIN LLP**
Larry J. Nyhan
Jessica C.K. Boelter
Matthew G. Martinez
Geoffrey M. King
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

-and-

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Maris J. Kandestin (No. 5294)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

COUNSEL TO THE FOREIGN REPRESENTATIVES
ON BEHALF OF LDK PARENT

---

[1] The last four digits of the Cayman Islands registration number of LDK Solar CO., Ltd (in provisional liquidation) are 6736.  The mailing address for LDK Solar CO., Ltd. (in provisional liquidation) is:  Zolfo Cooper (Cayman) Limited, Attn: Eleanor Fisher & Tammy Fu, as Joint Provisional Liquidators, P.O. Box 1102 GT, 4th Floor, Building 3, Cayman Financial Centre, Grand Cayman KY1-1002, Cayman Islands.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................2

RELEVANT FACTS ...........................................................................3

ARGUMENT ..................................................................................6

    I.    THE REQUIREMENTS FOR RECOGNITION AS A FOREIGN MAIN
        PROCEEDING UNDER CHAPTER 15 HAVE BEEN MET ..............................6

        A.    The Verified Petition Meets the Requirements of Section 1515 ................7

        B.    Each of the JPLs Qualify as a "Foreign Representative" ...........................7

        C.    The Cayman Proceeding Is a "Foreign Proceeding" ..................................8

        D.    The Cayman Proceeding Is a "Foreign Main Proceeding".......................10

        E.    In the Alternative, the Cayman Proceeding is a "Foreign Nonmain
            Proceeding".................................................................18

        F.    Recognition of the Cayman Proceeding Would Not Be Manifestly
            Contrary to United States Policy.................................................19

    II.    THE REQUESTED PROVISIONAL RELIEF SHOULD BE GRANTED..........20

        A.    The Relief Requested is Necessary and Appropriate to Prevent
            Irreparable Harm ......................................................................22

        B.    There is a Substantial Likelihood of Foreign Recognition .......................24

        C.    Granting the Provisional Relief Will Not Result in Greater Harm to
            Nonmoving Parties....................................................................24

        D.    The Provisional Relief Serves the Public Interest.....................................24

## TABLE OF AUTHORITIES

Page(s)

CASES

Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet),
    737 F.3d 238 (2d Cir. 2013)....................................................................................6

In re ABC Learning Centres Ltd.,
    445 B.R. 318 (Bankr. D. Del. 2010) aff'd, 728 F.3d 301 (3d Cir. 2013) .........................10, 20

In re ABC Learning Centres Ltd.,
    728 F.3d 301 (3d Cir. 2013) cert. denied, 134 S. Ct. 1283 (U.S. 2014) .............................6, 22

In re AJW Offshore, Ltd.,
    Case No. 13-70078, Docket No. 31 (Bankr. E.D.N.Y. Feb. 4, 2013)..................................9, 11

In re Am. Pegasus SPC,
    Case No. 11-34429, Docket No. 20 (Bankr. N.D. Cal. Dec. 23, 2011).............................9, 11

In re Amerindo Internet Growth Fund Ltd.,
    Case No. 07- 10327, Docket No. 7 (Bankr. S.D.N.Y. Mar. 7, 2007) .................................9, 11

In re Angiotech Pharm. Inc.,
    Case No. 11-10269, Docket No. 26 (Bankr. D. Del. Jan. 31, 2011).......................................21

In re Arctic Glacier Int'l Inc.,
    Case No. 12-10605, Docket No. 28 (Bankr. D. Del. Feb. 23, 2012).....................................21

In re Ashapura Minechem Ltd.,
    480 B.R. 129 (S.D.N.Y. 2012)................................................................................20

In re Banco Nacional de Obras y Servicios Publico S.N.C.,
    91 B.R. 661 (Bankr. S.D.N.Y. 1988)......................................................................23

In re Bancredit Cayman Ltd. (In Liquidation),
    Case No. 06-11026, Docket No. 13 (Bankr. S.D.N.Y. June 16, 2006) ...................................9

In re Bemarmara Consulting A.S.,
    Case No. 13-13037, Docket No. 38 (Bankr. D. Del. Dec. 23, 2013).......................................6

In re Betcorp Ltd.,
    400 B.R. 266 (Bankr. D. Nev. 2009) ......................................................................12

In re Biltrite Rubber (1984) Inc.,
    Case No. 09-31423, Docket No. 17 (Bankr. N.D. Ohio Mar. 13, 2009) ................................21

In re Brit. Am. Ins. Co. Ltd.,
    425 B.R. 884 (Bankr. S.D. Fla. 2010) .............................................................12, 18

In re Brit. Am. Isle of Venice (BVI), Ltd.,
    441 B.R. 713 (Bankr. S.D. Fla. 2010) ...................................................................20

In re Chemokine Therapeutics Corp.,
    Case No. 09-11189, Docket No. 11 (Bankr. D. Del. Apr. 6, 2009)........................21

In re China Med. Techs., Inc.,
    Case No. 12-13736, Docket No. 16 (Bankr. S.D.N.Y. Oct. 11, 2012) ................9, 11

In re Destinator Techs. Inc.,
    Case No. 08-11003, Docket No. 19 (Bankr. D. Del. May 20, 2008)......................21

In re Elpida Memory, Inc.,
    Case No. 12-10947, Docket No. 25 (Bankr. D. Del. Mar. 21, 2012) .....................21

In re Essar Steel Algoma, Inc.,
    Case No. 14-11730, Docket No. 28 (Bankr. D. Del. July 17, 2014) ......................21

In re Fairfield Sentry Ltd.,
    714 F.3d 127 (2d Cir. 2013)...........................................................................11, 12

In re Fairfield Sentry Ltd.,
    Case No. 10-13164, 2011 U.S. Dist. LEXIS 105770 (S.D.N.Y. Sept. 16, 2011)...................18

In re Global Ocean Carriers Ltd.,
    251 B.R. 31 (Bankr. D. Del. 2000) .........................................................................6

In re Globo Comunicacoes e Participacoes S.A.,
    317 B.R. 235 (Bankr. S.D.N.Y. 2004)....................................................................6

In re Grand Prix Assocs. Inc.,
    Case No. 09-16545, 2009 WL 1850966 (Bankr. D.N.J. June 26, 2009) ................22

In re Grand Prix Assocs. Inc.,
    Case No. 09-16545, 2009 WL 1410519 (Bankr. D.N.J. May 18, 2009) ...........11, 12

In re Innua Can., Ltd.,
    Case No. 09-16362, 2009 Bankr. LEXIS 995 (Bankr. D.N.J. Apr. 15, 2009) ........11

In re Ir. Bank Resolution Corp. (In Special Liquidation),
    Case No. 13-12159, 2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) ...................25

In re KPMG Inc., Foreign Representative of Redcorp Ventures Ltd.,
    Case No. 09-12019, Docket No. 10 (Bankr. W.D. Wa. Mar. 9, 2009)....................21

*In re Lines,*
    81 B.R. 267 (Bankr. S.D.N.Y. 1988) ...................................................................23

*In re Millard,*
    501 B.R. 644 (Bankr. S.D.N.Y. 2013) ...........................................................6, 9, 11

*In re Millennium Global Emerging Credit Master Fund Ltd.,*
    458 B.R. 63 (Bankr. S.D.N.Y. 2011) aff'd, 474 B.R. 88 (S.D.N.Y. 2012) ...........................10

