**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 15 |
| ZODIAC POOL SOLUTIONS SAS, *et al.*, [1] | Case No. 14-11818 (KJC) |
| Debtor in a Foreign Proceeding. | (Joint Administration Requested) |

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITIONS
FOR RECOGNITION OF FOREIGN PROCEEDINGS AND RELATED RELIEF**

---

[1] The last four digits of the United States Tax Identification Number, or similar foreign identification number, as applicable, follow in parentheses: Zodiac Pool Solutions SAS (N/A); Zodiac Pool Solutions North America, Inc. (3451); and Zodiac Pool Systems, Inc. (5614).

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 3

FACTUAL BACKGROUND ............................................................................................. 4

ARGUMENT ...................................................................................................................... 4

I. The English Proceedings are Entitled  to Recognition as Foreign Nonmain Proceedings .............. 4

    A.     These Cases Concern a "Foreign Proceeding" ........................................ 5

    B.     These Cases were Commenced by a "Foreign Representative" ................................. 7

    C.     These Cases were Properly Commenced under Chapter 15 ...................................... 7

    D.     The Schemes Should be Recognized as a Foreign Nonmain Proceedings ................. 8

    E.     The Foreign Representative is Entitled to an Order Granting Recognition of English Proceedings as Foreign Nonmain Proceedings ......................................... 9

II. The Foreign Representative is Entitled to an Order Enforcing the Schemes ............................ 10

    A.     The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the Bankruptcy Code ........................................................................... 10

    B.     The Enforcement of the Schemes is Warranted under Section 1521 of the Bankruptcy Code ................................................................................. 13

    C.     The Enforcement of the Schemes is Warranted under Section 1507 of the Bankruptcy Code ................................................................................. 15

    D.     The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code ......................................................................................... 16

III. CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

## CASES

*Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*,
   701 F.3d 1031 (5th Cir. 2012) .......................................................................... 10, 11, 12, 15

*Canada S. Ry. Co. v. Gebhard*,
   109 U.S. 527 (1883) .............................................................................................13

*Collins v. Oilsands Quest, Inc.*,
   484 B.R. 593 (S.D.N.Y. 2012)..............................................................................11

*Cunard S.S. Co. v. Salen Reefer Servs. AB*,
   773 F.2d 452 (2d Cir. 1985) ................................................................................13

*Hilton v. Guyot*,
   159 U.S. 113 (1895) .............................................................................................16

*Iida v. Kitahara (In re Iida)*,
   377 B.R. 243 (9th Cir. BAP 2007).......................................................................17

*In re AXA Ins. UK PLC*,
   Case Nos. 07-12110 to 07-12113 (Bankr. S.D.N.Y. Aug. 15, 2007)......................6

*In re Arion Ins. Co. Ltd.*,
   Case No. 07-12108 (Bankr. S.D.N.Y. Aug. 9, 2007).............................................6

*In re Atlas Shipping A/S*,
   404 B.R. 726 (Bankr. S.D.N.Y. 2009) .................................................................10

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
   374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008)....................7, 8

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
   238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002).....................6, 11

*In re Castle Holdco 4, Ltd.*,
   Case No. 09-11761 (REG) (Bankr. S.D.N.Y. Apr. 22, 2009) ................................6

*In re Ephedra Prods. Liab. Litig.*,
   349 B.R. 333 (S.D.N.Y. 2006).......................................................................11, 16

*In re Europäische Rückversicherungs-Gesellschaft in Zürich*,
   Case No. 06-13061 (Bankr. S.D.N.Y. Jan. 22, 2007) ............................................6

*In re Fairfield Sentry Ltd.*,
    No. 10-13164, 2011 U.S. Dist. LEXIS 105770 (S.D.N.Y. Sept. 15, 2011) ............................8

*In re Fairfield Sentry Ltd.*,
    484 B.R. 615 (Bankr. S.D.N.Y. 2013) ...............................................................................11

*In re Global Gen. and Reinsurance Co. Ltd.*,
    Case No. 08-14939 (RDD) (Bankr. S.D.N.Y. Jan. 21, 2009)..................................................6

*In re Global Gen. and Reinsurance Co. Ltd.*,
    Case No. 11-10327 (RDD) (Bankr. S.D.N.Y. Mar. 10, 2011) ...............................................6

*In re Gold & Honey, Ltd.*,
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) ........................................................................ 16, 17

*In re Gordian Runoff (UK) Ltd.*,
    Case No. 06-11563 (Bankr. S.D.N.Y. Aug. 28, 2006).........................................................6

