**EXHIBIT B**



Neutral Citation Number: 2014 EWHC 2365(Ch)

<u>Claim Nos. 4629-4631</u>
<u>and 4633-4635 of 2014</u>

<u>IN THE HIGH COURT OF JUSTICE</u>
<u>CHANCERY DIVISION</u>
<u>COMPANIES COURT</u>

<u>The Rolls Building</u>
<u>7 Rolls Buildings</u>
<u>London EC4A 1NL</u>

Date: Thursday, 3rd July 2014

**Before**:
<u>MR. JUSTICE MORGAN</u>
- - - - - - - - - - - - - - - - - - - - -
**IN THE MATTERS OF:**
**ZODIAC POOL SOLUTIONS SAS, ZODIAC EUROPEAN POOLS SAS, AND ZODIAC INTERNATIONAL SAS (COMPANIES INCORPORATED IN FRANCE)**

**IN THE MATTERS OF**
**ZODIAC POOL SOLUTIONS NORTH AMERICA, INC., AND ZODIAC POOL SYSTEMS, INC., (COMPANIES INCORPORATED IN DELAWARE)**

**AND IN THE MATTER OF**
**MARINE INVESTMENT FINLAND OY**
**(A COMPANY INCORPORATED IN FINLAND)**

**AND IN THE MATTER OF THE COMPANIES ACT 2006**
- - - - - - - - - - - - - - - - - - - - -

Digital Transcription by Marten Walsh Cherer Ltd.,
1st Floor, Quality House, 6-9 Quality Court
Chancery Lane, London WC2A 1HP.
Tel No: 020 7067 2900, Fax No: 020 7831 6864, DX: 410 LDE
Email: info@martenwalshcherer.com
Website: www.martenwalshcherer.com

- - - - - - - - - - - - - - - - - - - - -

Mr. **Gabriel Moss QC** and **Mr. Adam Goodison** (instructed by
Messrs **Allen & Overy**) appeared on behalf of the **Applicant**.
**Mr. Jeremy Goldring QC** (instructed by **The Bank of Ireland Legal Dept**) for **The Bank of Ireland** (**Supporting Creditor**)
**Mr. Richard Millett QC** and **Mr. Woolnough** (instructed by **Messrs Cadwalader Wickersham & Taft LLP**) for Avenue Capital (**Opposing Creditor**)

- - - - - - - - - - - - - - - - - - - - -
# Approved Judgment

**Mr. Justice Morgan :**

1. These proceedings concern six proposed schemes of arrangement to be made under Part 26 of the Companies Act 2006. The proposed schemes relate to six separate companies in what can be described as the Zodiac Group. They are creditors' schemes.

2. The application which is before me, which has been opposed, is for an order directing the convening of meetings of the classes of creditors who will be entitled to vote for or against the proposed schemes. The two matters with which I am concerned on this application are, first, as to the jurisdiction of the court under Part 26 of the Companies Act and, secondly, and more importantly, the correct identification of the classes of creditors for the purpose of the scheme meetings.

3. The Applicants are represented before me by Mr. Moss QC and Mr. Goodison. The Applicants have been supported by one creditor, the Governor and Company of the Bank of Ireland, represented by Mr. Goldring QC. Other creditors, who can be identified by the name of the Avenue, have opposed some of the relief which is sought today. They are represented by Mr. Millett QC and Mr. Woolnough.

4. The first matter which I will deal with quite briefly is the question of jurisdiction. This arises because the companies in question are not incorporated in the United Kingdom. They are incorporated elsewhere, some in the United States of America (in the state of Delaware) and others in France and Finland. What brings the matter to this court is that the relationships of debtor and creditor in this case are all governed by English law and are subject to an English jurisdiction clause.

5. In accordance with a number of cases at first instance in recent years, which are referred to in detail in the skeleton argument prepared for the Applicants, the English court has jurisdiction in relation to these proposed schemes if, first, the companies are liable to be wound up under the Insolvency Act 1986 and, secondly, there is a sufficient connection with this jurisdiction. The first of these requirements is certainly satisfied. As to the second requirement, that of a sufficient connection, it has consistently been held that the fact that the relationships of debtor and creditor are governed by English law and are the subject of an English jurisdiction clause satisfies this requirement. Further, no different conclusion is required by the Insolvency Regulation, which does not apply, or the Judgments Regulation, which might apply.

