**<u>EXHIBIT D</u>**

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**COMPANIES COURT**


**IN THE MATTER OF ZODIAC POOL SOLUTIONS SAS**

**AND IN THE MATTER OF ZODIAC POOL SOLUTIONS NORTH AMERICA, INC.**

**AND IN THE MATTER OF ZODIAC POOL SYSTEMS, INC.**

**AND IN THE MATTER OF ZODIAC EUROPEAN POOLS SAS**

**AND IN THE MATTER OF ZODIAC INTERNATIONAL SAS**

**AND IN THE MATTER OF MARINE INVESTMENT FINLAND OY**


**and**


**IN THE MATTER OF THE COMPANIES ACT 2006**

_____


**SCHEMES OF ARRANGEMENT**
**(under Part 26 of the Companies Act 2006)**


**between**

**ZODIAC POOL SOLUTIONS SAS**

**ZODIAC POOL SOLUTIONS NORTH AMERICA, INC.**

**ZODIAC POOL SYSTEMS, INC.**

**ZODIAC EUROPEAN POOLS SAS**

**ZODIAC INTERNATIONAL SAS**

**MARINE INVESTMENT FINLAND OY**

**and**

**THEIR RESPECTIVE SCHEME CREDITORS**
**(as hereinafter defined)**

**Clause**                                                                                                      **Page**

1.     Definitions and Interpretation ........................................................................................................1
2.     Recitals ............................................................................................................................................9
3.     The Scheme .....................................................................................................................................9


**Schedule**

1.     Deed of Release...............................................................................................................................15

**Annex**

1.     Senior Amendment Agreement and Amended Senior Facilities Agreement ......................................19
2.     Mezzanine Amendment Agreement and Amended Mezzanine Facility Agreement ..........................20
3.     Intercreditor Amendment Agreement and Amended Intercreditor Agreement...................................21

## 1.    DEFINITIONS AND INTERPRETATION

1.1    In these Schemes, unless inconsistent with the subject or context, the following expressions shall have the following meanings:

**Allowed Proceeding** means any Proceeding by a Scheme Creditor to enforce its rights under these Schemes relating to the failure of any other person to perform its obligations under these Schemes.

**Amended Finance Documents** means the Amended Senior Facilities Agreement, the Amended Mezzanine Facility Agreement and the Amended Intercreditor Agreement.

**Amended Intercreditor Agreement** means the amended and restated Intercreditor Agreement substantially in the form set out at Annex 3 (Intercreditor Amendment Agreement and Amended Intercreditor Agreement).

**Amended Mezzanine Facility Agreement** means the amended and restated Mezzanine Facility Agreement substantially in the form set out at Annex 2 (Mezzanine Amendment Agreement and Amended Mezzanine Facility Agreement).

**Amended Senior Facilities Agreement** means the amended and restated Senior Facilities Agreement substantially in the form set out at Annex 1 (Senior Amendment Agreement and Amended Senior Facilities Agreement).

**Amendment Agreements** means the Senior Amendment Agreement, the Mezzanine Amendment Agreement and the Intercreditor Amendment Agreement.

**Amendment and Extension** means the amendment and extension of the obligations of the Group under the Senior Facilities Agreement, the Mezzanine Facility Agreement and the Intercreditor Agreement in accordance with the Amendment Agreements and the Amended Finance Documents.

**Amendment and Extension Documents** means the Amendment Agreements and all documents, agreements and instruments which are conditions precedent specified in the Amendment Agreements to the effectiveness of the Amended Finance Documents and/or which are necessary and/or desirable to implement and/or consummate these Schemes.

**Business Day** means a day (other than a Saturday or Sunday) on which banks are open for general business in London and Paris.

**Companies Act** means the Companies Act 2006.

**Conditions** means:

(a)    recognition of the Schemes of each of ZPS, ZPSNA and ZPSI under Chapter 15 of the United States Bankruptcy Code; and

(b)    the Court having made an order sanctioning the Scheme of each Scheme Company.

**Court** means the High Court of Justice of England and Wales.

**Deed of Release** means the deed of release substantially in the form set out in Schedule 1 (Deed of Release).

**Effective Time** means the time at which each of the Senior Amendment Effective Time, the Mezzanine Amendment Effective Time and the Intercreditor Amendment Effective Time occurs.

**Enforcement Action** means any action of any kind to:

(a) declare prematurely due and payable or otherwise seek to accelerate payment of all or any part of any indebtedness owed by any member of the Group, except that demand may be made for interest (including default interest) fees and/or commissions as they fall due under the original terms of any Existing Transaction Document;

(b) recover, or demand cash cover in respect of, all or any part of any indebtedness owed by any member of the Group (including by exercising any set-off, save as required by law);

(c) exercise or enforce any right under any guarantee or any right in respect of any Security, in each case granted in relation to (or given in support of) all or any part of any indebtedness owed by any member of the Group;

(d) petition for (or take or support any other step which may lead to) an Insolvency Event in respect of any member of the Group.

