**EXHIBIT I**





Positive
As of: Jul 28, 2014

**In re: Fairfield Sentry Limited, et al., Debtors in Foreign Proceedings**

10 Civ. 7311 (GBD)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2011 U.S. Dist. LEXIS 105770*

**September 15, 2011, Decided
September 16, 2011, Filed**

**SUBSEQUENT HISTORY:** Affirmed by *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 2013 U.S. App. LEXIS 7608 (3d Cir. V.I., Apr. 16, 2013)*

**PRIOR HISTORY:** *In re Fairfield Sentry Ltd., 440 B.R. 60, 2010 Bankr. LEXIS 3789 (Bankr. S.D.N.Y., 2010)*

**COUNSEL:** [*1] For Morning Mist Holdings Limited, Miguel Lomeli, Appellants: Parvin Kristy Aminolroaya, Stephen A. Weiss, LEAD ATTORNEYS, Christopher Matthew Van de Kieft, Seeger Weiss LLP, Philadelphia, PA; Charles Slidders, Kent Andrew Bronson, Kristi Stahnke McGregor, Robert Alan Wallner, Milberg LLP (NYC), New York, NY.

For Kenneth Krys, Christopher Stride, Appellees: David J. Molton, Brown Rudnick LLP, New York, NY.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINION BY:** GEORGE B. DANIELS

**OPINION**

**MEMORANDUM DECISION AND ORDER**

GEORGE B. DANIELS, District Judge:

Morning Mist Holdings Limited and Miguel Lomeli ("Appellants") bring this bankruptcy appeal challenging the July 22, 2010 Order and Opinion [1] ("Opinion") of the Honorable Burton Lifland, Bankruptcy Judge that (1) recognized the liquidation proceeding of Fairfield Sentry Limited ("Sentry") [2] pending in the British Virgin Islands (the "BVI Proceeding") as a foreign main proceeding pursuant to *11 U.S.C. §1517(b)(1)*; and *(2)* stayed Appellants' purported derivative action as well as all actions concerning Sentry's rights and assets, except the Bernard L. Madoff Investment Securities, Inc. Trustee's pending adversary proceeding against Sentry. Appellants claim that [*2] the Bankruptcy Court erred by (1) finding that Sentry's center of main interests is the British Virgin Islands when it is instead New York; (2) failing to deny main recognition of the BVI Proceeding pursuant to the Chapter 15 public policy exception; and (3) staying

Appellants' derivative action. The decision of the Bankruptcy Court is AFFIRMED.

> 1   As amended by Errata Orders dated July 26, 2010 and July 30, 2010.
> 2   Judge Lifland's Order and Opinion granted foreign main recognition to the liquidation proceedings of Fairfield Sigma Limited ("Sigma"), Fairfield Lambda Limited ("Lambda") as well as Sentry. However, Appellants only objected to foreign main recognition as to Sentry in the bankruptcy proceeding and now only appeal with respect to Sentry.

## I. RELEVANT BACKGROUND

Sentry was organized and incorporated under the law of the British Virgin Islands ("BVI") in 1990 as a vehicle for mainly non-U.S. persons and certain tax-exempt U.S. entities to invest with Bernard L. Madoff Investment Securities, Inc. ("BLMIS"). Record on Appeal ("ROA") Vol. 1, Tab 3, ¶11, Tab 28, ¶ 3. It maintains its registration there. Id. Fairfield Greenwich Group ("FGG"), based on Manhattan's Upper East Side, served [*3] as Sentry's investment manager. Id., Tab 28 ¶¶ 32, 47, 74. In December 2008, it became publicly known that BLMIS had for many years, if not many decades, been operated by Bernard L. Madoff as a massive Ponzi scheme. Id., Tab 3, ¶ 18. As a result of Madoff's fraudulent scheme, billions of dollars of investor funds, including funds held on behalf of Sentry, were paid out by BLMIS as returns of principal, as distributions of fictitious profits, or otherwise dissipated and misappropriated by Madoff and/or others acting in concert with him. Id.