*In re Nortel Networks UK Ltd.,*
    Case No. 09-11972, Docket No. 56 (Bankr. D. Del. Oct. 27, 2010) .....................................21

*In re Ran,*
    607 F.3d 1017 (5th Cir. 2010) ....................................................................12

*In re Saad Invs. Fin. Co. (No.5) Ltd.,*
    Case No. 09-13985, Docket No. 39 (Bankr. D. Del. Dec. 4, 2009)...................................9, 11

*In re Sextant Strategic Global Water Fund Offshore Ltd. (In Official Liquidation),*
    Case No. 10-44715, Docket No. 15 (S.D. Fla. Jan. 13, 2011) ...................................11

*In re Sextant Strategic Hybrid2Hedge Resources Fund Offshore Ltd.,*
    Case No. 10-44713. Docket No. 10 (S.D. Fla. Jan. 13, 2011) ...........................9, 11

*In re Trade & Commerce Bank (In Liquidation),*
    Case No. 05-60279, Docket No. 9 (Bankr. S.D.N.Y. Feb. 8, 2006).....................................9

*Kos Pharm., Inc. v. Andrx Corp.,*
    369 F.3d 700 (3d Cir. 2004)........................................................................24

*N.J. Retail Merchants Ass'n v. Sidamon-Eristoff,*
    669 F.3d 374 (3d Cir. 2012).......................................................................22

**STATUTES**

11 U.S.C. § 101...................................................................................8, 9

11 U.S.C. § 1501.................................................................................25

11 U.S.C. § 1502.................................................................................18

11 U.S.C. § 1504..................................................................................7

11 U.S.C. § 1506.................................................................................19

11 U.S.C. § 1508.................................................................................25

11 U.S.C. § 1509..................................................................................7

11 U.S.C. § 1516 ................................................................................................7

11 U.S.C. § 1515 ................................................................................................7

11 U.S.C. § 1517 .................................................................................8, 10, 12, 19

11 U.S.C. § 1519 ..............................................................................................22

11 U.S.C. § 1520 ..............................................................................................22

**OTHER AUTHORITIES**

Bankruptcy Rule 1007 ........................................................................................7

Companies Law § 104 .......................................................................................9

Companies Law § 105 .......................................................................................9

Companies Law § 108 .......................................................................................9

Companies Law § 115 .......................................................................................9

Companies Law § 131-133 ...............................................................................9

Companies Law § 139 .......................................................................................9

Companies Law § 140 .......................................................................................9

Eleanor Fisher and Tammy Fu of Zolfo Cooper (Cayman) Limited are the Joint Provisional Liquidators and authorized foreign representatives (in such capacities, the "JPLs" or the "Foreign Representatives") of LDK Solar CO., Ltd. (in provisional liquidation) ("LDK Parent") in a proceeding (the "Cayman Proceeding") under Part V of the Cayman Islands Companies Law (2013 Revision) (the "Companies Law") pending before the Grand Court of the Cayman Islands, Financial Services Division (the "Cayman Court").  On the date hereof (the "Petition Date"), the JPLs commenced this chapter 15 case (the "Chapter 15 Case") by filing a petition under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") and the *Motion of the Foreign Representatives for (I) Provisional Relief, (II) Recognition of the Cayman Proceeding as a Foreign Main Proceeding or, in the Alternative, as a Foreign Nonmain Proceeding and (III) Certain Related Relief* (the "Recognition Motion") seeking (I) entry of a provisional order (the "Provisional Relief Order"), enforcing the terms of the Cayman Court's *Order Appointing Provisional Liquidators*, dated as of February 27, 2014 (the "Cayman Order"), on an interim basis in the United States and granting certain other related provisional relief and (II) entry of a final order (the "Recognition Order"), after notice and a hearing (the "Recognition Hearing"), granting recognition of the Cayman Proceeding as a foreign main proceeding or, in the alternative, as a foreign nonmain proceeding, and enforcing the terms of the Cayman Order on a permanent basis in the United States.  In support of LDK Parent's chapter 15 petition and the Recognition Motion, the JPLs respectfully submit this Memorandum of Law (this "Memorandum").

The Foreign Representatives also respectfully refer this Court to the *Declaration of Tammy Fu in Support of (I) Chapter 15 Petition of LDK Solar CO., Ltd. (In Provisional Liquidation) and (II) Motion of Foreign Representatives for (A) Provisional Relief, (B)*

*Recognition of the Cayman Proceeding as a Foreign Main Proceeding or, in the Alternative, as*

*a Foreign Nonmain Proceeding, and (C) Certain Related Relief* (the "JPL Declaration") and the

*Declaration of Jonathan Guy Manning in Support of (I) Chapter 15 Petition of LDK Solar CO.,*

*Ltd. (In Provisional Liquidation) for Recognition of Foreign Main Proceeding and (II) Motion*

*For (A) Provisional Relief, (B) Recognition of the Cayman Proceeding as a Foreign Main*

*Proceeding and (C) Certain Related Relief* (the "Manning Declaration"), each of which contains

facts relevant to this Memorandum, and each of which is incorporated herein by reference.

## PRELIMINARY STATEMENT

1.      The JPLs are seeking (a) entry of the Provisional Relief Order granting

certain provisional relief to prevent the commencement and/or continuation of litigation in the

United States that may threaten the viability of LDK Parent's global restructuring; and (b) entry

of the Recognition Order recognizing the Cayman Proceeding as a foreign main proceeding,

which is a critical component of LDK Parent's global restructuring.  Without the requested relief,

the restructuring sought in the Cayman Proceeding would be undermined, which, in turn, would

threaten LDK Parent's global restructuring efforts and potentially cause irreparable harm to LDK

Parent and its creditors.

2.      By the Cayman Order, the Cayman Court granted the JPLs the broad

authority to undertake various actions with respect to LDK Parent, including, but not limited to,

(a) bringing or defending any action or other legal proceeding in any jurisdiction in the name and

on behalf of LDK Parent; (b) dealing with all questions in any way relating to or affecting the

assets or provisional liquidation of LDK Parent; (c) controlling LDK Parent's existing bank

accounts and opening new bank accounts in the name of LDK Parent; (d) promoting the Cayman

Scheme (as defined below); and (e) doing all other things incidental to the exercise of the JPLs'

powers.  (See Cayman Order ¶ 2, attached to the JPL Declaration as Exhibit A.)

3.      The Cayman Order also specifically authorized the JPLs to seek recognition of the Cayman Proceeding under chapter 15 of the Bankruptcy Code.  (See id. ¶ 6.) The JPLs have concluded that this Court's recognition of the Cayman Proceeding under chapter 15 of the Bankruptcy Code is necessary for the successful restructuring of LDK Parent.  For the reasons set forth below, the JPLs respectfully request the Court grant the relief sought in the Recognition Motion and enter an order recognizing the Cayman Proceeding as a "foreign main proceeding" or, in the alternative, a "foreign nonmain proceeding," under section 1517 of the Bankruptcy Code.

4.      The Recognition Motion satisfies all of the requirements set forth in sections 1515, 1517, and 1519 of the Bankruptcy Code, as applicable.  Furthermore, the requested relief is necessary and appropriate under chapter 15 of the Bankruptcy Code.  Finally, granting recognition of the Cayman Proceeding and the related relief is consistent with the goals of international cooperation and comity inherent in chapter 15.