*In re Greyfriars Ins. Co. Ltd.*,
    Case Nos. 07-12934 to 07-12944 (Bankr. S.D.N.Y. Oct. 23, 2007)......................................6

*In re Hellas Telecom. (Luxembourg) V*,
    Case No. 10-13651 (Bankr. D. Del. Dec. 13, 2010) ...........................................................6

*In re Hibu Inc.*,
    Case No. 14-70323 (Bankr. E.D.N.Y.  Feb. 27, 2014)..........................................................5

*In re ING Re (UK) Ltd.*,
    Case No. 08-10018 (REG) (Bankr. S.D.N.Y. Jan. 30, 2008).................................................6

*In re La Mutuelle du Mans Assurance IARD*,
    Case No. 05-60100 (Bankr. S.D.N.Y. Dec. 7, 2005) ..........................................................6

*In re Lion City Run-off Private Ltd.*,
    Case No. 06-10461 (Bankr. S.D.N.Y. Apr. 13, 2006) .........................................................6

*In re Magyar Telecom B.V.*,
    Case No. 13-13508 (Bankr. S.D.N.Y. Dec. 11, 2013) .........................................................6

*In re Metcalfe & Mansfield Alternative Invs.*,
    421 B.R. 685 (Bankr. S.D.N.Y. 2010) ...............................................................................16

*In re NRG Victory Reinsurance Ltd.*,
    Case No. 06-11052 (JMP) (Bankr. S.D.N.Y. Nov. 21, 2006).................................................6

*In re Qimonda AG Bankr. Litig.*,
    433 B.R. 547 (Bankr. E.D. Va. 2010) .................................................................17

*In re Tokio Marine Europe Ins. Ltd.*,
    Case No. 11-13420 (MG) (Bankr. S.D.N.Y. Sept. 18, 2011) ................................6

*In re Tri-Continental Exch. Ltd.*,
    349 B.R. 627 (Bankr. E.D. Cal. 2006) ..............................................................14

*In re Zlomrex Int'l Fin. S.A.*,
    Case No. 13-14138 (Bankr. S.D.N.Y. Jan. 31, 2014) ...........................................6

*Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987) ......................................................................... 10, 13

## STATUTES

11 U.S.C. § 101(23) ...................................................................................... 4, 5, 6, 10

11 U.S.C. § 101(24) ...................................................................................... 4, 7, 9, 10

11 U.S.C. § 101(41) ..................................................................................................4

11 U.S.C. § 1501(a) .............................................................................................13, 17

11 U.S.C. § 1501(b)(1).............................................................................................4

11 U.S.C. § 1502(2) ..............................................................................................4, 8

11 U.S.C. § 1502(5) ...........................................................................................4, 8, 9

11 U.S.C. § 1506 ..............................................................................................9, 16, 17

11 U.S.C. § 1507 ............................................................................................. passim

11 U.S.C. § 1517(a) ..................................................................................................9

11 U.S.C. § 1517(b) ..................................................................................................8

11 U.S.C. § 1517(b)(2)..............................................................................................8

11 U.S.C. § 1521 ............................................................................................. passim

11 U.S.C. § 1521(a) ................................................................................................12

11 U.S.C. § 1522.....................................................................................................1

28 U.S.C. § 157.............................................................................................................3

28 U.S.C. § 157(b)(2)(P) ..............................................................................................3

28 U.S.C. § 1410(1) ......................................................................................................3

28 U.S.C. § 1410(3) ......................................................................................................3

## OTHER AUTHORITIES

H.R. Rep. 109-31(I), 109 Cong., Sess. 2005, reprinted in 2005 U.S.C.C.A.N. 88, 169.................9

François Miralliè is the duly appointed foreign representative (the "**Foreign Representative**") of Zodiac Pool Solutions SAS ("**ZPS**"), Zodiac Pool Solutions North America, Inc. ("**ZPSNA"**), and Zodiac Pool Systems, Inc. ("**ZPSI**", and together with ZPS and ZPSNA, the "**Zodiac Debtors**") in connection with proceedings (the "**English Proceedings**") concerning schemes of arrangement (the "**Schemes**") under part 26 of the English Companies Act 2006 (as amended, the "**English Companies Act**") sanctioned by the High Court of Justice of England and Wales (the "**High Court**").