6. On applications of this kind, at a convenient point, there may arise a question as to whether the scheme, if sanctioned by the court, would be enforceable in the foreign jurisdictions. I have evidence from French, Finish and American lawyers on that question. Mr. Millett has indicated that there might be a question in relation to the United States, but not so far in relation to France or Finland. That question might be whether the US companies have a sufficient establishment in England for the purposes of section 1502 of the US Bankruptcy Code; that is in the part of the US Bankruptcy Code which gives effect to the UNCITRAL Model Law.

7. There is evidence before me on that question, but Mr. Millett would wish to explore the basis of that evidence, and it may be at some stage in this matter the factual position will have to be examined and, if there is a dispute, determined by the court. Mr. Millett submits that today is not the occasion on which that should occur; that is

something that should be addressed at the later stage of the sanction hearing. As I understand it, the Applicants, through Mr. Moss agree that, so I will make no finding or reach any conclusion on that point at this stage.

8. That brings me to the point which has been argued at today's hearing: what order should I make as regards, in particular, the composition of the classes of creditors for the purposes of the scheme meetings? Happily, the legal principles which I am to apply are very clearly set out in an authority which is not binding on me, but I will nonetheless gratefully follow it. It is the decision of the Court of Final Appeal in Hong Kong in <u>Re UDL Holdings Ltd</u> [2002] 1 HKC 172, with the principal judgment given by Lord Millett. Lord Millett was not, of course, considering Part 26 of the Companies Act 2006, but he was considering the identical wording in the statutory provisions applicable in Hong Kong. He drew attention to the fact that statutory provisions of that kind had been considered not only in England and in Hong Kong, but also in Australia and in South Africa. He then referred to some of the very well known English cases and he added to the citation of authority the Australian decision of <u>Re Jax Marine Pty Ltd</u> [1967] 1 NSWR 145 and a further Australian case, <u>Re Chevron (Sydney) Ltd</u> [1963] VR 249. What is interesting about those two cases is that, in relation to creditors' schemes, the court had to decide whether all creditors who had the same rights should be put in a single class or whether one should subdivide the creditors into creditors who had an interest in the equity of the company or group of companies and creditors who did not have such an interest.

9. As I read the Australian cases, as summarised by Lord Millett, it was held that one could be content with and could properly direct a single class of creditors, because their rights as creditors, which were to be the subject of the scheme, were the same or similar; and that was not gainsaid by the fact that one group of creditors had other rights and perhaps other motivations when it would come to the relevant vote. Lord Millett also summarised the principles, at page 104E to 105C. The points that are made are that one must draw a distinction between the legal rights which are the subject matter of the scheme and other rights or other interests or motives which may influence the creditor when voting at the meeting.

10. It is also apparent from <u>Re UDL</u> and the many cases considered in it that there is another vital distinction in this area, and that is the approach which the court adopts at the convening stage and the approach which is adopted at the later sanction stage. In particular, the court's approach to the position of minorities was different at the two stages. The summary of the principles in that decision will guide me when I consider the issues which have been argued on today's application.

11. Mr. Moss, on behalf of the Applicants, has identified the intended classes for which the Applicants would wish the order to provide. In his skeleton argument, he refers to different classes of creditors. There are Senior Scheme Creditors, Second Lien Scheme Creditors and Mezzanine Scheme Creditors.

12. There is no dispute between the parties that, in relation to one company, where all three classes of creditor are relevant, namely the company the name of which is abbreviated as ZPS, there will need to be a separate class for the Mezzanine Scheme Creditors and a separate class for the Second Lien Scheme Creditors. The question in relation to ZPS and the other five companies is what one does with the Senior Scheme

Creditors. Mr. Moss submits that the right decision is to place all of the Senior Scheme Creditors in a single class.

13. That is a submission which is very much challenged by Mr. Millett on behalf Avenue. Mr. Millett makes three points in particular. He summarises these in paragraph 13 of his helpful skeleton argument. His first point relies on the fact that, amongst the creditors, there are creditors who are (as he puts it) connected to the Zodiac Group and yet other creditors who have no prior connection or equity in the Zodiac Group. I will develop what he says about that, but that is his first point.

14. The second point is to draw attention to the fact that the Senior Scheme Creditors come from three sources. There are those who are creditors in relation to Facility B, those in relation to Facility E and a third group who are described as the Revolving Credit Facility Creditors. What is said is that the Revolving Credit Facility Creditors should not be in the same class as the Facility B and Facility E Creditors.

15. There then is a third point, which arises because one substantial creditor, ING, has invited third parties to participate in detailed ways in the lending which ING has made to the companies. ING, it is agreed, is the lender of record. It is a creditor of the companies and the third parties are those who have made arrangements with ING but are not directly creditors of the scheme companies.