**Existing Default** means any Default under any Existing Transaction Document (as defined therein) that has occurred or will occur arising out of or as a consequence of the application for or the implementation of these Schemes.

**Existing Transaction Documents** means the Senior Finance Documents and the Mezzanine Finance Documents.

**Guarantor** means each "Guarantor" as defined in the Senior Facilities Agreement and each "Guarantor" as defined in the Mezzanine Facility Agreement.

**Group** means the Parent and its Subsidiaries from time to time.

**Hedging Bank** means ING Bank N.V. as Hedging Bank under and as defined in the Intercreditor Agreement.

**Insolvency Event** means in relation to any member of the Group:

(a) the winding-up, bankruptcy, dissolution, administration or submission to any insolvency proceeding of that member of the Group;

(b) the appointment of a *mandataire ad hoc* or for a *conciliation* in accordance with articles L.611-3 to L.611-15 of the French *Code de Commerce* in respect of that member of the Group;

(c) the entry of a judgment for *sauvegarde*, *redressement judiciaire*, *cession totale de l'entreprise* or *liquidation judiciaire* under articles L.620-1 to L.644-6 of the French *Code de Commerce* in relation to that member of the Group;

(d) the appointment of a liquidator, receiver, administrative receiver, administrator, compulsory manager or other similar officer in respect of that member of the Group; or

(e) any analogous procedure or step in any jurisdiction under any insolvency laws involving that member of the Group.

**Intercreditor Agreement** means the intercreditor deed dated 3 July 2007 between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the senior agent,

mezzanine agent and security agent) as amended and restated from time to time before the Intercreditor Amendment Effective Time.

**Intercreditor Amendment Agreement** means the amendment agreement to the Intercreditor Agreement to be entered into between, among others, ZPS (as the company) and ING Bank N.V., London Branch (as the senior agent, mezzanine agent and security agent), and to which the Amended Intercreditor Agreement is scheduled, substantially in the form set out at Annex 3 (Intercreditor Amendment Agreement and Amended Intercreditor Agreement).

**Intercreditor Amendment Effective Time** has the meaning given to "Effective Time" under and as defined in the Intercreditor Amendment Agreement.

**Issuing Bank** means ING Bank N.V. as Issuing Bank under and as defined in the Senior Facilities Agreement.

**Liability** or **Liabilities** means any debt, liability or obligation of a person whether it is present, future, prospective or contingent, whether or not it is fixed or undetermined, whether or not it involves the payment of money or performance of an act or obligation and whether it arises at common law, in equity or by statute, in England, France, the United States of America or any other jurisdiction, or in any manner whatsoever.

**Longstop Date** means 27 September 2014.

**Majority Lenders** means:

(a)     the "Majority Lenders" under and as defined in the Senior Facilities Agreement; and

(b)     the "Majority Mezzanine Lenders" under and as defined in the Mezzanine Facility Agreement.

**Mezzanine Agent** means ING Bank N.V., London Branch in its capacity as Mezzanine Facility Agent under the Mezzanine Facility Agreement.

**Mezzanine Amendment Agreement** means the amendment agreement to the Mezzanine Facility Agreement to be entered into between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the mezzanine facility agent and security agent), and to which the Amended Mezzanine Facility Agreement is scheduled, substantially in the form set out at Annex 2 (Mezzanine Amendment Agreement and Amended Mezzanine Facility Agreement).

**Mezzanine Amendment Effective Time** has the meaning given to "Effective Time" under and as defined in the Mezzanine Amendment Agreement.

**Mezzanine Facility** has the meaning given to the term "Facility" under the Mezzanine Facility Agreement.

**Mezzanine Facility Agreement** means the EUR 150,000,000 mezzanine facility agreement dated 3 July 2007 entered into between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the mezzanine facility agent and security agent) as amended and restated from time to time before the Mezzanine Amendment Effective Time.

**Mezzanine Finance Documents** means the "Mezzanine Finance Documents" as defined in the Mezzanine Facility Agreement in the form existing before the Mezzanine Amendment Effective Time.

**Mezzanine Scheme Creditors** means each of the Mezzanine Lenders (under and as defined in the Mezzanine Facility Agreement).

**Parent** means Zodiac Pool Holding S.A. (formerly known as Zodiac Marine Holding S.A.), a *société anonyme* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, France, registered under number 498 376 284 with the Paris companies and commercial register, incorporated in France.

**Proceeding** means any process, suit, action, legal or other proceeding including without limitation any arbitration, mediation, alternative dispute resolution, judicial review, adjudication, demand, execution, distraint, forfeiture, re-entry, seizure, lien, enforcement of judgment or enforcement of any security.