Following the disclosure of Madoff's scheme, Sentry ceased its routine operations and changed its business purpose to "preserv[ing] and realiz[ing Sentry's] assets for purposes of ultimate, orderly and equitable distribution, in compliance with the BVI insolvency law, to creditors and other lawful claimants." Id., Tab 6 at 2. On December 22, 2008, Sentry's Board of Directors began reaching out to its shareholders via correspondence from Sentry's registered offices in the BVI to keep them apprised of the Board's actions in the wake of the revelation of Madoff's scheme and the subsequent collapse of BLMIS. Id., Tab 3, ¶ 21.

In February 2009, Sentry's [*4] Board of Directors established a "Litigation Committee," of independent and non-New York, non-United States based directors, which was granted "all power and authority [] necessary or desirable in connection with considering, commencing, negotiating, furthering, settling, compromising, completing, or terminating any litigation to be taken by the Fund against any person, or taken against the Fund by any person. . . and to carry out all other actions related in any way with the foregoing." Id., Tab 3, ¶ 22, Tab 34, ¶ 14. This Litigation Committee governed Sentry's affairs until the commencement of the BVI Proceeding. Id.

In April 2009, ten of Sentry's shareholders requested that the BVI court appoint a liquidator over Sentry. Id., Tab 3, ¶ 27. On July 21, 2009, the BVI court appointed Kenneth Krys and Christopher Stride, both BVI residents and BVI-licensed insolvency practitioners as joint liquidators of Sentry (the "Liquidators"). ³ The Liquidators assumed all statutory and fiduciary duties to realize and recover assets belonging to Sentry's estate, wherever located, for the benefit of Sentry's stakeholders. Id., Tab 3, ¶ 46; Tab 41, ¶¶ 18-22. Since their appointment, the Liquidators [*5] have administered Sentry's liquidation proceedings from the BVI with the approval of the BVI court. Id., Tab 6 at 3, Tab 34, ¶¶ 18-22. Sentry's present and former contract counterparties, including administrative agents, payment agents, and depositories, deal exclusively with the Liquidators as representatives of Sentry. Id., Tab 6 at 4.

> 3   On or about September 8, 2010, following Chapter 15 recognition, Christopher Stride resigned from his position as joint liquidator of Sentry. On that same date, Joanna Lau, a BVI resident and BVI-licensed insolvency practitioner, succeeded to Mr. Stride's position. Reference to the Liquidators herein shall be in reference to Mr. Krys and Mr. Stride, in their positions as joint liquidators of Sentry on and prior to the date of Chapter 15 recognition.

Upon the disclosure of Madoff's scheme, Sentry also began to sever its contractual relationship with FGG and related affiliates and individuals, who had long standing affiliations with Madoff. Id. Sentry's only FGG-affiliated director participated in only two board meetings between December 18, 2008 and the Liquidator's appointment in July 2009. Id. Sentry formally terminated its investment management agreement [*6] with FGG in May 2009, effective June 30, 2009-6 weeks before the Liquidators filed their Chapter 15 petition. Id.

**Petition for Chapter 15 Recognition**

On June 14, 2010, the Liquidators filed a petition seeking Chapter 15 recognition of the BVI Proceeding in order to *inter alia*, (i) facilitate the Liquidators' enhanced access to United States courts in connection with the pursuit of claims on behalf of Sentry, (ii) afford the Liquidators the right to seek discovery to identify parties that bear liability to Sentry and the claims against those parties; (iii) provide protection of the recoveries made by the Liquidators in the United States from piecemeal attack; (iv) provide a means to facilitate a consensual resolution of the BLMIS Proceeding against Sentry that would benefit the stakeholders of both Sentry and the Madoff estate; and (v) provide a means to ensure that recoveries will be distributed in an orderly and equitable manner through the BVI proceeding in accordance with BVI insolvency law. See, id., Tab 1, Tab 6 at 6. Appellants, investors in Sentry and plaintiffs in a putative derivative action on Sentry's behalf in New York State Supreme Court, filed the only objection to the [*7] Chapter 15 recognition petition. See, id., Tab 2.

After a hearing, the Bankruptcy Court issued an order on July 22, 2010 recognizing Sentry's liquidation proceeding as a foreign main proceeding pursuant to *11 U.S.C. §1517(b)(1)*, and staying Appellants' purported derivative action as well as all actions concerning Sentry's rights and assets, except the BLMIS Trustee's pending adversary proceeding against Sentry. *In re Fairfield Sentry, Ltd., 440 B.R. 60, 67 (Bankr. S.D.N.Y. 2010)*.