## RELEVANT FACTS

5.      LDK Parent was incorporated in the Cayman Islands as an exempted company on May 1, 2006.  Prior to the appointment of the JPLs, the registered office of LDK Parent was c/o Offshore Incorporations (Cayman) Limited, P.O. Box 2804, 4th Floor Willow House, Cricket Square, Grand Cayman KY1-0112, Cayman Islands.  Upon the appointment of the JPLs, the registered office of LDK Parent was changed to c/o Zolfo Cooper (Cayman) Limited, 10 Market Street, Suite 776, Camana Bay, Grand Cayman KY1-9006, Cayman Islands. (JPL Decl. ¶ 8.)  Until recently, LDK Parent's stock traded on the New York Stock Exchange under the symbol "LDK."  (See id. ¶ 10.).  LDK Parent's ADSs will continue to be quoted on the OTC Pink Limited Information under the symbol "LDKSY" until LDK Parent qualifies for listing on an alternate stock exchange.  (See id. ¶ 10.)

3

6.    LDK Parent is the ultimate parent of the LDK Solar group of companies (the "Group"), which includes a large number of intermediate holding and operating companies in the People's Republic of China (the "PRC"), Hong Kong, Europe and North America.  The business of LDK Parent is to hold shares in its subsidiaries and to raise financing and provide guaranties on behalf of the Group.  The business of the Group is to manufacture and sell a variety of photovoltaic ("PV") products used in the production of solar-generated electrical power.  Specifically, the Group produces polysilicon, mono- and multicrystalline ingots, wafers, cells, modules, systems, power projects and solutions, which, in turn, facilitate the production of solar panels by the Group and other down-stream customers.  (See JPL Decl. ¶ 9.)

7.    The Group's operations are structured into the "Onshore Operations" and the "Offshore Operations."  The Onshore Operations consist of operations in the PRC.  The Offshore Operations comprise the Group's operations outside of the PRC, in Asia, Europe and the U.S.  (JPL Decl. ¶ 12.)  The Group established its Offshore Operations to expand into the global PV markets, to acquire offshore PV operations and to raise financing in the international capital markets.  (Id. ¶ 13.)  As of September 30, 2014, the Group had 8,381 employees.  (Id. ¶ 11.)

8.    As of May 31, 2014, LDK Parent had total assets with a reported book value of approximately US $510 million and total liabilities of approximately US $1.127 billion. (JPL Decl. ¶ 15, 18.)

9.    On September 12, 2014, the Cayman Court held a hearing on the application of LDK Parent and its wholly owned subsidiary, LDK Silicon & Chemical Technology Co., Ltd. (together with LDK Parent, the "Cayman Scheme Companies"), seeking an order from the Cayman Court convening creditor meetings to consider and ultimately approve

proposed schemes of arrangement in respect of the Cayman Scheme Companies under section 86 of the Companies Law (the "Cayman Scheme").  On September 16, 2014, the Cayman Court issued an order (as filed on September 16, 2014, the "Approval Order") setting the dates for the meetings of classes of creditors and directing LDK Parent to make available to creditors the Cayman Scheme and supporting solicitation materials (the "Scheme Solicitation Materials").

10.    LDK Parent distributed the Scheme Solicitation Materials to creditors on September 17, 2014.  The Scheme Solicitation Materials permitted the affected classes of creditors to nominate proxies to vote to accept or reject the Cayman Scheme by October 15, 2014 (the "Voting Deadline").  On October 16, 2014, at the Cayman Court-ordered meetings of affected creditors under the Scheme, each class of affected creditors voted overwhelmingly to approve the Cayman Scheme.

11.    Contemporaneously with the filing of LDK Parent's chapter 15 petition, certain of LDK Parent's United States subsidiaries (the "Chapter 11 Debtors") commenced the cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") by filing voluntary petitions with this Court.  Also on the Petition Date, the Chapter 11 Debtors filed (a) the *Joint Plan of Reorganization for LDK Solar Systems, Inc., LDK Solar USA, Inc. and LDK Solar Tech USA, Inc.*, dated as of September 17, 2014 (the "Plan"), (b) the *Disclosure Statement for the Joint Plan of Reorganization for LDK Solar Systems, Inc., LDK Solar USA, Inc. and LDK Solar Tech USA, Inc.*, dated as of September 17, 2014 and (c) the *Declaration of Jane Sullivan of Epiq Bankruptcy Solutions, LLC Certifying (I) Methodology for the Tabulation of Votes on Joint Prepackaged Plan of Reorganization for LDK Solar Systems, Inc., LDK Solar USA, Inc. and LDK Solar Tech USA, Inc. and (II) Preliminary Voting Results*, which indicates that Holders of Senior Notes Guarantee Claims (as defined in the Plan) voted overwhelmingly to accept the

Plan.  This Chapter 15 Case and the Chapter 11 Cases are integral parts of a global restructuring

of LDK Parent's offshore liabilities.

<u>ARGUMENT</u>

**I.   THE REQUIREMENTS FOR RECOGNITION AS A FOREIGN MAIN PROCEEDING UNDER CHAPTER 15 HAVE BEEN MET**

12.     The requirements for recognition of a foreign proceeding under chapter 15

are set forth in section 1517(a) of the Bankruptcy Code.[2]  Subject to section 1506, a foreign

proceeding must be recognized if the following requirements are met:

> (1)   such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2)   the foreign representative applying for recognition is a person or body; and
>
> (3)   the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a); <u>see also</u> <u>In re ABC Learning Centres Ltd.</u>, 728 F.3d 301, 306 (3d Cir. 2013)

<u>cert. denied</u>, 134 S. Ct. 1283 (U.S. 2014) (recognition mandatory when an insolvency proceeding

meets the section 1517 criteria); <u>In re Millard</u>, 501 B.R. 644, 651 (Bankr. S.D.N.Y. 2013)

(section 1517 provides a "statutory mandate that recognition be granted upon compliance with

---

[2] In addition, LDK Parent also satisfies the definition of a "debtor" pursuant to section 1502(1) of the Bankruptcy Code, as LDK Parent is currently an entity subject to a foreign proceeding.  The JPLs recognize that courts in other non-binding jurisdictions have required a "debtor" under chapter 15 to satisfy the requirements of section 109(a) of the Bankruptcy Code.  <u>See</u>, e.g., <u>Drawbridge Special Opportunities Fund LP v. Barnet</u> (<u>In re Barnet</u>), 737 F.3d 238 (2d Cir. 2013).  Courts in this District, however, having considered the issue, have rejected the holding of <u>Barnet</u> and the application of section 109(a) to debtors in a chapter 15 proceeding.  <u>See</u> <u>In re Bemarmara Consulting A.S.</u>, Case No. 13-13037, Hr'g Tr. 8:14-9:18, Docket No. 38 (Bankr. D. Del. Dec. 23, 2013) (rejecting the holding of <u>In re Barnet</u>).  Nevertheless, by virtue of the property that LDK Parent owns in the United States—namely, the funds held in LDK Parent's client account with its Delaware counsel (as described further below) and its equity interests in its United States subsidiaries, including LDK Solar Systems, Inc., a Delaware corporation—LDK Parent also satisfies the requirements of section 109(a).  <u>See</u> <u>In re Globo Comunicacoes e Participacoes S.A.</u>, 317 B.R. 235, 248 (Bankr. S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings."); <u>In re Global Ocean Carriers Ltd.</u>, 251 B.R. 31, 39 (Bankr. D. Del. 2000) (holding that a debtor's interest in escrow funds held by counsel is sufficient to meet the requirements of section 109(a)).

the requirements of section 1517(a)(1), (2) and (3)") (citing <u>In re Ran</u>, 607 F.3d 1017, 1021 (5th

Cir. 2010)).