The Foreign Representative has commenced these chapter 15 cases (these "**Chapter 15 Cases**") ancillary to the English Proceedings by the filing of *Verified Petitions for Recognition of Foreign Proceedings and Related Relief* (the "**Chapter 15 Petitions**") with accompanying documentation, pursuant to sections 1504 and 1515 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") seeking the entry of an order (i) recognizing the English Proceedings as "foreign nonmain proceedings," and (ii) giving full force and effect to the Schemes of the Zodiac Debtors in the United States.[2]

In support thereof, the Foreign Representative respectfully represents as follows:

## PRELIMINARY STATEMENT

The purpose of the English Proceedings, and of the Schemes, is to give effect to the Amendment and Extension of certain substantial debt facilities under which several Zodiac Group entities, including the Zodiac Debtors, are obligors. Such Amendment and Extension was overwhelmingly approved by Scheme Creditors voting in favor of the Schemes with majorities in value at the various meetings ranging from 79.97% to 98.09% and majorities in number at the various meetings (by reference to those present and voting at the respective meetings) ranging

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Chapter 15 Petitions.

from 81.25% to 92.85%.   After a hearing on July 31, 2014, the High Court sanctioned the Schemes pursuant to the Sanction Order.   The salient terms of Amendment and Extension involve, among other things, the extension of the current maturity dates under the Facilities—the earliest of which is due to occur on September 27, 2014—and represents the best option for the Zodiac Group in the present circumstances, as the companies' current debt leverage ratio means that they are unable to refinance the debt owing under the Facilities in the current market. Without the Amendment and Extension, in the absence of an alternative agreement with the Scheme Creditors, the uncertainty created may cause going concern issues to be raised by the Zodiac Group auditors, suppliers to reduce their payment terms or withdraw altogether, the withdrawal of short-term trade lines, the loss of or negotiation of terms of business with customers and the reduction of credit insurance, which would likely precipitate a rapid deterioration of the Zodiac Group.   If the Zodiac Group fails to secure the Amendment and Extension, one or more Zodiac Group companies may need to take steps towards the commencement of formal insolvency or pre-insolvency proceedings in multiple jurisdictions. Such proceedings would be likely to result in a substantial loss of value for all stakeholders, including Scheme Creditors.   By contrast, the Amendment and Extension, as embodied in the Schemes, will provide the Zodiac Group with the time and financial flexibility it needs to continue deleveraging itself, with the aim of repaying the Senior Debt in full at or before the first extended maturity date of December 2017 (from the proceeds of a refinancing or sale) and of materially improving the returns to the Scheme Creditors who are lenders of Facility D and the Mezzanine Facility (potentially including repayment in full thereof).

Chapter 15 authorizes this Court to (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a case under chapter 15 and (ii) grant

assistance in the United States to such foreign representative with respect to the foreign proceeding, including by providing "additional assistance" under section 1507 and fashioning "appropriate relief" pursuant to section 1521.  In that regard, the Chapter 15 Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code; as the English Proceedings are foreign proceedings before the High Court involving companies with establishments in England, they are entitled to the recognition and relief provided by chapter 15.  Moreover, because the Zodiac Debtors either have property in the United States or are incorporated in Delaware, the Foreign Representative believes that giving full force and effect to the Schemes of the Zodiac Debtors in the United States will best assure the effective execution of the Schemes in accordance with the principles underlying chapter 15 of the Bankruptcy Code.  Finally, such relief is consistent with the relief afforded by United States courts in other ancillary chapter 15 cases involving proceedings under the English Companies Act.

Accordingly, the Foreign Representative submits that granting the Chapter 15 Petitions is just and proper under chapter 15 of the Bankruptcy Code.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. § 1410(1) and (3).  The statutory predicates for the relief requested herein are sections 105(a), 1507, 1515, 1517, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

1.      For a detailed description of the Zodiac Debtors' business, corporate organization, capital structure, and circumstances leading to the Schemes, the Court is respectfully referred to the Chapter 15 Petitions.

## ARGUMENT

### I.
### THE ENGLISH PROCEEDINGS ARE ENTITLED
### TO RECOGNITION AS FOREIGN NONMAIN PROCEEDINGS

2.      Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l).  The English Proceedings are entitled to recognition as "foreign nonmain proceedings" under chapter 15 of the Bankruptcy Code because, among other things:

(A)     the English Proceedings are (i) "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code and (ii) "foreign nonmain proceedings" within the meaning of section 1502(5) of the Bankruptcy Code because the English Proceedings are in a jurisdiction where each of the Zodiac Debtors maintains an "establishment" within the meaning of section 1502(2) of the Bankruptcy Code;

(B)     the Foreign Representative is a "person" within the meaning of section 101(41) of the Bankruptcy Code and a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code;

(C)     the Chapter 15 Petitions were filed in accordance with sections 1504 and 1509 of the Bankruptcy Code; and

(D)     the Chapter 15 Petitions meet the requirements of sections 1504 and 1515 of the Bankruptcy Code.