16. So far as the first point is concerned, that the various creditors include people who are connected to the Zodiac Group as well as creditors who are not connected to it, what Mr. Millett says is that the parties who are connected to the Zodiac Group otherwise than as lenders are going to have a quite different interest in the outcome of the vote and the promotion of the scheme from creditors like Avenue, who are creditors and no more than that. Mr. Millett submits that it is grossly unfair and improper to allow those with connection to the equity in the Zodiac Group to participate in the same vote as other creditors.

17. It seems to me that the answer to that submission is very clearly provided by the legal principles identified in <u>Re UDL</u>. I am further assisted in rejecting Mr. Millett's submission by looking at the way in which Lord Millett in <u>Re UDL</u> discussed and explained the decisions I have referred to in <u>Re Jax Marine Pty Ltd</u> and <u>Re Chevron (Sydney) Ltd</u>. I must distinguish between the rights which are the subject matter of thesScheme, or are intended to be the subject matter of the scheme, and other rights which are not affected by or implicated in the scheme. Those other rights may be part of the interests of the creditors and may significantly influence the creditors' behaviour, but my focus must be on the rights of the creditors as such and I must ask whether they are the same or similar; or, putting it another way, are they so dissimilar that the various creditors cannot be expected to consult together with a view to their common interest at a class meeting?

18. For that reason, I put the question of whether some creditors have other involvements in the group or other interests in the group on one side. If I do that, I find that, certainly in this respect, the Senior Scheme Creditors have the same or similar interests and can be placed in the same class. I hold that this first objection is not a ground for creating separate classes.

19. The second point made by Mr. Millett is to draw attention to the existence of the creditors who have advanced monies under the Revolving Credit Facility. The factual basis for Mr Millett's submission is not necessarily common ground or admitted or indeed established. What is said is that the Revolving Credit Facility Creditors have only become creditors because they have advanced monies to Zodiac for the purpose of Zodiac using those funds to promote the present schemes. It is said that the Revolving Credit Facility Lenders have involved themselves closely with the successful conclusion of the schemes and it is therefore to be expected that they will take the side of promoting the schemes and voting for the schemes. They, therefore, have a different interest when it comes to the vote compared with the interest of Avenue.

20. It seems to me, again, that that consideration does not go to the rights of the creditors. It is an interest or a motive perhaps, if the alleged facts were established, in relation to some of the creditors, but it does not prevent me holding that the rights of the various creditors in the class of Senior Scheme Creditors are the same or similar.

21. The third point relates to ING and the participation there has been in the lending by ING to the Zodiac companies. It seems to me the short answer to Mr. Millett's point about that is that the scheme is concerned with the rights of creditors. ING is a creditor. Third parties who have made arrangements with ING are not creditors. Looking at the rights of ING as a creditor, I ask whether the rights of ING as creditor are the same or similar to the rights of the other creditors in the class of Senior Scheme Creditors. My conclusion is that they are the same or similar and, if and in so far as arrangements which ING has made with third parties will influence ING's approach to the vote at the scheme meeting, that is a matter which goes to their interests and not to their rights.

22. Having considered the three points made by Mr. Millett, it seems to me that one comes back to the starting point urged by Mr. Moss, which is that, in relation to the Senior Scheme Creditors, the right conclusion is that it is appropriate, applying the established principles, to create a single class of those creditors.

23. There was considerable discussion in the course of argument as to whether it was necessary for the purpose of reaching my conclusion to identify what has been called the comparator and, if it was necessary to identify what the comparator was: was it an insolvent group of companies or was it instead a solvent group of companies.

24. As it happens, in going through the three points made by Mr. Millett, it did not seem to me to be necessary to identify the comparator. That is because, if one looked at the rights of the various creditors, one could conclude that they were the same or similar in any event. This question of a comparator comes up when it is said that one should not look at the relevant rights in a legal or a technical way, but one should look at them in a realistic, commercial way. For example, it may be that, on paper, creditors have different rights, but, in practice, due to insolvency, those rights will be dealt with in a broadly similar way so that the technical or paper differences between them should not influence the decision as to whether the rights are similar.

25. It has not been necessary so far in my reasoning for me to form a view about that. If I had to form a view about that, then, on the material before me I would accept the evidence in the witness statement of Mr. Mirallié, a witness on behalf of the Applicants, who describes what the alternatives are to the implementation of the intended schemes. I refer in particular to what he says in paragraphs 42, 43 and 44 of that witness statement.

I would, if necessary, have reached the conclusion that that evidence should determine this question of the comparator.

26. I have now dealt with the points that were in play. What remains is to discuss the detailed drafting of the order I am asked to make.

- - - - - - - - - - - - - - - - - - - -