**Prohibited Proceedings** means any Proceeding or Enforcement Action against any member of the Group or its property in any jurisdiction whatsoever other than an Allowed Proceeding.

**Record Date** means 10 a.m. on 27 June 2014.

**Registrar of Companies** means the Registrar of Companies of England and Wales.

**Released Parties** means the Released Parties as defined in the Deed of Release.

**Relevant Agent** means:

(a)     in relation to the Senior Facilities Agreement, the Senior Agent;

(b)     in relation to the Mezzanine Facility Agreement, the Mezzanine Agent; and

(c)     in relation to the Intercreditor Agreement, the Security Agent.

**Schemes** mean these schemes of arrangement under Part 26 of the Companies Act 2006 in respect of the Scheme Companies in their present form or with or subject to any modification, addition or condition approved or imposed by the Court or approved in accordance with the terms of these Schemes.

**Scheme Claim** means any claim in respect of any Liability of any Scheme Company to any of its respective Scheme Creditors arising out of the Existing Transaction Documents, arising on or before the Record Date or which may arise after the Record Date as a result of an obligation or Liability of any Scheme Company incurred or as a result of an event occurring or an act done on or before the Record Date (including, for the avoidance of doubt, any interest accruing on, or accretions arising in respect of, such claims before or after the Record Date).

**Scheme Company** means each of:

(a)     ZPS;

(b)     ZPSNA;

(c)     ZPSI;

(d)     ZEP;

(e)     ZIS; and

(f)     Zodiac Finland.

**Scheme Creditors** means

(a)     in respect of ZPS the ZPS Senior Scheme Creditors, the Second Lien Scheme Creditors and the Mezzanine Scheme Creditors; and

(b)     in respect of each Scheme Company other than ZPS, the relevant Senior Scheme Creditors.

**Scheme Effective Date** means the date, following satisfaction or waiver of any relevant Conditions, on which an office copy of the order of the Court sanctioning these Schemes under Section 899 of the Companies Act has been delivered to the Registrar of Companies.

**Scheme Exchange Rate** means the spot rate of exchange for the relevant currency to EUR shown on Bloomberg on the Record Date.

**Scheme Meeting** means each of:

(a)     the meeting of the relevant Senior Scheme Creditors held by each Scheme Company;

(b)     the meeting of the Second Lien Scheme Creditors held by ZPS; and

(c)     the meeting of the Mezzanine Scheme Creditors held by ZPS,

in each case, to vote on these Schemes and convened pursuant to an order of the Court (and any adjournment of such meeting).

**Second Lien Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) in respect of Facility D under and as defined in the Senior Facilities Agreement.

**Security Agent** means ING Bank N.V., London Branch as Security Agent under the Intercreditor Agreement.

**Senior Agent** means ING Bank N.V., London Branch in its capacity as facility agent under the Senior Facilities Agreement.

**Senior Amendment Agreement** means the amendment agreement to the Senior Facilities Agreement to be entered into between, among others, ZPS (as the company) and ING Bank N.V., London Branch (as the facility agent and security agent), and to which the Amended Senior Facilities Agreement is scheduled, substantially in the form set out at Annex 1 (Senior Amendment Agreement and Amended Senior Facilities Agreement).

**Senior Amendment Effective Time** has the meaning given to "Effective Time" under and as defined in the Senior Amendment Agreement.

**Senior Facilities Agreement** means the EUR 1,100,000,000 senior facilities agreement dated 3 July 2007 entered into between, among others, the Parent, ZPS (as the company) and ING Bank N.V., London Branch (as the facility agent and security agent) as amended and restated from time to time before the Senior Amendment Effective Time.

**Senior Finance Documents** means the "Senior Finance Documents" as defined in the Senior Facilities Agreement in the form existing before the Senior Amendment Effective Time.

**Senior Scheme Creditors** means:

(a)     in respect of ZPS, the ZPS Senior Scheme Creditors;

(b)       in respect of ZPSNA, the ZPSNA Senior Scheme Creditors;

(c)       in respect of ZPSI, the ZPSI Senior Scheme Creditors;

(d)       in respect of ZEP, the ZEP Senior Scheme Creditors;

(e)       in respect of ZIS, the ZIS Senior Scheme Creditors; and

(f)       in respect of Zodiac Finland, the Zodiac Finland Senior Scheme Creditors.

**Subsidiary of a company or corporation** means any company or corporation:

(a)       which is controlled, directly or indirectly, by the first-mentioned company or corporation;

(b)       at least half the issued share capital of which is owned, directly or indirectly, by the first-mentioned company or corporation; or

(c)       which is a subsidiary of another subsidiary of the first-mentioned company or corporation,

and, for these purposes, a company or corporation shall be treated as being controlled by another if that other company or corporation is able to direct its affairs and/or to control the composition of its board of directors or equivalent body.