## II. JURISDICTION AND STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final orders issued by Bankruptcy Courts pursuant to *28 U.S.C. § 158(a)(1)* and *Fed. R. Bankr. P. 8001(a)*. "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, decree or remand with instructions for further proceedings." *Fed. R. Bankr. P. 8013*. The Bankruptcy Court's legal conclusions are subject to *de novo* review, factual findings are subject to a clearly erroneous standard, and decisions based on equitable relief are subject to an abuse of discretion review. See *Jackson v. Novak (In re Jackson), 593 F.3d 171, 176 (2d Cir. 2010)* (quoting *In re Momentum Mfg Corp., 25 F. 3d 1132, 1136 (2d Cir. 1994)*; [*8] *In re Ames Dep't Stores, Inc., 582 F.3d 422, 426 (2d Cir. 2009))*; *Nev. Power Co. v. Calpine Corp. (In re Calpine Corp.), 365 B.R. 401, 407 (S.D.N.Y. 2007)*; *In re Adelphia Comm'cs Corp., No. 02 Civ. 9770, 2006 U.S. Dist. LEXIS 37112, 2006 WL 1559437, at *2 (S.D.N.Y. June 6, 2006)*.

## III. CHAPTER 15 RECOGNITION

A foreign proceeding is "a collective judicial or administrative proceeding in a foreign country. . . under a law relating to insolvency. . . in which . . . the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of . . . liquidation." *11 U.S.C. § 101(23)*. A foreign proceeding will be recognized under Chapter 15 of the Bankruptcy Code ("the Code") if (1) it is a main or non-main proceeding within the meaning of *section 1502*; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of *section 1515* of the Code. See *11 U.S.C. § 1517(a)*. As the Bankruptcy Court noted, it is undisputed that requirements (2) and (3) are satisfied as the Petitioners are "persons," and the Petition includes the necessary certifications under *section 1515(b)* of the Code. *Fairfield Sentry, 440 B.R. at 63*; ROA Vol. 1, Tab [*9] 1, Ex. A. The parties only dispute whether the proceeding is a main or non-main proceeding pursuant to *section 1502* of the Code.

### A. Foreign Main Recognition

Courts will recognize a liquidation proceeding as a "foreign main proceeding" if it is "pending in the country where the debtor has the center of its main interests." *11 U.S.C. § 1517(b)(1)*. It is the petitioners' burden to persuade the Court by a preponderance of the evidence that Sentry's center of main interests ("COMI") is in the BVI. See *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (Bear Stearns I), 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007)*, aff'd, *389 B.R. 325 (S.D.N.Y. 2008)*. See, *Lavie v. Ran, 607 F.3d 1017, 1025 (5th Cir. 2010)*. "In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be [its COMI]." *11 U.S.C. § 1516(c)*. However, where evidence is presented to the contrary, the court cannot rely solely upon this presumption, but rather must consider all of the relevant evidence. *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd. (Bear Stearns II), 389 B.R. 325, 335 (S.D.N.Y. 2008)*; *In re Betcorp Ltd., 400 B.R. 266, 285-86 (Bankr. D. Nev. 2009)*.

Although [*10] the Bankruptcy Code does not state

Case 14-11818-KJC    Doc 8-9    Filed 07/31/14    Page 5 of 10

Page 4
2011 U.S. Dist. LEXIS 105770, *10

the type of evidence relevant to the COMI determination, courts typically consider the following *Sphinx* factors:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which conceivably could be the headquarters of a holding company); the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes." *Bear Stearns II, 389 B.R. at 336* (citing *In re Sphinx, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y 2006)*; see, *Ran, 607 F.3d at 1023*.

A debtor's COMI has also been equated with the concept of a "principal place of business." *Bear Stearns I, 374 B.R. at 129* (citing *Tri-Continental Exchange Ltd., 349 B.R. 627, 633-34 (Bankr. E.D. Cal. 2006)*. Finally, courts also consider the expectations of third parties with regard to the location of a debtor's COMI. *In re British Am. Isle of Venice, 441 B.R. 713, 720 (Bankr. S.D. Fla. 2010)*.