        13.    As demonstrated below, the Verified Petition and the Cayman Proceeding

satisfy each of the foregoing requirements for recognition.

### A.      The Verified Petition Meets the Requirements of Section 1515

        14.    This Chapter 15 Case was duly and properly commenced in accordance

with sections 1504, 1509 and 1515 of the Bankruptcy Code.  The JPLs filed a petition for

recognition of a foreign proceeding pursuant to section 1515(a), which petition was accompanied

by all documents and information required by sections 1515(b) and (c) and the relevant

Bankruptcy Rules, including (a) a certified copy of the Cayman Order; (b) a statement

identifying all foreign proceedings known to the JPLs with respect to LDK Parent; (c) a

corporate ownership statement containing the information described in Bankruptcy Rule

1007(a)(4); and (d) a list containing (i) the names and addresses of all persons or bodies

authorized to administer foreign proceedings of LDK Parent, (ii) all parties to litigation pending

in the United States to which LDK Parent is a party at the time of the filing of the petition, and

(iii) all entities against whom provisional relief is being sought under section 1519 of the

Bankruptcy Code. The JPLs respectfully submit that they have satisfied the clear and objective

standards for compliance with section 1515 of the Bankruptcy Code.

### B.      Each of the JPLs Qualify as a "Foreign Representative"

        15.    A chapter 15 case is commenced by the filing of a petition for recognition

(and related documents) by the "foreign representative."  <u>See</u> 11 U.S.C. § 1504, 1509(a),

1515(a).  A bankruptcy court may presume that the person petitioning for chapter 15 recognition

is a foreign representative if the decision or certificate from the foreign court so indicates.  11

U.S.C. § 1516(a).  The Bankruptcy Code defines "foreign representative" as "a person or body,

including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).

16.     The Cayman Order expressly authorizes the JPLs to "take such action as may be necessary to obtain recognition of their appointment as joint provisional liquidators for LDK Parent in any other relevant jurisdiction and to make applications to the courts of such jurisdictions for that purpose," including, but not limited to, "seek[ing] recognition under Chapter 15 of the United States Code (and such other relief as may be required) from the United States Bankruptcy Court for the District of Delaware."  In addition, the JPLs are individuals appointed by the Cayman Court to exercise certain administrative powers, including to bring or defend any action or other legal proceeding in the name and on behalf of LDK Parent, deal with all questions in any way relating to or affecting the assets or the provisional liquidation of LDK Parent, control and otherwise deal with all existing bank accounts in the name of LDK Parent, open new bank accounts in the name of LDK Parent, promote the Cayman Scheme, engage professionals and do all acts and execute all deeds, receipts and other documents in the name of LDK Parent.

17.     In light of the statutory presumption, the Bankruptcy Code's definition of "foreign representative" and the express provisions of the Cayman Order, the JPLs are each proper "foreign representatives" of LDK Parent within the meaning of section 101(24) of the Bankruptcy Code.

**C.     The Cayman Proceeding Is a "Foreign Proceeding"**

18.     The Cayman Proceeding is a "foreign proceeding" as required for recognition under section 1517(a) of the Bankruptcy Code.  See 11 U.S.C. 1517(a)(1).  The Bankruptcy Code defines a "foreign proceeding" as

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

19.     As numerous courts have previously held, insolvency proceedings under the law of the Cayman Islands qualify as foreign proceedings under chapter 15 of the Bankruptcy Code.  See, e.g., In re Saad Invs. Fin. Co. (No.5) Ltd., Case No. 09-13985, Docket No. 39 (Bankr. D. Del. Dec. 4, 2009).[3]

20.     As set forth in further detail in the Manning Declaration, the Cayman Proceeding is a "collective judicial proceeding" commenced under Part V of the Companies Law, which is a "law relating to insolvency or adjustment of debt."  (Manning Decl. ¶ 30-31.) Under the Companies Law, a Cayman Court may (i) give regard to the wishes of creditors for all matters related to the winding up of an insolvent company, (ii) make all debts payable on a contingency basis and all present or future, certain or contingent claims against the company admissible in the proceeding, (iii) appoint a liquidator who is required to convene meetings of the creditors, and (iv) operate to resolve and determine the rights of all claimants and stakeholders, i.e., the creditor body as a whole.  See Companies Law §§ 105, 115, 139(1), 140(1).  In addition, through the Cayman Proceeding, LDK Parent's "assets and affairs . . . are subject to control or supervision by" the Cayman Court, and the JPLs, as "[o]fficers of the [Cayman] Court," are subject to the control of the Cayman Court.  See Companies Law §§

---

[3] See also Millard, 501 B.R. at 644; In re AJW Offshore, Ltd., Case No. 13-70078 (Bankr. S.D.N.Y. Feb. 4, 2013); In re China Med. Techs., Inc., Case No. 12-13736, Docket No. 16 (Bankr. S.D.N.Y. Oct. 11, 2012); In re Am. Pegasus SPC, Case No. 11-34429, Docket No. 20 (Bankr. N.D. Cal. Dec. 23, 2011); In re Sextant Strategic Hybrid2Hedge Resources Fund Offshore Ltd., Case No. 10-44712, Docket No. 10 (S.D. Fl. Jan. 13, 2011); In re Amerindo Internet Growth Fund Ltd., Case No. 07-10327, Docket No. 7 (Bankr. S.D.N.Y. Mar. 7, 2007); In re Bancredit Cayman Ltd. (In Liquidation), Case No. 06-11026, Docket No. 13 (Bankr. S.D.N.Y. June 16, 2006); In re Trade & Commerce Bank (In Liquidation), Case No. 05-60279, Docket No. 9 (Bankr. S.D.N.Y. Feb. 8, 2006).

108(2), 104(4), 131-133.  Finally, the Cayman Proceeding and the JPLs' appointment and authority are directed to the liquidation or reorganization of LDK Parent.  (See generally, Cayman Order.)

21.     For the foregoing reasons, the Cayman Proceeding is a "foreign proceeding" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

**D.     The Cayman Proceeding Is a "Foreign Main Proceeding"**

22.     The Cayman Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because LDK Parent's center of main interests ("COMI") is in the Cayman Islands.  (JPL Decl. ¶¶ 70-75.)  The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  See 11 U.S.C. § 1502(4).  A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI.  See 11 U.S.C. § 1517(b)(1).  Although the Bankruptcy Code does not define "center of main interests," section 1516(c) of the Bankruptcy Code creates a rebuttable presumption that, absent evidence to the contrary, a debtor's COMI is presumed to be the location of the debtor's registered office.  See 11 U.S.C. § 1516(c); see also In re ABC Learning Centres Ltd., 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption no objection was raised or evidence presented rebutting the section 1516 presumption) aff'd, 728 F.3d 301 (3d Cir. 2013).[4]

23.     Here, LDK Parent's registered office has been located in the Cayman Islands since the time of its incorporation.  (JPL Decl. ¶ 72).  In similar circumstances, where the

---

[4] In re Millennium Global Emerging Credit Master Fund Ltd., 458 B.R. 63, 76 (Bankr. S.D.N.Y. 2011) aff'd, 474 B.R. 88 (S.D.N.Y. 2012) (finding in the context of section 1516 that "[t]he party seeking to rebut a statutory presumption must present enough evidence to withstand a motion for summary judgment") (citing McCann v. Newman Irrevocable Tr., 458 F.3d 281, 288 (3d Cir. 2006)).

debtor's registered office was in the Cayman Islands, coupled with additional facts similar to the

facts described below, courts have found the Cayman Islands to be the COMI of Caymans

Islands exempted companies.[5]

> 24.    In addition, courts have identified several other factors which may be

probative of a COMI determination, including

> the location of the debtor's headquarters; the location of those who
> actually manage the debtor (which, conceivably could be the
> headquarters of a holding company); the location of the debtor's
> primary assets; the location of the majority of the debtor's creditors
> or of a majority of the creditors who would be affected by the case;
> and/or the jurisdiction whose law would apply to most disputes.