A.    These Cases Concern a "Foreign Proceeding"

        3.    The English Proceedings are "foreign proceedings" within the meaning of

section 101(23) of the Bankruptcy Code, which provides, in pertinent part, that:

> The term "foreign proceeding" means a collective judicial
> or administrative proceeding in a foreign country, including
> an interim proceeding, under a law relating to insolvency or
> adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by
> a foreign court, for the purpose of reorganization or
> liquidation.

11 U.S.C. § 101(23).  These requirements are satisfied by the English Proceedings.

        4.    First, the English Proceedings are collective judicial proceedings in

England because the Schemes have been subject to the approval of the Scheme Creditors, who

could not even have voted on the Schemes if the High Court did not first grant leave to do so in

the form of the Convening Order.  Moreover, even with the approval of Scheme Creditors, the

effectiveness and implementation of the Schemes has further been subject to a second hearing

before the High Court to consider sanction of the Schemes and will be subject to the delivery of

the resultant Sanction Order to the Registrar of Companies in England and Wales.  Further, the

High Court also has exclusive jurisdiction to hear and determine any suit, action, claim, or

proceeding and to settle any dispute which may arise out of any action taken or omitted to be

taken under the Schemes or in connection with the administration of the Schemes.

        5.    Second, the English Proceedings are for the purpose of "reorganization" in

that they provide for the restructuring of the Scheme Companies' debts under the Facilities

(through an extension of the maturity and an alteration of the terms thereof).  Furthermore, the

Schemes were duly proposed pursuant to part 26 of the English Companies Act, a law relating,

among other matters, to the adjustment of debt.  Thus, the English Proceedings are "foreign

proceedings" under the plain meaning of section 101(23) of the Bankruptcy Code.

6.     United States Bankruptcy Courts have routinely recognized English schemes of arrangement and their associated proceedings as "foreign proceedings" under the Bankruptcy Code.  *See, e.g., In re Hibu Inc., et al.,* Case No. 14-70323 (Bankr. E.D.N.Y. February 27, 2014); *In re Zlomrex International Finance S.A.*, Case No. 13-14138 (Bankr. S.D.N.Y. January 31, 2014); *In re Magyar Telecom B.V.*, Case No. 13-13508 (Bankr. S.D.N.Y. December 11, 2013); *In re Tokio Marine Europe Ins. Ltd.*, Case No. 11-13420 (MG) (Bankr. S.D.N.Y. September 18, 2011); *In re Global Gen. and Reinsurance Co. Ltd.*, Case No. 11-10327 (RDD) (Bankr. S.D.N.Y. March 10, 2011); *In re Hellas Telecom. (Luxembourg) V*, Case No. 10-13651 (Bankr. D. Del. December 13, 2010); *In re Castle Holdco 4, Ltd.*, Case No. 09-11761 (REG) (Bankr. S.D.N.Y. April 22, 2009); *In re Global Gen. and Reinsurance Co. Ltd.*, Case No. 08-14939 (RDD) (Bankr. S.D.N.Y. January 21, 2009); *In re ING Re (UK) Ltd.*, Case No. 08-10018 (REG) (Bankr. S.D.N.Y. January 30, 2008); *In re Greyfriars Insurance Co Ltd., et al.*, Case Nos. 07-12934 to 07-12944 (Bankr. S.D.N.Y. October 23, 2007); *In re AXA Ins. UK PLC, et al.*, Case Nos. 07-12110 to 07-12113 (Bankr. S.D.N.Y. August 15, 2007); *In re Arion Ins. Co. Ltd.*, Case No. 07-12108 (Bankr. S.D.N.Y. August 9, 2007); *In re Europäische Rückversicherungs-Gesellschaft in Zürich*, Case No. 06-13061 (Bankr. S.D.N.Y. January 22, 2007); *In re Gordian Runoff (UK) Ltd.*, Case No. 06-11563 (Bankr. S.D.N.Y. August 28, 2006); *In re NRG Victory Reinsurance Ltd.*, Case No. 06-11052 (JMP) (Bankr. S.D.N.Y. November 21, 2006); *In re Lion City Run-off Private Ltd.*, Case No. 06-10461 (Bankr. S.D.N.Y. April 13, 2006); *In re La Mutuelle du Mans Assurance IARD*, Case No. 05-60100 (Bankr. S.D.N.Y. December 7, 2005); *In re Board of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002).  Accordingly, the English Proceedings are

precisely the sort of proceedings that chapter 15 was meant to assist, and "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code.