**Transaction Party** means a party to the Amendment and Extension Documents.

**Undertaking Transaction Parties** means the Parent, Zodiac Newco, the Mezzanine Agent, the Senior Agent, the Security Agent, the Hedging Bank and the Issuing Bank.

**United States Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.

**ZEP** means Zodiac European Pools SAS a *société par actions simplifiée* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 324 348 077 RCS with the Paris companies and commercial register, incorporated in France.

**ZEP Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZEP in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**ZIS** means Zodiac International SAS a *société par actions simplifiée* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 729 800 839 RCS with the Paris companies and commercial register, incorporated in France.

**ZIS Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZIS in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**Zodiac Finland** means Marine Investment Finland Oy a company with its registered office at Paciukenkatu 27, PO Box 18, FI – 00271 Helsinki, Finland, registered with VAT number FI 21399129  and incorporated in Finland.

**Zodiac Finland Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to Zodiac Finland in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**Zodiac Newco** means Zodiac Marine Investment France SAS *a société par actions simplifiée* with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 789 851 714 RCS with the Paris companies and commercial register, incorporated in France.

**ZPS** means Zodiac Pool Solutions SAS a *société par actions simplifiée unipersonnelle* (formerly known as Zodiac Marine & Pool SAS) with its registered office at 32 bis boulevard Haussmann, 75009 Paris, registered under number 493 738 819 RCS with the Paris companies and commercial register, incorporated in France.

**ZPS Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZPS in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**ZPSI** means Zodiac Pool Systems, Inc a limited liability company with its registered office at Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808, registered under number 3107192 with the Delaware companies register, incorporated in Delaware.

**ZPSI Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZPSI in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

**ZPSNA** means Zodiac Pool Solutions North America, Inc a limited liability company (formerly known as Zodiac Marine & Pool North America, Inc.) with its registered office at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801, registered under number 4377768 with the Delaware companies register, incorporated in Delaware.

**ZPSNA Senior Scheme Creditors** means each of the Lenders (under and as defined in the Senior Facilities Agreement) to ZPSNA in respect of Facility B, Facility E and the Revolving Facility, each under and as defined in the Senior Facilities Agreement, other than Zodiac Newco.

1.2    In these Schemes, unless the context otherwise requires or otherwise expressly provides for:

(a)    references to Recitals, Paragraphs, Schedules and Annexes are references to Recitals, Paragraphs, Schedules and Annexes of these Schemes;

(b)    references to a person include a reference to an individual, firm, partnership, company, corporation, unincorporated body of persons or any state or state agency;

(c)    references to a statute, statutory provision or regulatory rule or guidance include references to the same as subsequently modified, amended or re-enacted from time to time;

(d)    unless the context otherwise requires, references to an agreement, deed or document shall be deemed also to refer to such agreement, deed or document as amended, supplemented, restated, varied, replaced and/or novated (in whole or in part) from time to time and to any agreement, deed or document executed pursuant thereto;

(e)    the singular includes the plural and *vice versa* and words importing one gender shall include all genders;

(f)    references to "including" shall be construed as references to "including without limitation" and "include", "includes" and "included" shall be construed accordingly;

(g)    headings to Recitals, Paragraphs, Schedules and Annexes are for ease of reference only and shall not affect the interpretation of these Schemes;

(h)      references to a period of days shall include Saturdays, Sundays and public holidays and where the date which is the final day of a period of days is not a Business Day, that date will be adjusted so that it is the first following day which is a Business Day;

(i)      references to euro, EUR or to €are references to the lawful currency from time to time of the member states of the European Union that have the euro as their lawful currency under the legislation of the European Union for Economic and Monetary Union;

(j)      references to time shall be to London time (Greenwich Mean Time or British Summer Time, as appropriate); and

(k)      words and expressions defined or construed in the Intercreditor Agreement shall have the same meanings and constructions when used in these Schemes, unless given a different meaning or construction in these Schemes.

1.3     The terms of these Schemes shall apply to each of the Scheme Companies as a separate agreement between each Scheme Company and its respective Scheme Creditors and references to these Schemes shall be to the agreements between each Scheme Company and its respective Scheme Creditors.

## 2.    RECITALS

**The Scheme Companies**

(A)    ZPS, ZEP and ZIS are incorporated in France.

(B)    ZPSNA and ZPSI are incorporated in Delaware in the United States of America.

(C)    Zodiac Finland is incorporated in Finland.

**Financing arrangements of the Company**

(D)    Each of the Scheme Companies is a borrower under the Senior Facilities Agreement and a party to the Intercreditor Agreement.

(E)    ZPS is the sole borrower under the Mezzanine Facility Agreement.