**1) The Court Properly Considered the Liquidators' Activities in its COMI Analysis**

Appellants claim that the bankruptcy court committed legal error by largely relying upon the BVI Proceeding [*11] itself, including activities incidental thereto, to determine that Sentry's center of main interests is the BVI. Accordingly, Appellants argue that the Liquidators' activities over the 11 months leading up to the Chapter 15 petition are irrelevant to COMI determination, and that Sentry's prior 18-year history of activity in New York requires that this Court find that the COMI is in New York.

Contrary to Appellants' arguments, courts have recognized that where a debtor's activities for an extended period of time have been conducted only in connection with winding up a debtor's business, the activities of a debtor's liquidators are both relevant and important to the COMI determination. See *British Am. Isle of Venice, 441 B.R. at 713* (holding that a debtor's liquidation proceeding in the British Virgin Islands was a foreign main proceeding under Chapter 15 of the Code); *In re British Ins. Co., Ltd., 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010)* (stating in dicta that "there may be instances where a foreign representative remains in place for an extended period, and relocates all of the primary business activities of the debtor to his location (or brings business to a halt), thereby causing [*12] creditors and other parties to look to the judicial manager as the location of the debtor's business [and] lead[ing] to the conclusion that the center of main interest has been lodged with the corporate representative"); *Betcorp Ltd., 400 B.R. at 266* (holding that a voluntary winding up in Australia was a foreign main proceeding under Chapter 15).

In *Betcorp*, an Australian liquidator in a voluntary winding up petitioned the court for recognition of the proceeding as a foreign main proceeding under Chapter 15 of the Code. *Id. at 271*. A United States company in litigation with Betcorp objected to the petition on numerous grounds, including that Australia was not Betcorp's center of main interests. *Id. at 285*. The objector argued that the facts that Betcorp's creditors were in the United States and the United Kingdom, and that Betcorp's operational history was in the United States, required that the court hold that Betcorp's COMI was not in Australia. *Id. at 290-92*. Upon examining factors including that (1) the location of Betcorp's registered office and the place from where the winding up was being administered was Australia, (2) the location of those that manage Betcorp--the liquidators [*13] (since commencement of the winding up divested the directors of their authority) were located in Australia; and (3) Betcorp had no employees save and except for those selected by the liquidators, the court held that Betcorp's COMI was Australia. *Id. at 292*.

Similarly, in *British Am. Isle of Venice*, a debtor sought foreign main recognition of its liquidation in the British Virgin Islands over the objection of a United States creditor which argued that the debtor's COMI was the United States. *British Am. Isle of Venice, 441 B.R. at 716*. Addressing the COMI factors of both the location of the debtor's headquarters and those who manage the debtor, the court noted:

> The Debtor has been involved in liquidation proceedings in the British Virgin Islands, under the control of [the liquidator] and supervised by the BVI Court, for [almost 14 months]. At the time of the Petitioner's appointment as provisional liquidator, the Debtor had no officers or directors. For more than a year,

the [liquidator] has been the Debtor's only manager, the only person authorized to act on behalf of the Debtor. From the time of his appointment by the BVI Court to the present, the Petitioner has been solely responsible [*14] for the day to day management of the Debtor and he has done this consistently, with only limited exceptions not material to this analysis, from his offices in the British Virgin Islands. *Id. at 720-721*.

Considering these factors along with additional evidence, the court granted foreign main recognition of the British Virgin Islands liquidation. *Id. at 723*.

Here, as in *British Am. Isle of Venice* and *Betcorp*, Sentry's activities for an extended period of time have been conducted only in connection with the winding up of Sentry's business. Sentry effectively ceased doing business more than 18 months before its Chapter 15 Petition, and 7 months before the commencement of the BVI Proceeding. Upon the revelation of the Madoff fraud in December 2008, Sentry discontinued the transfer of funds for investment with BLMIS in New York, which comprised 95% of Sentry's investments. The board of representatives at the FGG resigned shortly thereafter, and Sentry's contracts with FGG were severed in 2009, before the filing of the Petition. As a result, Sentry has no place of business, no management, and no tangible assets located in the United States. The BVI based Liquidators have been directing and [*15] coordinating Sentry's affairs since their appointment in July 2009. Accordingly, the Bankruptcy Court appropriately considered the Liquidator's activities in determining Sentry's COMI.