In re Grand Prix Assocs., Case No. 09-16545, 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18,

2009) (citing In re SPhinX, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006); In re Innua Can., Ltd.,

No. 09-16362, 2009 Bankr. LEXIS 995, at *16 (Bankr. D.N.J. Apr. 15, 2009).  While each of

these factors may serve as a "helpful guide" in determining a debtor's COMI, these factors are

not exclusive, and none of the factors are required nor dispositive.  See In re Fairfield Sentry

Ltd., 714 F.3d 127, 137-38 (2d Cir. 2013) (explaining that "consideration of these specific

factors is neither required nor dispositive" and warning against mechanical application); Innua

Can., 2009 Bankr. LEXIS 995, at *16 (describing such factors as "useful in making the COMI

determination");  In re Brit. Am. Ins. Co. Ltd., 425 B.R. 884, 909 (Bankr. S.D. Fla. 2010)

("These are not exclusive factors, nor must they all be met in each case.").

> 25.    Importantly, courts have considered whether a chapter 15 debtor's COMI

would have been ascertainable to interested third parties, such as the debtor's creditors.  See

---

[5] See, e.g., Millard, 501 B.R. at 644; AJW Offshore, Case No. 13-70078, Docket No. 31 (Bankr. E.D.N.Y. Feb. 4, 2013); China Med. Techs., Case No. 12-13736, Docket No. 16 (Bankr. S.D.N.Y. Oct. 11, 2012); Am. Pegasus SPC, Case No. 11-34429, Docket No. 20 (Bankr. N.D. Cal. Dec. 23, 2011); In re Sextant Strategic Hybrid2Hedge Resources Fund Offshore Ltd., Case No. 10-44713, Docket No. 10 (S.D. Fla. Jan. 13, 2011); Sextant Strategic Global Water Fund Offshore, Case No. 10-44715, Docket No. 15 (S.D. Fla. Jan. 13, 2011); Saad Invs. Fin. Co. (No.5), Case No. 09-13985, Docket No. 39 (Bankr. D. Del. Dec. 4, 2009); Amerindo Internet Growth Fund., Case No. 07-10327, Docket No. 7 (Bankr. S.D.N.Y. Mar. 7, 2007).

Grand Prix Assocs., 2009 WL 1410519, at *6 (referring to the UNCITRAL Model Law on

Cross-Border Insolvency); In re Betcorp Ltd., 400 B.R. 266, 289 (Bankr. D. Nev. 2009) (looking

to ascertainability of COMI by creditors).  By examining factors "in the public domain," courts

are readily able to determine whether a debtor's COMI is in fact "regular and ascertainable and

not easily subject to tactical removal."  Fairfield Sentry, 714 F.3d at 136-37.

       26.     In assessing these factors, a chapter 15 debtor's COMI is determined as

of the date that the debtor's chapter 15 petition was filed, without reference to the debtor's

historic operational activity.  See id., 714 F.3d at 137 ("[A] debtor's COMI should be determined

based on its activities at or around the time the chapter 15 petition is filed, as the statutory text

suggests.").[6]  Where, as here, a debtor has engaged in substantial restructuring-related activities

prior to the petition date, courts will consider such activities in the determination of the debtor's

COMI.  See id.

        a.     **LDK Parent's Registered Office and Headquarters are in the Cayman Islands**

       27.     LDK Parent is registered and headquartered in the Cayman Islands.  (JPL

Decl. ¶ 72).  Upon the commencement of the Cayman Proceeding on February 21, 2014 the JPLs

changed the location of LDK Parent's registered office (which was already located in the

Cayman Islands) to the office of the JPLs in the Cayman Islands.  (Id. ¶ 74.)  In addition, as

described in further detail below, the JPLs have, for nearly eight months, managed LDK Parent

from the Cayman Islands.  (Id.)  The JPLs have also widely disseminated Cayman Islands-based

contact information to creditors since their appointment in February 2014 and have instructed all

---

[6] See also Ran, 607 F.3d at 1025-26 (noting that "every operative verb [in COMI-relevant statutes] is written in the present or present progressive tense," and, therefore, determining the debtor's place of residence as of time of chapter 15 petition); Brit. Amer. Ins., 425 B.R. at 910 (explaining that the language sections 1517 and 1518 of the Bankruptcy Code requires the temporal focus "for purposes of a court making a determination under section 1517(b)(1), can be no earlier than the date the chapter 15 petition was filed"); Betcorp, 400 B.R. at 291 (stating that determination of debtor's COMI without reference to prior operational history promotes consistency in COMI determinations and effectiveness of cross-border insolvency proceedings).

creditors of LDK Parent to direct all inquiries to the JPLs at their Cayman address.  (Id.)  All

contact with key constituencies has either been held or coordinated from the Cayman Islands

under the supervision of the JPLs.  (See id.)  In sum, it is clear that the center of LDK Parent's

operations as of the Petition Date is the Cayman Islands.

> **b.**     **Location of LDK Parent's Management is in the Cayman Islands**

28.     Since the inception of the Cayman Proceeding, the JPLs have exclusively

managed LDK Parent's affairs from the Cayman Islands on a day-to-day basis.  (JPL Decl. ¶ 73-

74).  Since the appointment of the JPLs on February 27, 2014, all key management functions of

LDK Parent have been carried out exclusively in the Cayman Islands.  (Id. ¶ 74.)  Specifically,

the JPLs have engaged in the following activities on behalf of LDK Parent:

- Reviewing, analyzing, negotiating and signing the Initial HRX Promissory Note and the Exit Funding Arrangements for and on behalf of LDK Parent;

- Opened bank accounts in the Cayman Islands in LDK Parent's name, which accounts have held all debtor-in-possession financing proceeds on behalf of LDK Parent and serve as the primary cash management accounts for LDK Parent; as of October 17, 2014, approximately US $18.91 million is held in LDK Parent's Cayman Islands bank accounts;

- Administered the provisional liquidation / scheme of arrangement website;

- Negotiated and signed restructuring support agreements, including amendments thereto, with holders of more than a majority of the Senior Notes and other key constituencies;

- Negotiated and documented the terms of a settlement with the Munich Re Companies;

- Secured the support of the German Trustee of Sunways for the Cayman Scheme and the broader Restructuring Proposal;

- Negotiated engagement terms and engaged various advisors and service providers, both in the Cayman Islands and elsewhere, to assist the JPLs in their administration of LDK Parent;

- Chairing telephone calls from the Cayman Islands involving LDK Parent's advisors at least twice weekly;

- Organized and chaired, by way of teleconference, a creditors' meeting and multiple Liquidation Committee meetings held from the Cayman Islands;

- Supervised the appeal of the NYSE's decision to delist LDK Parent's American Depository Shares from the NYSE;