B.    These Cases were Commenced by a "Foreign Representative"

7.    These Chapter 15 Cases were commenced by the duly-appointed "foreign representative" of the Zodiac Debtors within the meaning of section 101(24) of the Bankruptcy Code.  That section defines a "foreign representative," in pertinent part, as a "person or body… authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. § 101(24).  In this case, the Foreign Representative was appointed and authorized by the Zodiac Debtors to act as their foreign representative in connection with the English Proceedings, and such appointment was confirmed by the High Court in the Convening Order, which declares that the Foreign Representative "is the appointed foreign representative authorised in these proceedings to act as a foreign representative . . . in any Chapter 15 proceedings in the United States Bankruptcy Court in respect of ZPS, ZPSNA, and ZPSI" and has the authority to "apply to any court in the United States for the recognition of the Schemes, the enforcement of [the Convening Order], and other related relief under Chapter 15 of the US Bankruptcy Code."  Convening Order ¶ 19-20.  The Court is entitled to presume that the representative identified in the Convening Order is a "foreign representative" under section 1516(a) of the Bankruptcy Code.  Accordingly, the Foreign Representative is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

C.    These Cases were Properly Commenced under Chapter 15

8.    The Foreign Representative duly and properly commenced the Chapter 15 Cases, as required by sections 1504 and 1509 of the Bankruptcy Code, by filing the Chapter 15 Petitions for recognition of a foreign proceeding under section 1515(a) accompanied by all

documents and information required by section 1515(b) and (c).  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").  Because the Foreign Representative has satisfied the requirements set forth in section 1515 of the Bankruptcy Code, it has properly commenced these Chapter 15 Cases.

D.    The Schemes Should be Recognized as a Foreign Nonmain Proceedings

9.    The English Proceedings should be recognized as a "foreign nonmain proceedings," as defined in section 1502(5) of the Bankruptcy Code.  Under section 1517(b) of the Bankruptcy Code, a foreign proceeding shall be recognized as a foreign nonmain proceeding if it is located in a country where the debtor has an "establishment."  11 U.S.C. § 1517(b)(2). Section 1502 of the Bankruptcy Code defines an "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity."  *See* 11 U.S.C. § 1502(2).  The "establishment" requirement is satisfied by the local conduct of business.  *See In re Bear Stearns*, 374 B.R. at 131; *In re Fairfield Sentry Ltd.*, No. 10-13164, 2011 U.S. Dist. LEXIS 105770 at *29 n.8 (S.D.N.Y. Sept. 15, 2011) (noting that debtor had "as an establishment . . . for the conduct of nontransitory economic activity, i.e. a local place of business.").

10.    The Zodiac Debtors have numerous economic connections to the United Kingdom, and various aspects of the Zodiac Group's activities are centralized in London.  In particular:

- the Zodiac Debtors each maintain branch offices in London from which their respective employees carry out their duties.  Each branch office is registered with Companies House in England and Wales;

- the Zodiac Debtors have each licensed office space in London through their London branches;

- the Zodiac Group conducts its treasury operations through these London branches, and the London branches jointly employ individuals in London to carry out these functions. The branches charge their main offices for the provision of these services;

- the Zodiac Debtors have retained the services of third-party lawyers and accountants in the UK through their London branches;

- the Zodiac Debtors maintain bank accounts with the London branch of ING Bank N.V.; and

- through its London branch, ZPSI sells pool care and spa products in the United Kingdom and operates the Zodiac Group's hotel and resort business. The ZPSI London branch employs a UK Sales Manager and a Global Sourcing Manager, owns office equipment, and has entered into standard business contracts – *e.g.*, with Vodafone UK for mobile phone service – from this location.

In addition, the Zodiac Debtors use their UK bank accounts, including to make payments under the Loan Agreements, and have consented to service of notice under the Loan Agreements at their offices in London. Given the considerable economic contacts between the Zodiac Debtors and England, the English Proceedings are located in a jurisdiction where each of the Zodiac Debtors has an "establishment," and therefore constitute "foreign nonmain proceedings" as defined in section 1502(5) of the Bankruptcy Code.

E.    The Foreign Representative is Entitled to an Order Granting Recognition of English Proceedings as Foreign Nonmain Proceedings

11.    As evidenced above, the English Proceedings are "foreign nonmain proceedings" within the meaning of section 1502(5) of the Bankruptcy Code, the Foreign Representative applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Chapter 15 Petitions meet the requirements of section 1515 of the Bankruptcy Code. Section 1517(a) of the Bankruptcy Code provides, in pertinent part, that "[s]ubject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if - (1) such foreign proceeding for which recognition is

sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of

section 1502; (2) the foreign representative applying for recognition is a person or body; and (3)

the petition meets the requirements of section 1515.  11 U.S.C. §1517(a).  *See also* H.R. Rep.