(F)    Certain terms of the Senior Facilities Agreement, Mezzanine Facility Agreement and Intercreditor Agreement will be amended in accordance with the terms of these Schemes and the Amendment Agreements.

**Binding of Third Parties**

(G)    The Undertaking Transaction Parties have each:

(i)    appeared by counsel on the petition to sanction these Schemes and undertaken to the Court to; and/or

(ii)    executed a deed of undertaking in favour of the Court and the Scheme Companies pursuant to which they have undertaken and agreed to,

amongst other matters, execute each Amendment and Extension Document to which they are a party and, where necessary, be bound by the terms of the Schemes as sanctioned by the Court.

**The Purpose of these Schemes**

(H)    The purpose of these Schemes is to effect a compromise and arrangement between each of the Scheme Companies and their respective Scheme Creditors.

## 3.    THE SCHEMES

**Application and Effectiveness of these Schemes**

1.    The compromise and arrangement effected by these Schemes shall apply to all Scheme Claims and bind all Scheme Creditors and their respective permitted successors and assigns and each Scheme Company.

2.    These Schemes shall become effective on the Scheme Effective Date and all of the right, title and interest of Scheme Creditors to Scheme Claims shall be subject to the compromises and arrangements set out in these Schemes.

3.    The Scheme Companies shall not (and shall not be entitled to) deliver a copy of the Court order sanctioning their respective Schemes until the Conditions have been satisfied or waived in accordance with Paragraph 4.

4.  The Condition in paragraph (a) of that definition may be waived with the consent of ZPS and the Security Agent (acting on the instructions of the Majority Lenders).

**Instructions, Authorisations and Directions by Scheme Creditors**

5.  On the Scheme Effective Date, in consideration of the rights accruing to the Scheme Creditors under these Schemes, the Scheme Creditors:

(a)  hereby instruct, authorise and direct each Relevant Agent (and its respective authorised signatories and delegates) in its capacity as Relevant Agent and on behalf of each Scheme Creditor (and any person to whom a Scheme Creditor has transferred any of its rights in respect of its Scheme Claim after the Record Date):

(i)  to execute and deliver as a deed or agreement as applicable the Amendment and Extension Documents; and

(ii)  to do or procure to be done all such acts or things as may be necessary or desirable to be done for the purposes of giving effect to the terms of these Schemes;

(b)  hereby instruct, authorise and direct (as applicable) each Relevant Agent irrevocably and unconditionally to:

(i)  waive each and every Existing Default; and

(ii)  release each and every right and obligation of any Scheme Creditor to take any action in respect of any Existing Default; and

(c)  hereby request, and to the extent they are entitled to do so, instruct each Relevant Agent to perform each of its obligations arising under these Schemes and each Amendment and Extension Document.

6.  The directions, instructions and authorisations granted under Paragraph 5 shall be treated, for all purposes whatsoever and without limitation, as having been granted by deed.

7.  Each Scheme Creditor hereby irrevocably confirms to the Relevant Agent (and its respective authorised signatories and delegates) that:

(a)  in carrying out any instructions given to the Relevant Agent under, or contemplated by, Paragraph 5 above, such Relevant Agent will be acting as Relevant Agent in accordance with the terms of the Existing Transaction Documents or Intercreditor Agreement (as applicable) and will be fulfilling its duties thereunder and shall incur no liability to any person for doing so;

(b)  in carrying out any such instructions in accordance with their terms, nothing that the Relevant Agent does or omits to do in accordance with such instructions will constitute gross negligence or wilful misconduct on the part of the Relevant Agent; and

(c)  it will not claim, assert, plead, argue or raise by way of defence against a claim by the Relevant Agent under any indemnity provided under the Existing Transaction Documents or the Intercreditor Agreement (as applicable) any gross negligence or wilful misconduct by the Relevant Agent or any of its advisers, employees or agents in the Relevant Agent carrying out the acts set out in such instructions nor any omission by the Relevant Agent.

**Grant of Authority**

8.    Each of the Scheme Creditors hereby irrevocably authorises ZPS to complete, as soon as possible after the Scheme Effective Date, any blanks and/or any schedules, to insert or amend any signature blocks in the Amendment and Extension Documents and to make such other minor or technical amendments to those documents or amend and/or update any of the schedules to the Amendment and Extension Documents as ZPS, acting reasonably, considers necessary or desirable and which are not materially prejudicial to the Scheme Creditors.

9.    Each of the Scheme Creditors hereby irrevocably authorises a duly authorised officer of ZPS (the **Attorney**) on and from the Scheme Effective Date to enter into, execute and deliver as a deed (or otherwise) the Deed of Release (and each Amendment and Extension Document which is not executed by a Relevant Agent pursuant to the authority granted in Paragraph 5) as true and lawful agent and attorney on behalf of that Scheme Creditor in its capacity as a Scheme Creditor (including any person to whom a Scheme Creditor has transferred its rights in respect of its Scheme Claim after the Record Date).  The Scheme Creditors ratify whatever the Attorney may do in their name or on their behalf in exercising the powers described in this Paragraph 9.