Appellants contend that *Ran* and *Bear Stearns II* are instructive and support their argument that the Liquidator's activities should be disregarded in determining Sentry's COMI. However, both *Ran* and *Bear Stearns II* are inapposite.

Appellants rely on the *Ran* court's holding that an individual debtor's bankruptcy proceeding in Israel alone was insufficient to demonstrate that the debtor had an establishment in Israel, which was required for the court to grant *non-main* recognition. See, *Ran, 607 F.3d at 1028*. There, an individual debtor had relocated from Israel nearly 10 years prior to filing his Chapter 15 petition, maintained his finances and business exclusively in the United States, had established employment and a residence in Texas, was a permanent legal resident of the United States, and had neither a secondary residence nor place of employment in Israel. *Id. at 1024, 1028*. Based upon those facts, the court held that the debtor neither had a place of operations nor conducted nontransitory economic [*16] activity in Israel, and thus he could not demonstrate that he had an establishment in Israel. *Id. at 1027*. By contrast, here a *corporate* debtor maintains its finances and business primarily in the BVI and has its corporate headquarters in the BVI. Accordingly, Sentry is not seeking recognition solely based upon the existence of the foreign proceeding like in *Ran*.

Appellants also rely on the *Bear Stearns II* court's holding that the debtor's allegations that it was incorporated in the foreign country, and "required to be wound up there and that upon appointment of joint provisional liquidators, the powers of the board of directors ceased and control of the company was transferred to the [foreign country,]" did not constitute substantive economic activity in the foreign country. *Bear Stearns II, 389 B.R. at 338*. There, the liquidators were appointed on the same day that they filed their Chapter 15 petition and had not yet taken any action. *Id. at 329*. By contrast, the Liquidators in this case were appointed 7 months prior to the Chapter 15 petition and have conducted all of the business of Sentry since that time.

**2) The Court Properly Considered the Activity At and Around the Time of Sentry's** [*17] **Chapter 15 Petition in Determining Sentry's COMI**

Appellants argue that Sentry's recent activity in the BVI cannot displace Sentry's 18-year center of main interests in the United States. On the contrary, courts, including the very court cited by Appellants in support of their position, have consistently held that the relevant time for determining a debtor's COMI is when the Chapter 15 petition was filed. See *Ran, 607 F.3d at 1025*; *British Am. Ins., 425 B.R. at 190*; *Betcorp Ltd., 400 B.R. at 290-92*.

In *Ran*, the court refused to look back at the debtor's operational history and held that COMI is appropriately determined at the time of the petition for recognition. *Ran, 607 F.3d at 1025*. The court examined the text of *Section 1502* of the Code and noted that every operative verb is written in the present or present progressive tense, and "[m]ore specifically, *Section 1502* defines foreign

Case 14-11818-KJC    Doc 8-9    Filed 07/31/14    Page 7 of 10

Page 6
2011 U.S. Dist. LEXIS 105770, *17

main proceeding as a 'foreign proceeding pending in the country where the debtor *has* the center of its main interests.'" Id. (citing *11 U.S.C. §1502(4)*). It then held that Congress's choice to use the present tense requires courts to view the COMI determination in the present, i.e., at the time the recognition [*18] petition was filed. Id. Further, the court cautioned that "if [it] were to assess COMI by focusing on a debtor's operational history, there would be an increased likelihood of conflicting COMI determinations, as courts may tend to attach greater importance to activities in their own countries, or may simply weigh the evidence differently which may lead to the possibility of competing main proceedings, thus defeating the purpose of using the COMI construct." *Ran, 607 F.3d at 1025*; see *Betcorp, 400 B.R. at 290*.