- Liaised with subsidiaries and Group companies regarding funding requirements;

- Negotiated and signed funding agreements on behalf of LDK Parent;

- Reviewed LDK Parent's intercompany accounts and collected intercompany receivables;

- Signed sworn affidavits on behalf of LDK Parent;

- Considered and planned the Cayman Scheme to effect a successful restructuring;

- Approving filings of various notices with the United States Securities and Exchange Commission;

- Deposited funds as retainers in the United States for certain of LDK Parent's professionals, including Young Conaway Stargatt & Taylor, LLP, LDK Parent's Delaware bankruptcy counsel in the amount of $350,000, US $25,000 of which is being held for the benefit of LDK Solar Systems, Inc.;

- Corresponded with the Board regarding the cessation of its powers, subject to the terms of the protocol pursuant to which the Board and the JPLs would cooperate in connection with implementing the Restructuring Proposal;

- Negotiated the terms of the engagement of KPMG Huazhen and KPMG Hong Kong in respect of the completion of the audit process for the year ended December 31, 2013;

- Corresponded with the Group's liability management committee regarding various issues affecting the running of the Company;

- Chaired certain of the Group's liability management committee calls from the Cayman Islands;

14

- Reviewed and enhanced LDK Parent's corporate governance policies and procedures;

- Following Mr. Peng's resignation on August 29, 2014, identified Mr. Xingxue Tong as Interim Chairman;

- Identifying potential candidates for appointment as independent directors to strengthen LDK Parent's corporate governance;

- Authorized the solicitation of the Cayman Scheme to Scheme Creditors;

- Reviewed and approved the Cayman Scheme as proposed to the Cayman Court on September 12, 2014 and submitted an affidavit in support thereof;

- Oversaw the solicitation of the Cayman Scheme pursuant to the terms of order directing the Cayman Scheme meetings;

- Published notice of solicitation of the Cayman Scheme;

- As the chairpersons for each of the Cayman Scheme Meetings, reviewed and accepted proxies and voting in accordance with those instructions, tallying the result of the vote for each meeting and delivering the result to the Cayman Scheme Meetings; and

- Following the Cayman Scheme Meetings, filing evidence with the Cayman Court with a report as to the outcome of the Cayman Scheme Meetings.

(JPL Decl. ¶ 74).

29.    For the foregoing reasons, as of the Petition Date, the Cayman Islands has been the jurisdiction within which the JPLs have conducted LDK Parent's principal business operations.

### c.    The Location of LDK Parent's Primary Assets is the Cayman Islands

30.    Although the Group maintains significant assets in several locations worldwide, including the PRC and Hong Kong, LDK Parent's primary assets are its equity interests in its subsidiaries and cash held in Cayman Islands bank accounts.  As a holding

company of among others, at least one Cayman Islands subsidiary, LDK Parent holds the shares

of its Cayman Islands holdings in the Cayman Islands. (JPL Decl. ¶ 72.) In addition, as noted

above, the JPLs, on behalf of LDK Parent, have opened bank accounts in the Cayman Islands in

LDK Parent's name, and such bank accounts hold all debtor-in-possession and exit financing

proceeds on behalf of LDK Parent. (Id. ¶ 74.) These bank accounts also serve as the primary

cash management accounts for LDK Parent. (Id.)

### d. LDK Parent's COMI in the Cayman Islands is Readily Ascertainable by Third Parties

31.     Furthermore, LDK Parent and the JPLs have made LDK Parent's status as

a Cayman Islands corporation readily ascertainable to third parties, including creditors. LDK

Parent has filed regular reports with the United States Securities and Exchange Commission

since July 5, 2007. In such reports, LDK Parent consistently stated that it was a holding

company incorporated in the Cayman Islands.[7] Moreover, the indenture governing the Senior

Notes, as well as the subscription agreement for the Preferred Shares, specifically described

LDK Parent as a Cayman Islands corporation. Following entry of the Cayman Order, the JPLs

gave creditors further notice of LDK Parent's Cayman Islands location. (JPL Decl. ¶ 48.) The

JPLs have conspicuously and broadly publicized LDK Parent's ongoing operations in the

Cayman Islands and its restructuring through the Cayman Proceeding. (See id. ¶¶ 48, 74.) Since

the JPLs assumed control of LDK Parent's day-to-day operations, the JPLs have provided

creditors with readily ascertainable notice that the center of LDK Parent's operations is in the

Cayman Islands in the following ways:

---

[7] See LDK Solar CO., Ltd. Annual Report (Form 20-F), Apr. 7, 2008; LDK Solar CO., Ltd. Annual Report (Form 20-F), May 22, 2009; LDK Solar CO., Ltd. Annual Report (Form 20-F), Jun. 30, 2010; LDK Solar CO., Ltd. Annual Report (Form 20-F), May 2, 2011; LDK Solar CO., Ltd. Annual Report (Form 20-F), May 15, 2012; LDK Solar CO., Ltd. Annual Report (Form 20-F), May 13, 2013.

- Sending notice to all of LDK Parent's known creditors informing creditors of the pendency of the Cayman Proceeding, the appointment of the JPLs to oversee the management of the day-to-day affairs of LDK Parent and the date, time and Cayman Islands location of the statutory meeting of creditors, which notice was sent from the Cayman Islands with a Cayman Islands return address;

- Publishing notice of the JPLs' appointment and solicitation of the Cayman Scheme in the following publications: *The Wall Street Journal Asia*, *The South China Morning Post* and *The Cayman Islands Gazette*;

- Organizing and chairing, by way of teleconference, a creditors' meeting and multiple Liquidation Committee meetings held from the Cayman Islands;

- Responding to inquiries from LDK Parent's creditors and potential investors concerning the Restructuring Proposal and the Cayman Scheme, all of which inquiries were sent to the JPLs in the Cayman Islands;

- Approving filings of various notices with the United States Securities and Exchange Commission; and

- Approving and signing press releases in respect of the affairs of LDK Parent and the Group, all of which indicate that LDK Parent is in Cayman provisional liquidation and include Cayman Islands contact information.

(Id. ¶¶ 48, 74).

32.     Third parties, and especially LDK Parent's creditors, can therefore readily ascertain that LDK Parent's COMI is in the Cayman Islands.  Since their appointment, the JPLs have made clear to all creditors (including those creditors subject to the RSAs (as described further in the JPL Declaration)) that the Cayman Islands is the center of LDK Parent's management operations.  The information that the JPLs have provided to creditors and the general public, including various press releases, has unequivocally stated that the Cayman Islands is the center of LDK Parent's operations.  Moreover, creditors and other interested parties have been informed to direct all inquiries regarding LDK Parent's affairs to the JPLs in the Cayman Islands.  (See JPL Decl. ¶ 74).  The JPLs submit that, as of the Petition Date, LDK

Parent's "center of main interests" within the meaning of chapter 15 of the Bankruptcy Code is in the Cayman Islands.

> **E.     In the Alternative, the Cayman Proceeding is a "Foreign Nonmain Proceeding"**

33.     As stated above, the Cayman Proceeding has met the requirements of  a "foreign main proceeding" pursuant to section 1502 of the Bankruptcy Code in light of the broad range of activities undertaken by LDK Parent in the Cayman Islands, particularly since the appointment of the JPLs.  Nevertheless, should the Court for some reason conclude that the Cayman Proceeding should not be recognized as a foreign main proceeding, the JPLs submit that, in the alternative, the Cayman Proceeding should be recognized as a foreign nonmain proceeding under sections 1516(b)(2) and 1502(5) of the Bankruptcy Code.