109-31(I), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175 (noting, in

enacting chapter 15, that the "decision to grant recognition is not dependent upon any findings

about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of

the Bankruptcy Code. The requirements of this section, which incorporates the definitions in

section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition").

Accordingly, the Foreign Representative respectfully submits that the Court should enter an

Order recognizing the English Proceedings as "foreign nonmain proceedings" pursuant to section

1517 of the Bankruptcy Code.

## II.
## THE FOREIGN REPRESENTATIVE IS ENTITLED
## TO AN ORDER ENFORCING THE SCHEMES

12.    In connection with the recognition of the English Proceedings, the Foreign

Representative further seeks an order giving full force and effect to the Schemes of the Zodiac

Debtors in the United States. The Foreign Representative respectfully submits that such relief is

warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general

principles of comity that underpin chapter 15.

A.    The Requested Relief is Warranted under Sections 105(a), 1507, and 1521 of the
Bankruptcy Code

13.    Chapter 15 of the Bankruptcy Code embodies longstanding principles of

international comity and cooperation that weigh heavily in favor of the enforcement of the

Schemes in the United States. *See Victrix S.S., Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709,

713 (2d Cir. 1987) ("American courts have long recognized the need to extend comity to foreign

bankruptcy proceedings."); *In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) (Chapter 15 "specifically contemplates that the court should be guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief."); *Ad Hoc Group of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1044 (5th Cir. 2012) ("Central to Chapter 15 is comity."); *In re Fairfield Sentry Ltd.*, 484 B.R. 615, 626 (Bankr. S.D.N.Y. 2013) ("Chapter 15 emanates from and was designed around this central concept of comity, as evidenced by its primary purpose and deferential framework for international judicial cooperation.").   As courts have recognized, while comity does not demand categorical deference to a foreign proceeding, under these principles "a foreign judgment should generally be accorded comity if its proceedings are 'fair and impartial.'" *Collins v. Oilsands Quest, Inc.*, 484 B.R. 593 (S.D.N.Y. 2012) (citing *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006)).

14.    Further, "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." (internal quotations and citations omitted).  *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., Inc.*, 238 B.R. 25, 67 (Bankr. S.D.N.Y. 1999), *aff'd*, 238 B.R. 699 (S.D.N.Y. 2002).  US Bankruptcy courts hearing chapter 15 cases have therefore frequently granted comity to orders issued in proceedings under the English Companies Act.  *See supra* ¶section I(A).

15.    In addition to general principles of comity, sections 1507 and 1521 of the Bankruptcy Code provide specific bases for a court overseeing a chapter 15 proceeding to provide additional relief to a foreign representative following the recognition of a foreign proceeding.  Section 1521 allows a court to grant "any appropriate relief," including "any relief

that may be available to a trustee," subject to certain limitations and provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1521, 1522. Section 1507 empowers a court to provide "additional assistance" to a foreign representative provided that such assistance, "consistent with the principles of comity," will reasonably assure: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. 11 U.S.C. § 1507.

16.     In *In re Vitro*, the Fifth Circuit Court of Appeals considered the relationship between sections 1521 and 1507 of the Bankruptcy Code and established an analytical framework for considering requests for relief under chapter 15. *Vitro*, 701 F.3d at 1056. Under the *Vitro* analysis, a court should initially consider whether the requested relief falls under one of the explicit provisions of section 1521. *Id*. If it does not, then the court must consider whether the requested relief constitutes "appropriate relief" under section 1521(a), which the *Vitro* court held to be coextensive with relief provided under former section 304 of the Bankruptcy Code, the precursor to chapter 15, or otherwise available in the United States. *Id*. Finally, if the requested relief goes beyond the relief previously available under section 304 or currently available under United States law, then a court must consider 1507, which allows for relief "more extraordinary" than that provided under section 1521. *Id*. at 1057 (internal citations omitted).

B.     The Enforcement of the Schemes is Warranted under Section 1521 of the Bankruptcy Code

17.     As described in greater detail in the Chapter 15 Petitions, the Schemes are intended to effect an amendment and extension of the Zodiac Debtors' obligations in respect of the Facilities and are not unlike a chapter 11 plan of reorganization that restructures a portion of the debtor's liabilities but leaves the rest unimpaired, and their enforcement in the United States constitutes "appropriate relief" within the meaning of section 1521. The requested relief is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is a requisite to effect the Amendment and Extension and the fair administration of the Schemes.  Indeed, granting such relief would promote all of the legislatively enumerated objectives of 1501(a).