10.    The authority granted under Paragraphs 8 and 9 shall be treated, for all purposes whatsoever and without limitation, as having been granted by deed.

**Implementation of Arrangements with Scheme Creditors**

11.    On or as soon as reasonably practicable following the Scheme Effective Date:

(a)    a duly authorised officer of each Scheme Company will execute, on behalf of such Scheme Company, the Amendment and Extension Documents to which it is a party; and

(b)    ZPS, on behalf of itself and each of the Scheme Creditors in accordance with the authority granted under Paragraph 9 of these Schemes, will execute and deliver the Deed of Release and any Amendment and Extension Document not executed by the Relevant Agent on behalf of the Scheme Creditors.

(c)    the Relevant Agents will execute the Amendment and Extension Documents to which they are a party in each case in accordance with the authorisations, instructions and directions under Paragraph 5 and their rights and obligations under the Existing Transaction Documents.

12.    The Scheme Companies shall use all reasonable endeavours to ensure that all of the conditions precedent contained in the Amendment Agreements are satisfied and/or waived prior to the Longstop Date.

13.    ZPS shall give notice to the Scheme Creditors of the occurrence of the Effective Time.

14.    On and from the Effective Time (but subject to the other provisions of these Schemes), each Scheme Creditor shall be entitled to the rights and benefits accruing to that Scheme Creditor under these Schemes and the Amended Finance Documents (to the extent they are a party) and all of the existing rights and benefits of the Scheme Creditors in respect of any Scheme Company shall be subject to and limited to the compromises and arrangements provided by these Schemes and the Amended Finance Documents.

15.    The Scheme Creditors acknowledge and agree that the amendment and restatement of the Existing Transaction Documents pursuant to the Amendment and Extension Documents shall apply for all purposes including for the purposes of amending and restating any claims of any Scheme Creditor

against, and the obligations and Liabilities of, any Guarantor under the Existing Transaction Documents on the terms of the Amended Finance Documents.

**Record Date and determination of Scheme Claims**

16.    All Scheme Claims shall be determined as at the Record Date.

17.    For the purpose of voting on the Schemes only, Scheme Claims denominated in a currency other than EUR, shall be converted to EUR on the Record Date at the Scheme Exchange Rate.

**Assignments or Transfers**

18.    No Scheme Company shall be under any obligation to recognise any assignment or transfer of Scheme Claims after the Record Date for the purposes of determining entitlements under these Schemes, provided that where the relevant Scheme Company has received, from the relevant parties, notice in writing of such assignment or transfer, that Scheme Company may, in its sole discretion and subject to the production of such other evidence as it may require and to any other terms and conditions which it may render necessary or desirable, agree to recognise such assignment or transfer for the purposes of determining entitlements under these Schemes.  It shall be a term of such recognition that the assignee or transferee of a Scheme Claim so recognised by the relevant Scheme Company shall be bound by the terms of these Schemes and for the purposes of these Schemes shall be a Scheme Creditor.

**Stay of Proceedings**

19.    None of the Scheme Creditors shall commence or continue, or instruct, direct or authorise any other person to commence or continue, any Prohibited Proceedings in respect of, arising from or relating to any Scheme Claim after the Schemes have been sanctioned by the Court.  For the avoidance of doubt, this Paragraph shall not prohibit a Scheme Creditor from commencing or continuing, or instructing, directing or authorising any other person to commence or continue, any Proceeding against any Scheme Company or its property in any jurisdiction whatsoever relating to and subject to the terms of the Amendment and Extension Documents.

20.    Subject to any existing contractual restrictions, a Scheme Creditor may commence an Allowed Proceeding against any Scheme Company after the Scheme Effective Date provided that it has first given the Company five Business Days' prior notice in writing of its intention to do so.

**Costs**

21.    ZPS shall pay, or procure the payment, in full, of all costs, charges, expenses and disbursements incurred by any Scheme Company in connection with the negotiation, preparation and implementation of these Schemes as and when they arise, including, but not limited to, the costs of holding the Scheme Meetings, the costs of obtaining the sanction of the Court, the costs of placing the notices (if any) required by these Schemes and the costs in connection with recognition of these Schemes under Chapter 15 of the United States Bankruptcy Code.

**Modifications**

22.    Any Scheme Company may, at any hearing of the Court to sanction these Schemes, consent on behalf of all Scheme Creditors to any modification of these Schemes or any terms or conditions which the Court may think fit to approve or impose.  However, if such modifications could reasonably be expected directly or indirectly to have a material or disproportionate adverse effect on the interests of a Scheme Creditor (taking into account for this purpose only its interests as a Scheme

Creditor) then no Scheme Company may give such consent without the prior written consent of that Scheme Creditor.