Appellants argue that *Ran* supports their position because the court, in dicta, noted that although the case "d[id] not involve a recent change of domicile by the party in question, [a] similar case brought immediately after a party's arrival in the United States following a long period of domicile in the country where the bankruptcy is pending would likely lead to a different result." *Ran, 607 F.3d at 1026*. However, this dicta in no way bolsters Appellants' position here. Noting *Ran*'s warning that looking solely at the time of the Chapter 15 petition creates the potential for mischief and COMI manipulation, the Bankruptcy Court undertook a broader temporal COMI assessment and found [*19] that Sentry's COMI had been in the BVI for a significant time before the filing of the Chapter 15 petition. *Fairfield Sentry, 440 B.R. at 66*. Sentry's petition was not brought immediately after arrival in the BVI as specifically contemplated by *Ran*. Although Appellants claim that the liquidators waited 11 months to file their chapter 15 petition and "purported to engage in COMI-relevant activities. . . in the BVI, which they then bootstrapped to support their Chapter 15 petition," [4] they have presented no evidence to support a finding of an opportunistic shift of Sentry's COMI or any biased activity or motivation to distort factors to establish a COMI in the BVI. Notably, the shareholders initiated the Liquidation proceedings in the BVI--not the Liquidators. Accordingly, the Bankruptcy Court appropriately considered the time at and around Sentry's Chapter 15 filing in determining Sentry's COMI.

> 4  Appellants' Memo of Law in Support of Appeal at 23.

### 3) Significant Evidence Supported the Bankruptcy Court's Determination that Sentry's COMI is the BVI

Given that the Bankruptcy Court properly considered the Liquidators' activities, there is no clear error in the Bankruptcy Court's determination [*20] that Sentry's COMI is the BVI. Significant evidence in the record supported the Bankruptcy Court's determination including that: (1) Sentry is incorporated and maintains its registered office in BVI; (2) an independent litigation committee governed Sentry's affairs for several months [5] leading up to the commencement of the liquidation proceedings, and the majority of that committee's administrative decision-making originated in the BVI; (3) since the commencement of the BVI Liquidation Proceeding in July 2009, the BVI-based Liquidators have been directing and coordinating Sentry's affairs; (4) Sentry maintains liquid assets of approximately $17.5 million in a BVI account; (5) Sentry has BVI-resident employees and offices, and has undertaken to transfer significant books and records to office space leased by Sentry in the BVI. The Court may not upset these factual findings unless it has a "definite and firm conviction that a mistake has been committed." *Vasquez v. GMD Shipyard Corp., 582 F.3d 293, 297 (2d Cir. 2009)* (internal quotations and citations omitted). The evidence overwhelmingly shows that the *Sphinx* factors of the location of Sentry's headquarters, and the location of those [*21] who actually manage the debtor, place Sentry's COMI in the BVI. The evidence supports a finding that Sentry's principal place of business is the BVI. Finally, as Sentry's creditors, and not the Liquidators, initiated the liquidation proceedings in the BVI and those proceedings had been taking place there for 11 months leading up to the petition, the expectations of third parties would also likely be that Sentry's COMI is the BVI.

> 5  The bankruptcy court found that the Litigation Committee governed Sentry for seven months leading up to the appointment of the Liquidators. However, upon examining the ROA, this Court finds that the litigation committee only served for 5 months.

Appellants argue that a number of factors demonstrate that instead, Sentry's COMI is in New York. Most significantly, they argue that (1) Sentry's prior 18-year operational history is in New York, (2) Sentry's charter significantly restricts activity in the BVI (3)

Sentry holds relatively little cash and has few shareholders in the BVI, and (4) significant litigation over disputed and contingent claims that constitute Sentry's principal assets and its principal liability is in New York. [6] While this evidence may rebut [*22] a presumption that Sentry's COMI is the BVI, ultimately the total evidence considered by the Bankruptcy Court proved by a preponderance of the evidence that the BVI is Sentry's COMI. Sentry's prior 18-year operational history in New York is not determinative as to Sentry's COMI. Sentry's charter does not at all restrict the Liquidators' activities which are the business activities now relevant to COMI determination. Sentry's cash and shareholders are not concentrated in any one location which makes the fact that they are not in the BVI not particularly compelling or relevant. Although significant litigation over disputed and contingent claims is taking place in New York, there is also substantial litigation pending in Ireland and the BVI. The pendency of the New York litigation does not guarantee recovery of any assets in New York. When weighed against the overwhelming evidence as to the other COMI factors, the litigation in New York is of little import.