34.     A foreign nonmain proceeding is defined as a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5).  An "establishment" is "any place of operations where the debtor carries out a nontransitory economic activity."  11 U.S.C. § 1502(2).  Although "nontransitory economic activity" is not defined in the Bankruptcy Code, courts have interpreted terms "operations" and "economic activity" as requiring a "showing of a local effect on the marketplace, more than mere incorporation and record-keeping and more than just the maintenance of property."  Brit. Am. Ins., 425 B.R. at 915.  The "establishment" requirement is satisfied by the local conduct of business.  See In re Fairfield Sentry Ltd., No. 10-13164, 2011 U.S. Dist. LEXIS 105770 at *29-30 n.8 (S.D.N.Y. Sept. 16, 2011) ("This Court agrees with the Bankruptcy Court that if main recognition were not granted, non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an establishment in the BVI for the conduct of nontransitory economic activity, i.e. a local place of business.").

35.     As stated above, LDK Parent, through the actions of the JPLs, has engaged in substantial business in the Cayman Islands during the past eight months.  (See JPL Decl. ¶ 74).  In addition to opening additional Cayman Islands bank accounts, the JPLs, on behalf of LDK Parent, have also negotiated and finalized the RSAs with key stakeholders, signed debtor-in-possession and exit financing documents on behalf of LDK Parent, negotiated and solicited the Cayman Scheme, liaised with subsidiaries and affiliates regarding their funding requirements, reviewed intercompany accounts and collected intercompany receivables, overseen pending litigation against LDK Parent, chaired creditors' meetings and multiple liquidation committee meetings and considered and planned both the Cayman Scheme in order to effectuate a global restructuring.  (Id.)

36.     Given the considerable business activities conducted by LDK Parent in the Cayman Islands, the JPLs submit that the Cayman Proceeding is pending where LDK Parent has an "establishment," and, therefore, that the Cayman Proceeding constitutes a "foreign nonmain proceeding" within the meaning of section 1502 of the Bankruptcy Code.

**F.    Recognition of the Cayman Proceeding Would Not Be Manifestly Contrary to United States Policy**

37.     Recognition of a foreign proceeding is "subject to section 1506," which provides that a bankruptcy court may decline to grant relief requested if the action would be "manifestly contrary to the public policy of the United States."  11 U.S.C. §§ 1506, 1517(a). Courts have construed this public policy exception narrowly.  See ABC Learning Centres, 445 B.R. at 335 (holding that section 1506 "exception is to be narrowly construed"); In re Ashapura Minechem Ltd., 480 B.R. 129, 139 (S.D.N.Y. 2012) (stating that courts have "uniformly" read the public policy exception "narrowly and applied it sparingly"); In re Brit. Am. Isle of Venice (BVI), Ltd., 441 B.R. 713, 717 (Bankr. S.D. Fla. 2010) (same).  As noted above, insolvency

proceedings under the Companies Law have been routinely recognized by courts in this district

and others as foreign proceedings.[8]

38.     The public policy exception established by section 1506 has no application

here.  To the contrary, granting recognition of the Cayman Proceeding would advance the

specific public policy objectives of sections 1501(a) and 1508 of the Bankruptcy Code, among

others.  Specifically, granting recognition of the Cayman Proceeding would promote the fair and

efficient administration of a cross-border insolvency proceeding designed to protect the interests

of all creditors and other interested parties, while at the same time preventing dissident creditors

from commencing or continuing litigation in the United States that could potentially disrupt a

carefully planned restructuring process to the detriment of the overwhelming majority of

creditors.  Granting recognition to the Cayman Proceeding as a foreign main proceeding is

critical to effectuating the objectives of chapter 15, fostering greater cooperation between the

United States and Cayman Courts, and accomplishing the global restructuring of LDK Parent's

assets through both the Cayman Proceeding and the Chapter 11 Cases.  Moreover, recognition of

the Cayman Proceeding as a foreign main proceeding would further protect the interests of

creditors both in the Cayman Proceeding and the Chapter 11 Cases.  Absent recognition, the

uniform and orderly administration of LDK Parent's assets negotiated by LDK Parent's key

stakeholders would be jeopardized.

## II.    THE REQUESTED PROVISIONAL RELIEF SHOULD BE GRANTED

39.     Although section 1520 of the Bankruptcy Code provides for the automatic

extension of a broad set of protections and powers to the foreign debtor and foreign

representative upon recognition of a foreign main proceeding, in order to protect and preserve

LDK Parent's assets located in the United States prior to the entry of the Recognition Order and

---

[8] See supra n.3 and accompanying text.

to prevent disruptive litigation during this critical time, the JPLs also seek entry of an order

providing for interim protection under sections 105(a), 1519(a) and 1521(a)(7) of the Bankruptcy

Code (i) enforcing the Cayman Order in the United States on an interim basis; (ii) applying

section 362 of the Bankruptcy Code on an interim basis pursuant to sections 105(a), 1519(a)(3)

and 1521(a)(7) of the Bankruptcy Code; and (iii) granting such other and further relief as the

Court deems just and proper.

40.     Courts in this District and elsewhere have granted provisional application

of section 362 of the Bankruptcy Code prior to recognition.[9]  The JPLs believe that such interim

relief is necessary in order to prevent individual creditors from using the courts of the United

States as a vehicle to disrupt the Cayman Proceedings.  The provisional relief will benefit all of

LDK Parent's stakeholders by preserving the status quo for purposes of effectuating LDK

Parent's global reorganization.  Furthermore, the provisional application of section 362 of the

Bankruptcy Code is identical to relief granted on a final basis upon recognition of the Cayman

Proceeding as a foreign main proceeding.  Upon such recognition, the JPLs will automatically be

entitled to the full array of relief conferred under section 1520(a) of the Bankruptcy Code.  This

includes the application to LDK Parent and its property of the automatic stay provided for in

section 362 of the Bankruptcy Code (see 11 U.S.C. § 1520(a)(1); ABC Learning Centres, 728

F.3d at 311 ("Upon recognition of the foreign main proceeding, the automatic stay under Section

---

[9] See, e.g., In re Essar Steel Algoma, Inc., Case No. 14-11730, Docket No. 28 (Bankr. D. Del. July 17, 2014);  In re Elpida Memory, Inc., Case No. 12-10947, Docket No. 25 (Bankr. D. Del. Mar. 21, 2012) (granting provisional relief, including protections of automatic stay); In re Arctic Glacier Int'l Inc., Case No. 12-10605, Docket No. 28 (Bankr. D. Del. Feb. 23, 2012) (same); In re Angiotech Pharm. Inc., Case No. 11-10269, Docket No. 26 (Bankr. D. Del. Jan. 31,  2011) (same); In re Nortel Networks UK Ltd., Case No. 09-11972, Docket No. 56 (Bankr. D. Del. Oct. 27,  2010) (same); In re Destinator Techs. Inc., Case No. 08-11003, Docket No. 19 (Bankr. D. Del. May 20, 2008) (granting stay of actions against debtor, its business and directors and officers pending hearing  on recognition); In re Chemokine Therapeutics Corp., Case No. 09-11189, Docket No. 11 (Bankr. D. Del. Apr. 6, 2009) (same); In re Biltrite Rubber (1984) Inc., Case No. 09-31423, Docket No. 17 (Bankr. N.D. Ohio Mar. 13, 2009 (applying, pursuant to section 1519, section 362 stay on provisional basis to all actions against petitioning foreign representative and foreign property within the United States); In re KPMG Inc., Foreign Representative of Redcorp Ventures Ltd., Case No. 09-12019, Docket No. 10 (Bankr. W.D. Wa. Mar. 9, 2009) (same).