18.     It is essential that all Scheme Creditors be bound by the terms of the Schemes as approved and made effective by the High Court and the laws of England and Wales in order for the Schemes to be administered fairly and efficiently and to protect all parties in interest. As the U.S. Court of Appeals for the Second Circuit has recognized, "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987); *see also Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign proceeding enables the assets of a debtor to be dispersed in an equitable, orderly and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").  The Supreme Court recognized the necessity of giving effect to foreign schemes of arrangement in order to further these goals, reasoning that:

> [u]nless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.

*Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883). In the instant matter, there is a threat that Scheme Creditors and other entities could seek to obtain judgments in the United States against the Zodiac Debtors in order to circumvent the terms of the Schemes. If such Scheme Creditors can effectively evade the terms of the Schemes by commencing actions in the United States, the Zodiac Debtors would be required to defend any such proceedings and deplete the resources of the restructured business and prejudice its overall reorganization efforts. The relief requested is required to prevent individual creditors acting to frustrate the purposes of the Schemes, the foremost of which is the fair and efficient administration of the Amendment and Extension in order to maximize value for all stakeholders of the Zodiac Debtors.

19.    The enforcement of the Schemes also satisfies the requirements of section 1522 of the Bankruptcy Code because the interests of creditors and other interested entities, including the Zodiac Debtors themselves, are sufficiently protected thereunder. *See In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 637 (Bankr. E.D. Cal. 2006) ("Standards that inform the analysis of § 1522 protective measures in connection with discretionary relief emphasize the need to tailor relief and conditions so as to balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another."). The Foreign Representative believes that the Amendment and Extension is the most effective means of preserving the Zodiac Group as a going concern and maximizing value for the benefit of its stakeholders. Further, the Schemes are limited to the Scheme Creditors, who voted overwhelmingly in favor of the Schemes and the transactions contemplated under the Schemes, and do not purport to affect any other creditors or counterparties of the Zodiac

Debtors. Accordingly, there is no basis under section 1522 for denying the enforcement of the Schemes in the United States.

C.    The Enforcement of the Schemes is Warranted under Section 1507 of the Bankruptcy Code

        20.    If the Court concludes that the enforcement of the Schemes is not warranted under section 1521 of the Bankruptcy Code, the Foreign Representative respectfully submits that such relief is warranted as "additional assistance" under section 1507, which empowers a court to grant relief in aid of a foreign proceeding beyond what might be available in a plenary case provided that certain considerations are satisfied. *Vitro*, 701 F.3d at 1056. The Foreign Representative submits that enforcing the Schemes is entirely consistent with the relevant considerations specified in section 1507:

- the English Proceedings ensure the just treatment of all holders of claims against or interests in the Zodiac Debtors' property, as the Schemes only purport to restructure a subset of the Zodiac Debtors' liabilities and the Amendment and Extension will be effected in accordance with the English Companies Act under the supervision of the High Court;

- it cannot be said that United States creditors would be inconvenienced by the Schemes in any respect, as the Schemes restructure obligations governed by English-law and the Facility Agent and Security Agent under the Loan Agreements is the London branch of ING Bank N.V.;

- there is no evidence that any preferential or fraudulent disposition of the Zodiac Debtors' property is being made under the Schemes;

- the Amendment and Extension embedded in the Schemes will not distribute the proceeds of the Zodiac Debtors' property in contravention of the order prescribed by the Bankruptcy Code, as it merely amends and extends the Zodiac Debtors' obligations in respect of the Facilities and does not purport to affect any other creditors or counterparties; and

- the Schemes allow the Zodiac Debtors to retain their going concern value, whereas absent the relief provided by the Amendment and Extension and the Schemes they would likely have little option but to commence formal insolvency or pre-insolvency proceedings in multiple jurisdictions, thereby likely causing a substantial loss in value to all stakeholders.