23.   Nothing in these Schemes shall prevent the modification of any Amendment and Extension Document or Amended Finance Document in accordance with their respective terms.

**Obligations on Dates other than a Business Day**

24.   If any sum is due or obligation is to be performed under the terms of these Schemes on a day other than a Business Day, the relevant payment shall be made, or obligation performed, on the next Business Day.

**Notices**

25.   Any notice or other written communication to be given under or in relation to these Schemes shall be given in writing and shall be deemed to have been duly given if it is delivered by hand, pre-paid first class post, airmail, fax or electronically to:

(a)   in the case of any Scheme Companyby hand, pre-paid first class post or airmail to:

Zodiac Pool Holding S.A.

32 BIS Boulevard Haussmann,

75009, Paris, France

marked for the attention of François Mirallié; or

(b)   in the case of a Scheme Creditor to the Security Agent for and on behalf of the relevant Scheme Creditor, at/on the contact details set out at (c) below.

(c)   in the case of the Security Agent:

(i)   by hand, pre-paid first class post or airmail to:

ING Bank N.V., London Branch

60 London Wall

London, EC2M 5TQ

marked for the attention of Ian Tofts / Craig Baker / Loans Agency

(ii)   by fax to + 44 (0)207 767 6522/5617; or

(iii)   by email to:

ian.tofts@uk.ing.com / craig.baker@uk.ing.com / loans.agency@uk.ing.com

(d)   in the case of any other person, any address, fax number or email address set forth for that person in any agreement entered into in connection with these Schemes or the last known address, fax number or email address according to any Scheme Company.

26.   Any notice or other written communication to be given under these Schemes shall be deemed to have been delivered and served:

(a)    if delivered by hand, when actually received provided that, if such receipt occurs after 5.00 p.m. in the place of receipt, the following Business Day;

(b)    if sent by pre-paid first class post or airmail, on the second Business Day after posting if the recipient is in the country of dispatch, otherwise the seventh Business Day after posting;

(c)    if sent electronically or by fax, when actually received in readable form provided that, if such receipt in readable form occurs after 5.00 p.m. in the place of receipt, the following Business Day; and

(d)    if by advertisement, on the date of publication.

27.    In proving service, it shall be sufficient proof, in the case of a notice sent by pre-paid first class post or airmail, that the envelope was properly stamped, addressed and placed in the post.

28.    The accidental omission to send any notice, written communication or other document in accordance with Paragraphs 25 and 26, or the non-receipt of any such notice, written communication or document by any Scheme Creditor, shall not affect the provision of these Schemes.

29.    No Scheme Company shall be responsible for any loss or delay in transmission of any notices, or other documents posted by or to any Scheme Creditors which shall be posted at the risk of such Scheme Creditors.

**Governing Law and Jurisdiction**

30.    On and from the Scheme Effective Date, the operative terms of these Schemes and any non-contractual obligations arising out of or in connection with these Schemes shall be governed by and construed in accordance with the laws of England and Wales. The Scheme Creditors hereby agree that the Court shall have exclusive jurisdiction to hear and determine any suit, action or Proceeding and to settle any dispute which arises out of or in connection with the terms of these Schemes or their implementation or out of any action taken or omitted to be taken under these Schemes or in connection with the administration of these Schemes and for such purposes the Scheme Creditors irrevocably submit to the jurisdiction of the Court, provided, however, that nothing in this Paragraph shall affect the validity of other provisions determining governing law and jurisdiction as between any Scheme Company and any of the Scheme Creditors, whether contained in contract or otherwise.

31.    The terms of these Schemes and the obligations imposed on any Scheme Company hereunder shall take effect subject to any prohibition or condition imposed by applicable law.

**Future Liquidation**

32.    These Schemes shall be unaffected by any liquidation, administration or similar insolvency process of any Scheme Company after the Scheme Effective Date and shall take effect in accordance with their terms notwithstanding any such event.

**Longstop Date**

33.    If the Effective Time has not occurred before the Longstop Date, the terms of, and the obligations on the parties under or pursuant to, these Schemes shall lapse.

Dated this        day of                2014

## SCHEDULE 1

## DEED OF RELEASE

**THIS DEED POLL** (the **Deed Poll**) is executed as a deed on _____2014, by:

**THE SCHEME CREDITORS** (as defined below), acting by an authorised officer of Zodiac Pool Solutions SAS (**ZPS**) pursuant to the authority conferred upon such officer of ZPS by the Scheme Creditors under paragraph 9 of the Schemes (as defined below),

In favour of**:**

**THE RELEASED PARTIES** (as defined below).

**WHEREAS**

(A)    Each Scheme Company has entered into a Scheme with its respective Scheme Creditors.