> 6  This Court grants Appellants' Motion for Judicial Notice, Supplemental Motion for Judicial Notice, and Second Supplemental Motion for Judicial Notice. Under *Federal Rule of Evidence 201*, a district court may "take judicial notice of [*23] documents filed in other courts ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *BRS Associates, L.P. v. Dansker, 246 B.R. 755, 765 (S.D.N.Y. 2000)* (internal citations omitted) ; see, also *In re Musilli, 398 B.R. 447, 453 (E.D. Mich. 2008)* ("A district court is authorized to supplement the record in a bankruptcy appeal, and to take judicial notice of appropriate evidence.")

Appellants' arguments that these factors purportedly support the alternate conclusion of a New York COMI do not compel a finding that the Bankruptcy Court made a clearly erroneous ruling. Appellants' further argument that the bankruptcy court erroneously placed the burden of proof on the Objectors has no merit. The Bankruptcy Court explicitly noted that it was Sentry's burden to prove COMI. This Court finds sufficient evidence that Sentry met that burden.

### B. United States Public Policy

*Section 1506* of the Code provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." *11 U.S.C. § 1506*. [*24] Thus, a court may refuse to grant main or non-main recognition if it would be manifestly contrary to United States public policy. See, e.g., *In re Gold & Honey, 410 B.R. 357 (Bankr. E.D.N.Y. 2009)*. Although few reported decisions address the scope of *section 1506*, courts have agreed that Congress's use of the word "manifestly" requires the statute to be interpreted restrictively. See *Micron Tech. v. Qimonda AG, 433 B.R. 547, 567-70 (E.D. Va. 2010)* (reviewing decisions to date); *British Am. Isle of Venice, 441 B.R. at 717*. Accordingly, *section 1506* should be construed narrowly, and invoked only under exceptional circumstances concerning matters of fundamental importance to the United States. *Id. at 717*; *Qimonda, 433 B.R. at 568*.

In determining whether to apply *section 1506*, courts have focused on two factors: "(1) whether the foreign proceeding was procedurally unfair; and (2) whether the application of foreign law or the recognition of a foreign main proceeding under Chapter 15 would 'severely impinge the value and import of a United States statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out. . . [*25] the most fundamental policies and purposes of these rights." *Id. at 568-69*; *British Am. Isle of Venice, 441 B.R. at 718*.

Appellants argue that the Bankruptcy Court erred by refusing to apply *section 1506* because "compelling public policy considerations warrant non-recognition of the BVI Proceeding, because that proceeding--including the BVI court's orders and the applications filed by the Liquidators--has been cloaked in secrecy." [7] Appellants' Memo of Law in Supp. Of Appeal at 12. Additionally, Appellants argue that a stay of their derivative action without a stay of the BLMIS trustee's claim against Sentry is "value destructive, discriminatory and inimical to the fundamental objectives of Chapter 15." Id. at 14.

> 7  Appellees argue that Appellants waived their "secrecy" argument because they did not raise it in the Bankruptcy Court. However, Appellants raised the argument during the recognition hearing and thus it is properly before this Court

Case 14-11818-KJC Doc 8-9 Filed 07/31/14 Page 9 of 10

Page 8
2011 U.S. Dist. LEXIS 105770, *25

on appeal. See ROA Vol. 2, Tab 49 at 84-85, 90.

Recognition of the BVI Proceeding as a foreign main proceeding is not manifestly contrary to United States public policy. Although there is a strong presumption of public access to court records that [*26] is "firmly entrenched and well supported by policy and practical considerations, the right is not absolute." *In re Orion Pictures Corp., 21 F.3d 24, 26-27 (2d Cir. 1994)*. "In limited circumstances, courts must deny access to judicial documents--generally where open inspection may be used as vehicle for improper purposes." *Id. at 27*. Congress itself has recognized that under compelling or extraordinary circumstances, an exception to the general policy of public access is necessary." *Id. at 27*; see, e.g. *Fed R. Crim. P. 6(e)(2)* (secrecy of grand jury proceedings); *5 U.S.C. § 552(b)(1)* (provision of FOIA that exempts from disclosure material affecting the national defense); *Fed. R. Civ. P. 26(c)(5)-(8)* (sealing of depositions and restrictions on revealing trade secrets or other confidential information). In fact, the Code explicitly permits sealing of court files to "protect an entity with respect to a trade secret or confidential research, development, or commercial information." *11 U.S.C. § 107 (b)*; *Orion Pictures Corp., 21 F.3d at 27*.