362 applies to multinational bankruptcies 'with respect to the debtor and the property of the

debtor that is within the territorial jurisdiction of the United States'")), as well as the

empowerment of the JPLs to exercise the rights and powers of a trustee under and to the extent

provided under sections 363 and 552 of the Bankruptcy Code.  See 11 U.S.C. § 1520(a)(3); In re

Grand Prix Assocs. Inc., Case No. 09-16545, 2009 WL 1850966, at *3 (Bankr. D.N.J. June 26,

2009) ("Section 1520(a)(3) also allows the foreign representative to operate the debtor's business

utilizing Sections 363 and 552.").

> 41.    Section 1519 of the Bankruptcy Code authorizes provisional relief where

such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors."

11 U.S.C. § 1519(a).  Pursuant to section 1519(e), relief pursuant to section 1519 of the

Bankruptcy Code is available where the foreign representative can satisfy the typical standards

for injunctive relief.  See 11 U.S.C. § 1519(e).  In the Third Circuit, the factors considered for

granting injunctive relief are: "(1) whether the movant has shown a reasonable probability of

success on the merits; (2) whether the movant will be irreparably injured by denial of the relief;

(3) whether the relief requested will result in even greater harm to the nonmoving party; and (4)

whether granting preliminary relief is in the public interest."  N.J. Retail Merchants Ass'n v.

Sidamon-Eristoff, 669 F.3d 374, 385-86 (3d Cir. 2012) (quoting Crissman v. Dover Downs

Entm't Inc., 239 F.3d 357, 364 (3d Cir. 2001)).  All four of the foregoing factors are met in this

case and, accordingly, this Court should grant the requested provisional relief.

### A.  **The Relief Requested is Necessary and Appropriate to Prevent Irreparable Harm**

> 42.    In a foreign restructuring context, irreparable injury can be shown by the

possibility of "premature piecing out of property involved in a foreign liquidation proceeding."

In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988).  Absent the relief requested herein, LDK

Parent's assets may be subject to continuing or additional litigation by certain creditors seeking to encumber such assets and potentially threaten the viability of LDK Parent's global restructuring.  See In re Banco Nacional de Obras y Servicios Publico S.N.C., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (injunctive relief necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group").  The threat of lawsuits initiated by dissident creditors is not hypothetical.  On August 25, 2014, three entities allegedly holding interests in the Senior Notes commenced an action against LDK Parent and certain of its subsidiaries seeking damages in the amount of $1.6 million plus interest and costs (the "New York Action").  The New York Action is pending in the Supreme Court of the State of New York, County of New York, under the following caption: Kjeungskjaer Ventures, LLC, et al. v. LDK Solar CO., Ltd., et al., Index No. 652628/2014.  The defendants in the New York Action must file responsive papers by October 30, 2014.

43.    Although the Chapter 11 Debtors' assets are now, by virtue of the commencement of the Chapter 11 Cases, subject to the automatic stay provisions of section 362 of the Bankruptcy Code, LDK Parent remains susceptible to piecemeal litigation by dissident creditors—such as the plaintiffs in the New York Action—who may attempt to initiate or continue litigation against LDK Parent in the United States.  Any such litigation would be detrimental to the orderly distribution of LDK Parent's assets under the Cayman Scheme.  Moreover, the absence of the requested provisional relief would likely (i) distract the JPLs from administering LDK Parent pursuant to the Cayman Order and (ii) deplete LDK Parent's assets by way of increased administrative costs.  Therefore, the JPLs submit that they have met the standard for "irreparable harm" in this case and that the provisional relief requested should be granted.

## B. **There is a Substantial Likelihood of Foreign Recognition**

44.    As set forth in <u>Section I</u> above, the JPLs have presented a successful case for recognition of the Cayman Proceeding as a foreign main proceeding.  Based on the facts that (a) the Cayman proceeding is currently pending in the location of LDK Parent's COMI, (b) all proper supporting documentation was filed contemporaneously with the Verified Petition, and (c) the JPLs each qualify as a duly appointed "foreign representative," there is a high likelihood that recognition of the Cayman Proceeding as a foreign main proceeding will be granted.

## C. **Granting the Provisional Relief Will Not Result in Greater Harm to Nonmoving Parties**

45.    As described above, the Cayman Scheme is part of a comprehensive, consensual global restructuring of LDK Parent's offshore liabilities and is the result of good faith, arm's-length negotiations among LDK Parent's key stakeholders.  In order to effectuate the terms of the RSAs and promote the efficient and orderly distribution of LDK Parent's assets to affected creditors, it is vital to maintain the status quo prior to the Recognition Hearing.  <u>See</u>, <u>e.g.</u>, <u>Kos Pharm., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 708 (3d Cir. 2004) ("One of the goals of the preliminary injunction analysis is to maintain the status quo.").  Moreover, there is a substantial likelihood the requested relief will be granted on a permanent basis once the JPLs obtain recognition of the Cayman Proceeding as a foreign main proceeding, further minimizing the potential harm to nonmoving parties.  As a result, the balance of hardships tips convincingly in LDK Parent's favor, and the Court should grant the requested relief.

## D. **The Provisional Relief Serves the Public Interest**

46.    Granting the requested relief is in the public interest as it furthers the overarching purposes of chapter 15.  Granting the requested provisional relief will promote cooperation between this Court and Cayman Court and protect creditors' interests in both

jurisdictions, both of which are underlying objectives of chapter 15.  See generally 11 U.S.C. §

1501.  Granting the requested relief would also "support the strong public policy of the United

States in favor of a universalism approach to complex multinational bankruptcy proceedings."  In

re Ir. Bank Resolution Corp. (In Special Liquidation), Case No. 13-12159, 2014 Bankr. LEXIS

1990, at *164 (Bankr. D. Del. April 30, 2014); see also 11 U.S.C. § 1508 ("In interpreting

[chapter 15], the court shall consider its international origin, and the need to promote an

application of this chapter that is consistent with the application of similar statutes adopted by

foreign jurisdictions.").

## **CONCLUSION**

For the foregoing reasons, the JPLs respectfully request that this Court grant the

relief requested in the Recognition Motion and grant such other and further relief as may be just

and proper.

Dated: Wilmington, Delaware         Respectfully submitted,
        October 21, 2014

                                   SIDLEY AUSTIN LLP
                                   Larry J. Nyhan
                                   Jessica C.K. Boelter
                                   Matthew G. Martinez
                                   Geoffrey M. King
                                   One South Dearborn Street
                                   Chicago, Illinois 60603
                                   Telephone:  (312) 853-7000
                                   Facsimile:  (312) 853-7036

                                       -and-

                                   YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                 */s/ Maris J. Kandestin*
                                 Robert S. Brady (No. 2847)
                                 Edmon L. Morton (No. 3856)
                                 Maris J. Kandestin (No. 5294)
                                 Rodney Square
                                 1000 North King Street
                                 Wilmington, Delaware 19801
                                 Telephone:  (302) 571-6600
                                 Facsimile:  (302) 571-1253

                                   COUNSEL TO THE FOREIGN REPRESENTATIVES
                                   ON BEHALF OF LDK PARENT