21.    Further, as the Fifth Circuit observed in *Vitro*, relief granted in foreign insolvency proceedings may be enforced in the United States through section 1507 if it can be demonstrated that the requested relief "is substantially in accordance with the circumstances that would warrant such relief in the United States." *Vitro*, 701 F.3d at 1069.  In this case, the Schemes provide relief similar to relief under chapter 11 plans of reorganization which restructure a portion of the debtor's obligations while leaving the rest unimpaired, and are in some respects even less prejudicial to unaffected stakeholders because, unlike chapter 11 cases, the Schemes do not purport to impose any automatic stay or injunction on unaffected stakeholders that might affect a party's rights.  Moreover, for each of the Zodiac Debtors, the Schemes were approved with the support of more than 75% by value and more than 50% by number of their respective classes of Scheme Creditors, which exceeds the thresholds for plan approval under section 1126 of the Bankruptcy Code.[3]  The relief being sought is therefore similar to that available under chapter 11, and the Foreign Representative therefore respectfully submits that this Court is entitled to enforce the Schemes in the United States pursuant to section 1507 of the Bankruptcy Code.

D.    The Requested Relief Does Not Violate Section 1506 of the Bankruptcy Code

22.    Finally, the requested relief does not violate section 1506 of the Bankruptcy Code, which provides that a court may refuse to take an action in a chapter 15 case if such "action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  The legislative history of section 1506 makes clear that the public policy exception should be "narrowly interpreted" and is restricted to "the most fundamental policies of the United States."  *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (citing

---

[3]    The Scheme Creditors voted in favor of the Schemes with majorities in value at the various meetings ranging from 79.97% to 98.09% and majorities in number at the various meetings (by reference to those present and voting at the respective meetings) ranging from 81.25% to 92.85% on high turnouts of the relevant constituencies (only one Scheme Creditor did not vote).

16

H.R. REP. NO. 109-31(I), at 109, *as reprinted in* 2005 U.S.C.C.A.N. 88, 172).   *See also In re Gold & Honey, Ltd.*, 410 B.R. 357 (Bankr. E.D.N.Y. 2009).   *Cf. Hilton v. Guyot*, 159 U.S. 113 (1895) (holding that a foreign judgment should generally be accorded comity if "its proceedings are according to the course of a civilized jurisprudence").   Accordingly, courts have held that the public policy exception "should be interpreted restrictively" and that "a foreign judgment should generally be accorded comity if its proceedings are . . . fair and impartial."   *In re Ephedra Prods. Liab. Litig.*, 349 B.R. at 90-91 (internal citations omitted) (affirming foreign judgment issued in the absence of a jury trial).   *See also In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) (noting that "this public policy exception is narrowly construed" and enforcing broad third-party releases in Initial Order); *Iida v. Kitahara (In re Iida)*, 377 B.R. 243 (9th Cir. BAP 2007) ("This public policy exception is narrow and, by virtue of the qualifier 'manifestly,' is limited only to the most fundamental policies of the United States.").   Courts engaging in this analysis examine (i) whether the foreign proceeding was procedurally unfair and (ii) whether the application of foreign law would "'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out . . . the most fundamental policies and purposes' of these rights."   *In re Qimonda AG*, 433 B.R. 547, 569 (Bankr. E.D. Va. 2010) (citing *Gold & Honey, Ltd.*, 410 B.R. at 372).

       23.    In the instant matter, the Foreign Representative requests (i) recognition of the English Proceedings as "foreign nonmain proceedings," and (ii) enforcement of the Schemes in the United States.   It cannot be contended that mere recognition of the Foreign Proceedings pursuant to Chapter 15 of the Bankruptcy Code would violate the public policy of the United States.   Similarly, the enforcement of the Schemes would not violate the public policy of the

United States because, as discussed above, the Schemes authorize relief that is consistent with relief available in plenary proceedings under the Bankruptcy Code.

24.    Accordingly, the Foreign Representative respectfully submits that this Court should give full force and effect to the Schemes of the Zodiac Debtors in the United States upon the recognition of the English Proceedings.  Such relief would not be manifestly contrary to the public policy of the United States, as prohibited in section 1506.  Indeed, granting such recognition furthers the United States public policy respecting foreign proceedings as articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of the Bankruptcy Code.

**III.**

**CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the relief requested in the Chapter 15 Petitions, and such other relief as the Court deems just and appropriate in the circumstances.

Dated: Wilmington, Delaware
      July 31, 2014

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Curtis S. Miller*
Curtis S. Miller (No. 4583)
Erin R. Fay (No. 5268)
1201 N. Market St., 16th Flr.
PO Box 1347
Wilmington, DE 19899-1347
Telephone (302) 658-9200
Facsimile (302) 658-3989
cmiller@mnat.com
efay@mnat.com

-and-

**ALLEN & OVERY LLP**
Daniel Guyder
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
daniel.guyder@allenovery.com
jonathan.cho@allenovery.com

*Attorneys for the Foreign Representative of the Zodiac Debtors*