(B)    ZPS is authorised, under paragraph 9 of the Schemes, to execute and deliver this Deed Poll on behalf of each of the Scheme Creditors.

**IT IS DECLARED** as follows:

1.    **INTERPRETATION**

1.1    **Definitions**

In this Deed Poll:

**Court** means the High Court of Justice of England and Wales.

**Released Parties** means the persons listed at Appendix 1 of this Deed Poll.

**Schemes** means the schemes of arrangement pursuant to Part 26 of the Companies Act 2006 between each Scheme Company and its respective Scheme Creditors as sanctioned by the Court.

**Scheme Company** means each of ZPS, Zodiac Pool Solutions North America, Inc., Zodiac Pool Systems Inc., Zodiac European Pools SAS, Zodiac International SAS and Marine Investment Finland Oy.

1.2    **Construction**

(a)    Capitalised terms defined in the Schemes have, unless expressly defined in this Deed Poll, the same meaning in this Deed Poll.

(b)    In this Deed Poll, unless the context otherwise requires or otherwise expressly provides for:

(i)    references to clauses are references to clauses of this Deed Poll;

(ii)    references to a person include references to an individual, firm, partnership, company, corporation, unincorporated body of persons or any state or state agency;

(iii)    references to a statute or statutory provision include references to the same as subsequently modified, amended or re-enacted from time to time;

(iv)    the singular includes the plural and vice versa and words importing one gender shall include all genders; and

(v)    headings to clauses are for ease of reference only and shall not affect the interpretation of this Deed Poll.

## 2.    WAIVER AND RELEASE

2.1    With effect from the Effective Time and without prejudice to the provisions of the Schemes, the Scheme Creditors hereby irrevocably and unconditionally:

(a)    waive, release and discharge fully and absolutely all Liabilities of the Released Parties to the Scheme Creditors in relation to or in connection with the preparation, negotiation or implementation of (i) the Schemes or (ii) the Amendment and Extension; and

(b)    waive each and every claim which the Scheme Creditors may have in connection with the preparation, negotiation or implementation of (i) the Schemes or (ii) the Amendment and Extension (in each case) against the Released Parties.

2.2    Each release, waiver and discharge effected by the terms of clause 2.1 above shall not extend to any Liability arising out of or resulting from gross negligence, wilful default or fraud (or any claim relating to such Liability).

2.3    Nothing in this Deed Poll shall release, waive or discharge any Liability of any person under the Amendment and Extension Documents or the Amended Finance Documents.

## 3.    FURTHER ASSURANCES

The Scheme Creditors will take whatever action is reasonably necessary to give effect to the waiver, release and discharge referred to in clause 2 (Waiver and Release) of this Deed Poll.

## 4.    CONTINUATION

Nothing in this Deed Poll shall be construed as a waiver, variation or amendment of any provisions of the Amendment and Extension Documents.

## 5.    DEED POLL

This document shall take effect as a deed poll in favour of the Released Parties.  A Released Party may rely on and enforce the terms of this Deed Poll.

## 6.    GOVERNING LAW AND JURISDICTION

This Deed Poll and any non-contractual obligations arising out of or in connection with it are governed by English law. The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed Poll or any non-contractual obligations connected with it.

This Deed Poll has been entered into and delivered by the Scheme Creditors as a deed poll on the date stated at the beginning of this Deed Poll.

**EXECUTED** as a **DEED** by                                     )
the **SCHEME CREDITORS**                                          )
and signed and delivered as a deed on behalf of                  )
the Scheme Creditors by                                          )
                                                                 )
……………………………………………..,                                           )
a duly authorised officer of                                     )
**ZODIAC POOL SOLUTIONS SAS**                                     )
                                                                 )
acting pursuant to the authority conferred upon                  )
him for this purpose under paragraph 9 of the                    )
Schemes                                                          )

In the presence of:

Witness' Signature:        …………………………………

Name:                      …………………………………

Address:                   …………………………………

                           …………………………………

## APPENDIX 1

## RELEASED PARTIES

1.      Each member of the Group and ZM Luxembourg S.C.A. and each of their directors or managers.

2.      The Senior Agent including its directors, officers and employees.

3.      The Mezzanine Agent including its directors, officers and employees.

4.      The Security Agent including its directors, officers and employees.

**ANNEX 1**

**SENIOR AMENDMENT AGREEMENT AND AMENDED SENIOR FACILITIES AGREEMENT**

**ANNEX 2**

**MEZZANINE AMENDMENT AGREEMENT AND AMENDED MEZZANINE FACILITY
AGREEMENT**

**ANNEX 3**

**INTERCREDITOR AMENDMENT AGREEMENT AND AMENDED INTERCREDITOR AGREEMENT**