The BVI Court ordered that the proceeding be sealed because Sentry's applications to the BVI Court include explanations of their litigation strategy and/or [*27] information protected by attorney-client privilege. Appellees' Memo of Law in Opp. to Appeal at 8. Where the sealing of court files is determined by a court to be necessary, the sealing itself does not run contrary to the fundamental policies and purposes of either a United States statutory or constitutional right. Though the sealing here may be broader than specifically provided by the Code or other United States statutory authority, "[t]he mere fact of conflict between foreign law and U.S. law, absent other considerations, is insufficient to support the invocation of the public policy exception." *Qimonda, 433 B.R. at 570*. Appellants have failed to demonstrate that the sealing of the proceedings renders them fundamentally unfair. Accordingly, this Court finds that the sealing of the BVI Proceeding is not contrary to United States public policy such that the *section 1506* exception should be invoked.

Appellants' argument that a stay of their Derivative Action without a stay of the BLMIS trustee's action is "value destructive, discriminatory, and inimical to the fundamental objectives of Chapter 15, including 'protection and maximization of the value of the debtor's assets" is similarly [*28] unsupported. Pursuant to Chapter 15, upon main recognition of a foreign proceeding, the automatic stay of *section 362* is applicable to all property of the debtor and stays all litigation against it. See *11 U.S.C. § 1520(a)(1)* (applying *§§ 361* and *362* automatically in chapter 15 cases). However, *section 362(d)* of the Code explicitly permits the Bankruptcy Court to modify the automatic stay upon "consider[ing] the particular circumstances of the case and ascertain[ing] what is just to the claimants, the debtor, and the estate." *City Ins. Co. v. Mego Int'l, Inc., 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983)*; see *In re Lehman Bros., No. 08-13555, 2008 Bankr. LEXIS 4564, 2008 WL 4902179 (Bankr. S.D.N.Y. November 5, 2008)* (modifying the automatic stay upon the debtors' motion, to permit employees to proceed with their workers' compensation claims against the debtors).

Here, Appellees demonstrated to the Bankruptcy Court that they had been engaged in good faith settlement discussions with the BLMIS trustee and that a limited modification of the automatic stay to continue those discussions would benefit Sentry's estate. Tellingly, since the BVI Proceeding was granted main recognition, the Bankruptcy Court has approved [*29] a settlement of the BLMIS Trustee's adversary proceeding such that expensive and protracted litigation has been avoided. This settlement is directly in line with Chapter 15's goal of "protecting and maximizing the debtor's assets." *11 U.S.C. § 1501(a)(4)*. The Bankruptcy Code explicitly authorizes a Bankruptcy Court to grant relief from the automatic stay upon good cause on a case-by-case basis where appropriate. The Bankruptcy Court's stay of all proceedings, except the BLMIS Trustee's adversary proceeding, is not manifestly contrary to the public policy of the United States.

IV. **The Bankruptcy Court Properly Stayed Appellants' Action**

Because the Bankruptcy Court properly granted main recognition to the BVI Proceeding, Sentry was entitled to an automatic stay of all proceedings pending against Sentry. Additionally, *section 362(d)* of the Code empowered the Court to modify the automatic stay to permit the action with the BLMIS trustee to continue. The Bankruptcy Court properly stayed Appellants' Action. [8]

8   This Court agrees with the Bankruptcy Court that if main recognition were not granted, non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an establishment [*30] in the BVI for the conduct of nontransitory economic activity, i.e. a local place of business. See *11 U.S.C. § 1502(5)*. This Court further agrees that as a result, pursuant to *11 U.S.C. § 1521(a)*, the stay would be proper.

Appellants' appeal is DENIED.

Dated: September 15, 2011
New York, New York

SO ORDERED:

/s/ George B. Daniels

GEORGE B. DANIELS

United States District Judge